UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

NANCY ALLISION and HOLLY BURNEY, both in their individual capacities and, in addition, as a collective action on behalf of others similarly situated,

Plaintiffs,

v.

SCOTT DOLICH and ANNA JOSEPHSON, individuals, and PARK KITCHEN LLC, an Oregon limited liability company,

Defendants.

Case No.: 3:14-CV-1005-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiffs Nancy Allison and Holly Burney (collectively "Plaintiffs") brought this collective action against their prior employer seeking damages for violations of the Fair Labor Standards Act

(29 U.S.C. §§ 201 - 219) (the "Act")[1]. Plaintiffs now seek to amend their complaint to add a second employer, for tolling of the statute of limitations, and for the production of payroll records from the second employer.

The court finds the evidence of the relationship between the existing defendants and the second employer is sufficient to justify adding the second employer to this action and that Plaintiffs are entitled to production of the payrolls records from the second employer. While the pre-certification communications between the parties and prospective plaintiffs may have been somewhat misleading, any misunderstanding may be remedied in a post-certification notice and the existing defendants were under no obligation to provide the requested contact information prior to certification of the action as a collective action. Accordingly, Plaintiffs' motion to amend the current complaint to add the second employer is granted[2] and Plaintiff may subpoena production of payroll records from the second employer. Plaintiffs' motion to toll and for corrective notice is denied.

*Background*

Plaintiffs filed this action on June 20, 2014, against Park Kitchen LLC ("Park") and Scott Dolich ("Dolich"). Park is a limited liability company registered with the Oregon Secretary of State and Dolich is Park's sole listed member. (Compl. ¶ 6.) On September 28, 2014, Plaintiffs filed an amended complaint with the court's approval, adding Anna Josephson, Park's general manager ("Josephson"), as a defendant (the "Amended Complaint"). (Am. Compl. ¶ 5.)

---

[1]Plaintiffs also alleged individual claims for retaliation based on their termination after complaining about the alleged violations which are not relevant to the issues currently before the court.

[2]The parties have consented to jurisdiction by magistrate in accordance with 28 U.S.C. § 636(c)(1).

In the Amended Complaint, Plaintiffs allege Park, Dolich, and Josephson (collectively "Defendants") required employees to pool their tips and share them with managers and back-of-the-house employees who are not traditionally tipped employees. (Am. Compl. ¶ 6.) Plaintiffs further allege the tip pool was not valid under the Act. (Am. Compl. ¶ 6.) As a result of the alleged illegal tip pool, employees were paid less than the federal minimum wage to which they were entitled. (Am. Compl. ¶¶ 11, 13.) At least three other Park employees, Rebecca Elroy, Teal Garrels ("Garrels"), and Elisabeth McKnight, have filed consents to join in this action.

*Legal Standard*

I. Motion to Amend

After the initial pleading stage, a plaintiff may amend his "pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a) (2013). "Although the rule should be interpreted with 'extreme liberality,' leave to amend should not be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). A trial court may deny the motion if permitting amendment would prejudice the opposing party, produce an undue delay in litigation, result in futility for lack of merit, is sought by plaintiffs in bad faith or with a dilatory motive, or the plaintiffs have filed numerous amended complaints. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Prejudice to the opposing party carries the "greatest weight" in determining whether to deny leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Whether to grant leave to amend lies within the sound discretion of the trial court. *Webb*, 655 F.2d at 979. In exercising this discretion, however, the court "must be guided by the underlying purpose

of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Id.*

II. Motion to Toll and for Corrective Notice

Collective actions are similar to class actions prosecuted under Rule 23 of the Federal Rules of Civil Procedure where the "district court ha[s] both the duty and broad authority to exercise control over a class action and enter appropriate orders governing the conduct of counsel and the parties." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (quoting *Gulf Oil v. Bernard*, 452 U.S. 89, 101 (1981)). In the context of a collective action, where potential plaintiffs may decide to participate in the litigation after receiving notice, it is paramount that early communications with prospective plaintiffs be timely, accurate, and informative. *Sperling*, 493 U.S. at 171-72. Accordingly, it is in the best interest of all for the court to become involved in the management of the litigation, and primarily the communications, at the outset of the action, provided the court maintains its neutrality. *Id.* (citing *Gulf Oil*, 452 U.S. at 101.) Areas the court may address in appropriate cases include authorizing the lead plaintiff to notify potential plaintiffs of the action, resolve any disputes regarding the content of those notices, and set deadlines for potential plaintiffs to join the action. *Sperling*, 493 U.S. 171-72.

*Discussion*

I. Motion to Amend

Plaintiffs seek leave to add The Bent Brick ("Bent Brick") as a defendant. Plaintiffs allege in the proposed Second Amended Complaint (the "Proposed Complaint") that Bent Brick is a limited liability company registered with the Oregon Secretary of State, Dolich is Bent Brick's sole listed member, Josephson is Bent Brick's general manager, Bent Brick employs collective action members, and Bent Brick violated the Act in the same manner as Defendants. (Pls.' Tripartite Mot. as Ordered

by the Court ("Mot.") Ex. 1 at ¶ 5.)

One current plaintiff, Garrels, worked at both Park and Bent Brick from February 2013 to February 2014. (Garrels Decl. ¶¶ 2-3.) She originally was hired at Park in November 2012. (Garrels Decl. ¶ 2.) She did not complete an employment application or separate interview before working for Bent Brick. (Garrels Decl. ¶ 3.) Garrels worked at both restaurants depending on the staffing needs and, on occasion, would show up at the restaurant where she was scheduled to work and be sent to the other restaurant because it was busier or shorter staffed. (Garrels Decl. ¶ 7.) The restaurants had the same workweeks, pay periods, POS system, tip pool, tip checks, pay checks, paydays, and payroll company. (Garrels Decl. ¶ 4.) Dolich was at both restaurants every day and Josephson worked at both restaurants equally. (Garrels Decl. ¶ 6.) The same payroll errors occurred at both restaurants at the same time. (Garrels Decl. ¶ 5.) Garrels received nearly identical letters from the restaurants over the summer of 2014 explaining a payroll error had been discovered during an audit with back pay checks included. (Garrels Decl. ¶¶ 8-12.) Garrels was aware of others who worked at both restaurants. (Garrels Decl. ¶ 4.) The restaurants also "shared kitchen appliances and space, and frequently borrowed each other's kitchen equipments, furniture, chairs, places, and serving platters. (Allison Decl. ¶ 6.) At least one piece of training material, an outline of the four-day basic floor training, was provided by "Dolich Enterprises" and similar training occurred at both Park and Bent Brick. (Elroy Decl. ¶ 3.) The employee receiving the outline understood Dolich Enterprises referred to both restaurants owned and operated by Dolich – Park and Bent Brick. (Elroy Decl. ¶ 3.)

Plaintiffs argue Bent Brick is a co-employer of many of the collective action members and is, therefore, a proper defendant in this action. Defendants concede the restaurants shared some

employees who expressed an interest at working at both locations, but contend most employees worked for only one restaurant at a time. (Josephson Decl. ¶¶ 13 14, 17.) Defendants represent the restaurants are separate entities with their own employer identification numbers that operated from distinct locations, maintained separate bank accounts, contracted with its own suppliers and vendors, and had its own unique menu, chef, and staff. (Josephson Decl. ¶¶ 2-9.) Defendants argue Bent Brick are neither a single enterprise or joint employer under the Act, and therefore, amendment is not appropriate.

Plaintiffs allege Bent Brick is the employer of some of the collective action members and has violated the Act. The right of Bent Brick employees to sue Bent Brick for violations of the Act is not at issue. Clearly, Bent Brick employees could file a complaint against Bent Brick alleging violations of the Act. The only question is whether Bent Brick may be added as a defendant to this action.

The Supreme Court and the Ninth Circuit have consistently found the central purpose of the Act is to enact minimum wage and maximum hour provisions designed to protect employees. *See, e.g., Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981); *Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999). The Act's definition of employee has been called the " 'broadest definition that has ever been included in any one act.' " *U.S. v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (quoting 81 Cong. Rec. 7,657 (1938) (statement of Sen. Black)). "'Employ' includes to suffer or permit to work." 29 U.S.C. § 203(g) (2014). "'Employer' includes any person acting directly or indirectly in the interest of an employer . . . ." 29 U.S.C. § 203(d). The Ninth Circuit has held that the Act's definition of "employer" is not to be limited to its common law concept, but "is to be given an expansive interpretation in order to effectuate the [Act]'s broad

remedial purposes." *Boucher v. Shaw*, 572 F.3d 1087, 1090-91 (9th Cir. 2009) (citing *Lambert v. Ackerley*, 180 F.3d 997, 1011-12 (9th Cir. 1999) (internal quotation marks and citations omitted)). "The touchstone is the 'economic reality' of the relationship." *Id.* (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)).

Two or more employers may jointly employ someone for purposes of the Act. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983), *abrogated on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 539 (1985) (citing *Falk v. Brennan*, 414 U.S. 190, 195 (1973)). All joint employers are individually responsible for compliance with the Act. 29 C.F.R. § 791.2(a) (1981).

*A. Single Enterprise*

Defendants contend Plaintiffs must establish Park and Bent Brick are a "single enterprise" before they may be held jointly liable under the Act. The minimum wage provisions of the Act protect those " in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §206. "Enterprise" is defined as:

> the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor.

29 U.S.C. 203(r)(1). Accordingly, three elements are required to show an entity, or entities, fall within the definition of enterprise: 1) related activities; 2) unified operation or common control; and 3) a common business purpose. *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908, 915 (9th Cir. 2003).

Defendants do not appear to argue Park and Bent Brick are not an enterprise when viewed individually or that the minimum wage protections of the Act do not apply to them. They argue only that Park and Bent Brick are not entities that comprise an enterprise when viewed together. This argument addresses the wrong point; the correct question is whether Bent Brick should be added as a joint employer based on its relationship to Park, Dolich, and Josephson. "Whether two companies constitute a single enterprise for FLSA coverage and whether they are liable as joint employers under § 207 are technically separate issues." *Id*. at 917 (citing *Patel v. Wargo*, 803 F.3d 632, 637 (11th Cir. 1986)("[T]he enterprise analysis is different from the analysis of who is liable under the FLSA. The finding of an enterprise is relevant only to the issue of coverage."). In any event, the allegations of the Proposed Complaint and the evidence offered by Plaintiffs sufficiently establish Park and Bent Brick could qualify as an "enterprise" under the Act.

Activities are considered "related" under the Act "when they are the same or similar, such as those of the individual retail or service stores in a chain . . . ." 29 C.F.R. §779.206(a). Park and Bent Brick are individual restaurants owned by Dolich and managed under the umbrella of Dolich Enterprises. This relationship is similar to the relationship between individual retail or service stores and the "chain" that owns and/or manages such stores. *See Morgan v. Speakeasy*, LLC, 625 F. Supp. 2d 632, 647 (N.D. Ill. 2007)(two "sister operations" providing restaurant services were engaged in related activities). Dolich, Dolich Enterprises, and Josephson provided common control over Park and Bent Brick. Bent Brick and Park share the common business purpose of providing food and beverages to their customers, and shared property and employees while doing so. *See* 29 C.F.R. § 779.213 ("Generally, the term 'common business purpose' will encompass activities whether performed by one person or by more than one person, or corporation, or other business organization,

which are directed to the same business objective or to similar objectives in which the group has an interest."); *Chao*, 346 F.3d at 916 ("[A] common business purpose is generally found where there are related activities and common control."). The court finds, for the purposes of a motion to amend, Plaintiffs have adequately established Park and Bent Brick qualify as an enterprise under the Act.

*B. Joint Employer*

"[J]oint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [A]ct." 29 C.F.R. § 791.2(a). In scenarios where the alleged joint employment is horizontal,[3] which is the case here, the Ninth Circuit looks to the regulations as a guide for determining the existence of joint employment. *Chao*, 346 F.3d at 917.

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
> * * *
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b).

In the briefing, the parties appear to concentrate on the relationship between Park and Bent Brick in arguing whether or not they are joint employers. The court finds the relationship between Dolich and Josephson, as the owner and general manager of both restaurants, and the collective members is primarily relevant. While Bent Brick and Park may have operated as separate entities

---

[3]Vertical joint employment occurs when "a company has contracted for workers who are directly employed by an intermediary company." *Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1062 (D. Or. 2010).

financially, the evidence establishes that the employees of both restaurants were controlled and supervised by Dolich, through Josephson and other managers. Dolich, or Dolich Enterprises, trained the employees of both restaurants in the same manner; scheduled the employees at both restaurants, sometimes sending an employee from one restaurant to the other when necessary; paid the employees of both restaurants in a similar manner through the same payroll company; and issued nearly identical corrective notices to the employees of both restaurants after becoming aware of Plaintiffs' claims against Park. These facts support a finding that the employers were not "completely disassociated" with respect to the employment of the mutual employees and the restaurants are under common control.

The court is merely determining, at this juncture, if Plaintiffs should be allowed to amend the Amended Complaint to add Bent Brick as a defendant. It is not considering whether Plaintiffs have stated a viable claim under Rule 12, or have sufficiently supported that claim with evidence to survive a Rule 56 motion. In light of the evidence showing the relationship between Dolich and both restaurants, the sharing of personal property and employees between the restaurants, and the "underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities," the court finds the addition of Bent Brick as a defendant is appropriate. This finding does not prevent Defendants from moving to dismiss the claims against Bent Brick or Bent Brick moving for summary judgment once adequate discovery has been accomplished.

II. Motion to Toll and for Corrective Notice

Plaintiffs contend Defendants' communications with prospective class members after this action was filed has been misleading, coercive, and intimidating. Plaintiffs also represent Defendants refused to provide contact information for the prospective class members in response to

Plaintiffs' request. Plaintiffs ask the court to issue a corrective notice apprising prospective plaintiffs of Defendants' inaccurate and confusing communications, and toll the statute of limitations based on Defendants' coercive and intimidating communications and failure to timely provide requested contact information.

In a demand letter dated May 5, 2014, Plaintiffs' counsel gave Park and Dolich written notice of nonpayment and a wage claim as required under Oregon law. (Egan Decl. Ex. 1 at 1.) The letter outlined Plaintiffs' claims for wrongful deductions, minimum wage violations, unpaid wages, and retaliation and wrongful termination. (Egan Decl. Ex. 1 at 1-2.) The letter informed the recipients it "will serve as an ORS 652.750 demand for documents and spoliation notice." (Egan Decl. Ex. 1 at 1.) Under a section entitled "Official Request for Employee Records," the letter requests documents relating to Plaintiffs and "all payroll and salary records for all employees beginning on January 1, 2004," and "the full name, present or last known address, telephone number and email, present or last known place of employment, present or last known job title and relationship, if any, to you or my client(s) of all persons believed to have knowledge of the facts concerning the claims or defenses at issue. . . ." (Egan Decl. Ex. 1 at 4-5.)

A Park employee, who prefers to remain anonymous for fear of retaliation, provided information to Plaintiffs' counsel about statements made by Dolich at a weekly staff meeting on June 26, 2014, less than a week after this action was filed. (Egan Decl. ¶ 2.) Dolich acknowledged the filing of this action and the allegations of allegedly illegal tip pooling, the improper distribution of tips, and the failure to pay the required minimum wage. (Egan Decl. ¶ 2.) Dolich admitted to the minimum wage violations, characterized it as an honest mistake, and indicated "they were in the process of making amends for that." (Egan Decl. ¶ 2.) He expressed his opinion that the tip pool,

and distributions of tips, was proper based on statements from several attorney friends, and that "they would fight that part of the lawsuit to the death." (Egan Decl. ¶ 2.) He also stated the lawsuit did not affect any of the current employees and that they should not worry about it. (Egan Decl. ¶ 2.)

The employee explained:

> I don't want to reveal my name, because I am afraid of being retaliated against and made uncomfortable at work. Even before I ever talked to Mr. Egan, I had heard that Nan Allison and Holly Burney had been fired because of their speaking out against the tip pool. I really don't think most people even know that the lawsuit applies to them. I do know that some other employees still disagree with the general manager Anna Josephson getting a point in the tip pool, but we don't feel like we can talk about it openly.

(Egan Decl. ¶ 2.)

On July 21, 2014, Park forwarded letters to at least two employees who no longer worked at Park, advising them of a financial error and providing a check for "retro pay." (Garrels Decl. Ex. 4, 5; Pavey Decl. Ex. 1.) The letter, signed by Dolich, read:

> I hope this letter finds you well. Upon auditing our previous payroll records, we discovered that we owe you a small amount of back pay. This check covers the amount we owe you plus a generous amount of interest for your inconvenience. We realize it is a small amount but we like to keep our books clean. We are terribly sorry for any inconvenience this may have caused.

(Garrels Decl. Ex. 4; Pavey Decl. Ex. 1.)[4]

Plaintiffs ask the court to toll the statute of limitations based on the Dolich's misleading statements in the staff meeting and Defendants failure to timely provide contact information in response to the May 5, 2014, letter. Plaintiffs request for corrective notice relies on the misleading statements in the staff meeting and the letters and checks mailed to ex-employees allegedly curing

---

[4]Bent Brick sent Teal a virtually identical letter and check on September 16, 2014. (Garrels Decl. Ex. 6, 7.)

any payment discrepancy.

*A. Motion to Toll*

Under the Act, the statute of limitations for filing a claim is two years, or three years if the violation was "willful." 29 U.S.C. § 255(a) (2014). Furthermore, an action under the Act:

> shall be considered to be commenced in the case of any individual claimant –
>
> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
>
> (b) if such written consent was not so filed or if his name did not so appear – on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256 (2014). The basic thrust of this statutory section is that a potential plaintiff must submit his or her consent to become a party plaintiff within two or three years of an alleged violation of the Act.

In general, "[e]quitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant or when extraordinary circumstances beyond a plaintiff's control made it impossible to file a claim on time." *Veliz v. Cintas Corp.*, 2007 U.S. Dist. LEXIS 24428, at *14 (N.D. Cal. Mar. 20, 2007) (citing *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999); *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996), *cert. denied*, 522 U.S. 814 (1997)). The doctrine "is extended sparingly and only where claimants exercise diligence in preserving their legal rights." *Adams v. Inter-Con Security Systems, Inc.*, 242 F.R.D. 530, 542-543 (N.D. Cal. Apr. 11, 2007) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). The Ninth Circuit has applied the doctrine of equitable tolling to collective actions under the Act. *Partlow v. Jewish Orphans' Home of Southern California, Inc.*, 645 F.2d 757, 761 (9th Cir. 1981).

1. Failure to Provide Contact Information

Plaintiffs argue Defendants' failure to produce contact information for prospective employees when requested justifies the tolling of the statute of limitations from June 26, 2014. Plaintiffs rely on *Adams* for the proposition that a defendant's delay in providing requested discovery may justify equitable tolling. In *Adams*, the plaintiffs argued equitable tolling was appropriate "due to defendant's refusal to supply potential plaintiffs' contact information to the named plaintiffs." *Adams*, 242 F.R.D. at 543. The court agreed, noting plaintiffs were not at fault and defendants' refusal was wrongful: "Because plaintiffs have diligently pursued their legal rights by soliciting information from defendants, and defendants['] refusal has delayed that pursuit, equitable tolling is appropriate." *Id.*

This court has previously characterized the result in *Adams* as an "anomaly." *Goudie v. Cable Comm'ns, Inc.*, Civ. No. 08-507-AC, 2008 WL 4861649, at *3 (D. Or. Nov. 8, 2008). Rather, this court adopted the approach taken in *Prentice v. Fund for Publ. Interest Research, Inc.*, No. C-06-7776 SC, 2007 WL 2729187 (N. D. Cal. Sept. 18, 2007), which explicitly rejected *Adams* by concluding the failure to produce requested contact information prior to conditional certification of the collective did not warrant equitable tolling. The *Prentice* court reasoned "[i]f refusal to disclose contact information is sufficient basis to grant equitable tolling, either the FLSA statute of limitations is meaningless or the Courts are reading a disclosure requirement into the FLSA where the statute does not contain such a requirement." *Id.* at *3. This court agreed "the FLSA contains no requirement that a defendant produce contact information for potential plaintiffs prior to conditional certification" and held "Plaintiffs' reliance on *Adams* is unavailing." *Goudie*, 2008 WL 4861649, at *3. At least one other judge in this district has reached a similar conclusion. *See Marguiles v. Tri-*

*County Metro. Transp. Dist. of Oregon*, No. 3:13-cv-00475-PK, 2013 WL 5593040 (D. Or. Oct. 20, 2013)("I agree with the courts that have found equitable tolling is not appropriate where a defendant withholds contact information for potential plaintiffs prior to conditional certification of the collective action.").

This action has not been certified as a collection action. Plaintiffs are relying solely on a request for contact information made on May 5, 2014, before this action even was filed. Defendants refusal to provide contact information prior to issuance of the court's final order authorizing notice was not improper and, therefore, equitable tolling is not justified.

2. Staff Meeting Communications

Plaintiffs also rely on what they characterize as the misleading and inherently coercive information provided at the staff meeting as justification for the equitable tolling of the statute of limitations. Plaintiffs present testimony from an anonymous employee that Dolich represented the lawsuit did not affect the employees present at the meeting and that most employees did not think the lawsuit applied to them. While this establishes Park employees may have been unclear about whether they could participate in the lawsuit, it did not prevent the employees from independently investigating their rights or their ability join as a plaintiff in this action. In fact, if this action is certified as a collective action, each of these employees will receive notice informing them of their right to participate, thereby negating the effect of any misleading or coercive communication. Defendants' conduct is not out of the ordinary, much less the extraordinary circumstances required to justify equitably tolling the statute of limitations. Plaintiffs' request for tolling of the statute of limitations is denied.

*B. Motion for Corrective Notice*

Plaintiffs also move for corrective notice to address the misleading information provided by Defendants to prospective plaintiffs. Specifically, Plaintiffs' claim Dolich's statements at the staff meeting led employees to believe they could not participate in this actions, and that the letters and checks mailed to ex-employees could lead those individuals to believe Defendants had paid all sums due them, leading to confusion about whether those recipient could joins as a plaintiff in this action.

Communications with prospective plaintiffs in a collective action prior to certification of the class are generally allowed. *Giles v. St. Charles Health System, Inc.*, 980 F. Supp. 2d 1223, 1226 (D. Or. 2013). These communications raise issues, however, when they are misleading, coercive, or improper. *Id*. The court may address these issue by restricting the communications between the parties and the prospective plaintiffs or ordering a corrective notice to remedy the effect of improper communications. *Id*.; *Goody v. Jefferson County*, No. CV-09-437-E-BLW, 2010 WL 3834025 (Sept. 23, 2010). The court's authority to regulate communications with class members must be based on clear evidence that a potential for serious abuse exists. *Gulf Oil*, 452 U.S. at 101. The moving party bears the burden of establishing the "particular abuses by which it is threatened" *Id*. at 102.

1. Staff Meeting Communications

Dolich's statements at the staff meeting that the lawsuit does not affect the employees and they "should not worry about it" is misleading, as evidenced by the anonymous employee's opinion that most people did not know the lawsuit applies to them. However, if this action is certified as a collective action, notice of the lawsuit will be sent to all Park employees, including those attending the June 26, 2014, staff meeting. The notice will inform Park employees of the specifics of the lawsuit and their right to join as a plaintiff, thereby remedying any misunderstanding created by

Dolichs' misleading statements. Accordingly, an independent corrective notice is not warranted.

2. Letters and Checks to Ex-Employees

Plaintiffs argue the letters and checks mailed to ex-employees could be viewed by the recipients as payment in full of all amounts due them from Park and a bar to participation in this lawsuit. Plaintiffs identify *Goody* as a nearly identical case and argue this court should require corrective notice as the *Goody* court did. The defendant in *Goody* sent letters to various putative plaintiffs explaining the employees wages were not adequately paid and attaching a check to "ensure compliance with all State and federal laws." *Goody*, 2010 WL 3834025 at *1. At least one recipient stated the letter and check confused him with regard to whether he could join the collective action. *Id*. The court found that while the recipient eventually joined in the action, his initial confusion was evidence that others could be confused and corrective notice was necessary to inform all prospective plaintiffs of their right to join the collective action. *Id*. at *3.

*Goody* is distinguishable from this case in at least two particulars. First, Plaintiffs have not presented evidence that any ex-employees considered the letter and check to be confusing with regard to their right to participate in this action. To the contrary, Garrels, one of the ex-employees who received a letter and check, has filed her consent to join this action, supporting the conclusion that the correspondence was not misleading. Second, in *Goody*, the court indicated the plaintiffs filed a motion for certification of a class action on February 3, 2010; the letters and checks were mailed to the prospective plaintiffs on March 2, 2010; and the court approved the collective class and proposed notice one month later. *Id*. at *1. As the opinion addressing the plaintiff's motion for corrective notice was dated September 23, 2010, it appears the initial notice to the collective members had been mailed prior to the court considering the plaintiff's motion for a corrective notice

and that corrective notice was necessary to remedy the inconsistencies between the initial notice and the letters and checks.

Here, Plaintiffs have not filed, and the court has not approved, a motion to certify this action as a collective action. Consequently, Plaintiffs have not provided Park employees and ex-employees of the specifics of the lawsuit and their right to participate in the action. If this collective action is certified, the initial notice may be framed to remedy any confusion resulting from Park's letters and checks. Accordingly, the court finds corrective notice to remedy any current misunderstanding created by the letters and checks is not required.

III. Motion for Production of Bent Brick Payroll Records

Defendants argue the court should not allow the production of Bent Brick's payroll records if it allows Plaintiffs to add Bent Brick as a defendant. Defendants appear to concede the records are relevant, and discoverable, if Bent Brick is a party to the litigation. The court has granted Plaintiffs' motion to amend. Consequently, the production of Bent Brick payroll records is appropriate. Plaintiffs are authorized to issue subpoenas to Paychex and BenefitMall for the production of Bent Brick's payroll records.

*Conclusion*

Plaintiffs' motion (#27) to amend the Amended Complaint to identify Bent Brick as a defendant is granted and Plaintiffs may issue subpoenas for the production of Bent Brick's payroll records. Plaintiffs' motion to toll and for corrective notice is denied.

DATED this 16th day of December, 2014.

/s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge