UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

NANCY ALLISION and HOLLY BURNEY, both in their individual capacities and, in addition, as a collective action on behalf of others similarly situated,

Plaintiffs,

v.

SCOTT DOLICH and ANNA JOSEPHSON, individuals, and PARK KITCHEN LLC, an Oregon limited liability company,

Defendants.

Case No.: 3:14-CV-1005-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiffs Nancy Allison ("Allison") and Holly Burney ("Burney") (collectively "Plaintiffs")

brought this collective[1] action against their prior employer seeking damages for violations of the Fair Labor Standards Act (29 U.S.C. §§ 201 - 219) (the "Act").[2] Defendants Park Kitchen LLC ("Park"); The Bent Brick ("Bent Brick"); Scott Dolich ("Dolich"); and Anna Josephson ("Josephson") (collectively "Defendants") move for summary judgment on Plaintiffs' claim under the Act, arguing current case law from the Ninth Circuit and the District of Oregon prohibit Plaintiffs' tip pool claims and Plaintiffs have failed to support their minimum-wage claim based on late paychecks. Plaintiffs assert Defendants' motion should be converted to a motion to dismiss and they should be allowed to replead, if necessary, and alternatively seek additional discovery.

The court finds Defendants' properly characterized their motion as one for summary judgment, Plaintiffs are not entitled to additional discovery, Defendants did not take a tip credit and are, therefore, not subject to the tip-pooling restrictions under the Act, and Defendants paid Plaintiffs the federal minimum wage in a timely manner. Accordingly, Defendants' motion for summary judgment is granted.[3]

*Preliminary Procedural Matters*

Plaintiffs object to the evidence offered in Josephson's declaration, asserting Josephson lacks personal knowledge of the conclusory statements contained therein, and the attached payroll records are hearsay and not the best evidence. Additionally, Plaintiffs object to the declaration of defense

---

[1] At least four other Park employees, Rebecca Elroy, Teal Garrels, Elisabeth McElligott, and Bradford Bohrer, have filed consents to join in this action as collective members.

[2] Plaintiffs also alleged individual claims for retaliation based on their termination after complaining about the alleged violations which are not relevant to the issues currently before the court.

[3] The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).

counsel, Karen L. O'Connor, arguing she lacks personal knowledge of the facts contained in the attached correspondence, which contains unauthenticated hearsay.

The evidence presented in support of or in opposition to a motion for summary judgment must be based on personal knowledge, properly authenticated, and admissible under the Federal Rules of Evidence. FED. R. CIV. P. 56(c) (2015). The court must determine what evidence is admissible, relevant, and substantive. FED. R. EVID. 104 (2015). A party filing a motion for summary judgment will generally support that motion with affidavits or declarations. Rule 56 requires that the affidavits or declarations " be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4).

I. Josephson Declaration

Josephson is the Director of Service for Park and the General Manager of Bent Brick. (Josephson Decl. ¶1.) She served in these or similar positions during the relevant period. (Second Am. Compl. ¶ 6.) In her capacity as a manager or director, Josephson has the requisite personal knowledge of the facts related to Plaintiffs' employment with Defendants and Defendants' general business practices offered in her deposition.

Attached to the Josephson Declaration are copies of Park's payroll registers for Allison and Burney during the relevant period which Plaintiffs claim are inadmissible hearsay. Hearsay is defined as an out-of-court statement offered in evidence to prove the truth of the matter asserted. FED. R. EVID. 801 (2015). Hearsay is admissible only if it qualifies as an exception to the general hearsay rule. The Ninth Circuit generally has applied the limitations found in the hearsay rule, set forth in Rule 802 of the Federal Rules of Evidence, to evidence offered by the parties at the summary

judgment stage. *Orr v. Bank of America*, 285 F.3d 764, 778 (9th Cir. 2002); *Beyenne v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988).

Defendants offer the statements made in the payroll registers by the party preparing them for the truth of the matters asserted therein – the hourly wage paid to Plaintiffs and the dates of the biweekly paychecks – and are hearsay. The payroll registers are properly characterized as business records that fall within the Rule 803(6) exception to the hearsay rule. Evidence falls under the business records hearsay exception when the record was: (1) made or transmitted by an individual with personal knowledge; (2) contemporaneously to the events discussed therein; (3) kept in the course of a regularly conducted business activity; and (4) accompanied by supporting testimony. *Clark v. City of L.A.*, 650 F.2d 1033, 1036-37 (9th Cir. 1981); FED. R. EVID. 803(6) (2015). Time cards and payroll records are business records which may be authenticated by testimony establishing the documents were prepared and kept in the regular course of business. *U.S. v. Turner*, 189 F.3d 712, 720-21 (8th Cir. 1999). Even if Josephson did not adequately identify the payroll registers as admissible business records, this flaw may clearly be cured at trial. See *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003)("[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents.")

Plaintiffs also argue the payroll registers do not provide the best evidence of hours worked and that Defendants must offer the employee time cards to establish these facts. Plaintiffs contend Defendants compiled the payroll registers with information from employee's clock-in and clock-out times recorded by the DinerWare Point-of-Sale System. Because the payroll registers are a summary of hours recorded by the DinerWare Point-of-Sale System time cards, Plaintiffs argue the underlying time cards must be produced in discovery for the "summary" to be admissible.

The best evidence rule provides: "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." FED. R. EVID. 1002 (2015). Where original documents are voluminous, a party may prepare and offer a summary of the original documents to prove their content, but must provide the original documents to the opposing party for examination at a reasonable time. FED. R. EVID. 1006 (2015).

The payroll registers are prepared by Defendants, or Defendants' agent, in the ordinary course of business and are not a summary of voluminous documents prepared for trial. *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258-59 (9th Cir. 1984) (document prepared for litigation purposes lacks trustworthiness inherent in a business record and, therefore, does not qualify as a business). The payroll registers remain admissible on their own right as business records. Furthermore, Defendants offer the payroll registers to establish the hourly rate Plaintiffs were entitled to and the dates the payroll checks were issued. The payroll registers are the best evidence of these facts.

Plaintiffs contend an employee's hourly rate is determined by dividing the dollars paid by the hours worked, information not available in the payroll registers. If Plaintiffs dispute the accuracy of the payroll registers, they may do so by offering evidence Defendants did not pay Plaintiffs for all hours worked, not by requiring Defendants to offer evidence which may support Plaintiffs' claim.[4]

II. O'Connor Declaration

Attached to the O'Connor Declaration is correspondence between Plaintiffs' counsel, Jon M. Egan, Defendants, and Defendants prior legal counsel, Edwin A. Harnden, with regard to this action.

[4]Plaintiffs rely on the exhibits attached to the Josephson Declaration in their opposition brief which could be viewed as a waiver of their objections to the evidence.

Plaintiffs object to the attached documents asserting O'Connor has no personal knowledge of the facts contained therein and the documents are unauthenticated hearsay. The correspondence relates primarily to Plaintiffs' state law claims currently being litigated in statte court, are not relevant to this action, and will not be considered by the court. Consequently, Plaintiffs objections are moot.

*Background*

In the Second Amended Complaint filed on December 25, 2014 (the "Complaint"), Plaintiffs allege Defendants violated the Act by requiring Plaintiffs, and the collective members, to participate in a mandatory invalid tip pool and failing to pay Plaintiffs, and the collective members, the federal minimum wage on payday. (Second Am. Compl. ¶ 13.) In support of this claim, Plaintiffs offer the following factual allegations:

> 6.
>
> Defendants required Plaintiffs and the other Collective members to pool their tips with the General Manager Defendant Anna Josephson (whether or not she was present in the restaurant), with other Managers, and with the back-of-the-house staff. General Manager Defendant Anna Josephson and the other Managers are Plaintiffs' and the Collective Member's statutory employers, and neither Defendant Anna Josephson, the other Managers, or the back-of-the-house staff are traditionally tipped employees. The tip pool was therefore not valid under the FLSA. See 29 C.F.R. §§ 531.50 et seq., as amended April 5, 2011. In the absence of a valid tip pool, tipped employees must be allowed to keep all of their tips in addition to the minimum cash tipped wage paid by the employer. That did not happen, so the employees were supposed to receive the entire federal minimum wage in cash in addition to all of their tips. The tips taken from the tipped employees and given to those nontipped employees were substantial – enough to reduce the tipped employees' wages below the respective federal minimum wage for the respective work weeks.
>
> 7.
>
> Defendants often issued checks to Plaintiffs and Collective Members after the regular payday on which such checks were due. In doing so, they failed to pay them the minimum wage on payday, when it was due.

8.

> At all relevant times, Plaintiffs and Collective members were employed at or under the applicable Oregon minimum wage, which in turn was very near the applicable federal minimum wage. For each Plaintiff and Collective member, nonpayments and deductions from pay as enumerated herein reduced their pay for a given workweek below the level of the applicable minimum wage for that workweek.

(Second Am. Individual and Collective Allegation Compl. ("Second Am. Compl.") ¶¶ 6-8.)

On March 15, 2015, Defendants moved for partial summary judgment against the wage claims, arguing that Judge Mosman of this court recently rejected identical tip-pooling claims in *Rocksmore v. Hanson*, No. 3:14-cv-01114-MO, 2015 WL 852938 (D. Or. Feb. 14, 2015), which finding is supported by the Ninth Circuit's holding in *Cumbie v. Woody-Woo, Inc.*, 596 F.3d 577 (9th Cir. 2010). Defendants additionally relied on *Oregon Rest. & Lodging v. Solis*, 948 F. Supp. 2d 1217 (D. Or. 2013), currently on appeal before the Ninth Circuit.

In support of their motion, Defendants offer Josephson's declaration to establish Park and Bent Brick's (the "Restaurants") pay days, the hourly rates paid to Allison and Burney during the relevant period, and dates such wages were paid.[5] The declaration, and attached payroll records, indicate Allison's regular hourly rate was $8.40 from June 2011 to January 2013,[6] when her regular

---

[5]Defendants offer payroll records and handbooks from Park only, despite that both Park and Bent Brick are named as defendants and are alleged to have engaged in the same conduct. This is likely because Plaintiffs worked only at Park. Teal Garrels, the only employee identified to date as working in both Park and Bent Brick, represented in her October 3, 2014 declaration offered in support of Plaintiffs' motion to add Bent Brick as a defendant that: "Both restaurants had the same workweeks, pay periods, POS system, tip pool, tip checks, pay checks, paydays, and payroll company." (Garrels Decl. ¶ 4.) Based on this evidence, and the absence of any evidence to the contrary, the court finds Park's payroll records and handbook are indicative of those issued by Bent Brick. Accordingly, the rulings in this Opinion and Order apply equally to Park and Bent Brick.

[6]From December 2012 to May 2013, Allison was paid $10.00 for a portion of her hours. (Josephson Decl. Ex. 1, at 7-9.)

hourly rate increased to $8.95. (Josephson Decl. Ex. 1, 1-8.) As of May 2013, Allison's regular hourly rate was $10.00. (Josephson Decl. Ex. 1, 9-13.) Burney's hourly rate from June 2011 to February 2013 was $8.40 (Josephson Decl. Ex. 2, 1-8.) Burney was paid $8.95 per hour from February 2013 to February 2014, when her hourly rate increased to $9.10. (Josephson Decl. Ex. 2, 8-11.)

Josephson represents employees "were paid tips on Thursdays via check"and "were paid their hourly wages twice monthly, on the 5th and the 20th of each month." (Josephson Decl. ¶¶ 10, 11.) "Occasionally a holiday delays the delivery or deposit of a paycheck but this is rare." (Egan Decl. Ex. 3 at 2, 3, 6.) Defendants required employees to allow direct deposit of their paychecks, unless it was not possible. (Egan Decl. Ex. 3 at 2, 3, 6.) All required withholdings, including those related to the previously paid tips, were taken from the paychecks issued on the fifth and twentieth. (Josephson Decl. ¶ 11.) Occasionally, the required withholdings for both the tips and hourly wages exceeded an employee's hourly wage paycheck, resulting in the issuance of only a pay stub showing the tips, hourly wages, and withholding on a regular pay date. (Josephson Decl. ¶ 12.)

In support of their opposition, Plaintiffs offer the April 10, 2015 declaration of their attorney, Jon M. Egan, with copies of various documents provided by Defendants in discovery. A number of pages describing the Restaurants' tip pool policy are attached the Egan Declaration. With the exception of one page, which is signed and dated March 20, 2014, there is no indication of the applicable time period for each version of the tip pool policy.

The March 20, 2014, version provides:

**The Tip Pool**

Park Kitchen is a pooled house. Everyone employed at PK is responsible for setting

> and delivering exemplary service and plays a crucial role in guest satisfaction and the restaurant's success. This means that EVERYONE who is employed by Park Kitchen, including kitchen staff and managers, are part of the gratuities collected by service staff on a nightly basis in addition to the wages received, compliant with state and federal minimum wage laws. The owner takes absolutely no gratuities at any time.
>
> The funds are divided into points.
>
> *All front of the house staff including hosts, bussers, servers, and bartenders receive points according to the number of hours worked with a maximum of 5 points per shift.
>
> *The kitchen staff as a whole is allotted 2 points per service.
>
> *The training manager receives one point every service, present or not.
>
> *For private parties, 7% of the final bill is allocated to kitchen and front of the house manages distributed on a monthly basis. The remaining 13% and any additional funds the guest offers go into the nightly tip pool.
>
> Points are added up each evening and the tip pool is divided by those points to determine the allocation of funds. All tips are reported and claimed in their entirety by PK. Occasionally gratuities can be paid out in cash by the MOD but service staff should expect their weekly gratuities to be issued in the form of a check every Thursday for the previous week of work. Kitchen tips are issued on bi-monthly paychecks. Employees, front or back of the house, are not tipped out during training.

(Egan Decl. Ex. 3, at 5.) The other versions of the tip pool policies are virtually identical to the March 20, 2014 version. Some versions of the Restaurants' handbooks provided "[a]ny deviation from the standing tip pool needs to be approved by the manager and all employees participating in the tip pool before the changes are made. Without consent from all parties, deviation is considered stealing." (Egan Decl. Ex. 3, at 2, 3, 6.)

Plaintiffs provide some history of the Restaurants' tip pool. In 2011, "the tip pool was limited to servers paying the bartender $1 per drink plus 2 or 3 points from the tip pool, and everyone kept their tips besides that." (Allison Decl. ¶ 2; Burney Decl. ¶¶ 2, 3.) At some point, without consent or notice to Plaintiffs, the bartenders' share was increased to 5 points, and the $1 per drink

was dropped. (Allison Decl. ¶¶ 2, 7; Burney Decl. ¶¶ 2, 3, 9.) In November 2013, a five percent service was added to the twenty percent fee charged to private parties. (Allison Decl. ¶¶ 3, 4; Burney Decl. ¶¶ 5, 6.) The additional service fee goes to the Restaurants, but its effect on the tip pool is unclear. (Allison Decl. ¶ 4; Burney Decl. ¶ 6.) In March 2014, the tip pool policy changed, again without consent or notice to Plaintiffs, to provide Josephson with a point in the tip pool, whether she worked or not, and the front-end managers' share went from two points to five points for hosting shifts. (Allison Decl. ¶¶ 6, 7; Burney Decl. ¶¶ 8, 9.) Plaintiffs represent they did not receive a written copy of a tip pool policy until March 2014, which is contradicted by a document signed by Allison on May 25, 2010, stating that Allison had "read the Park Kitchen Handy Dandy Handbook and understand the rules, policies, and tip pool." (Allison Decl. ¶ 5; Burney Decl. ¶ 7; Egan Decl. Ex. 5, at 2.)

Also attached to the Egan Declaration are copies of pages describing the items employees of the Restaurants are required to provide. The only page identified with a date, which is November 11, 2013, provides that "Front Door" employees must be "ready with mise en place.[7] This includes 3 working pens, wine key, lighter, and paper pad to write orders on." (Egan Decl. Ex. 4, at 3.) Other pages indicated servers, or employees in general, were required to have the same items as the "Front Door" employees at the beginning of their shift. (Egan Decl. Ex. 4, at 2, 4, 6, 7.) Some cautioned servers not to "count on there being any of these things in the restaurant to borrow." (Egan Decl. Ex. 4, at 2, 7.) Cooks were "responsible for providing their own tools, including knives [and] sharpies . . ." (Egan Decl. Ex. 4, at 1.) One page indicated the Restaurants would provide cooks with clean

[7] French, literally "putting in place." OXFORD DICTIONARIES ONLINE, http://www.oxforddictionaries.com/us/definition/american_english/mise-en-place (last visited November 30, 2015).

aprons, while another page stated: "Servers and cooks will be issued two aprons at the start of their employment. $20 will be deducted from your first paycheck for this deposit and returned to you upon return of the aprons." (Egan Decl. Ex. 4, at 1, 5.) Defendants assigned Plaintiffs weekly projects, such as researching wine, foods, and farms, attending wine classes, or performing wine tastings, which were off-the-clock and not compensated. (Allison Decl. ¶ 8; Burney Decl. ¶ 10.)

*Legal Standard*

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2015). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id*. at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v.*

*Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. FED. R. CIV. P. 56(c) (2013). The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

*Discussion*

I. Tip Pool Claim

Plaintiffs allege Defendants violated the Act when it required them to participate in an invalid tip pool. Plaintiffs assert the tip pool is invalid under the Act because it allowed employees not traditionally tipped and managers, who are Plaintiffs' statutory employers, to share in the tip pool. Defendants contend the Act restricts only employers who take a tip credit. As Defendants paid Plaintiffs an hourly wage in excess of the federal minimum, they did not take a tip credit and are not restricted by the Act.

Plaintiffs allege Defendants violated 29 U.S.C. § 206, which requires Defendants to pay its employees the federal minimum wage, by taking their tips for an invalid tip pool. (Second Am. Compl. ¶ 13.) The federal minimum wage has held steady at $7.25 since 2009. 29 U.S.C. § 206(a)(1)(C). Defendants have established, and Plaintiffs do not dispute, that Plaintiffs received an

hourly wage well in excess of the federal minimum during the relevant period without regard to tips. Allison and Burney were both paid, at a minimum, $8.40 an hour. Therefore, viewing the requirements of § 206 only on these facts, Defendants were not in violation of this provision.

Plaintiffs, more specifically, allege Defendants violated 29 U.S.C. §203(m), which limits an employers' ability to manipulate its employees' tips. 29 U.S.C. § 203(m) provides, in pertinent part:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to –
>
>> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on [August 20, 1996, which was $2.13 an hour]; and
>>
>> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under [19 U.S.C. § 206(a) which is $7.25 an hour].
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

Plaintiffs argue because Defendants shared the tip pool with employees who do not customarily receive tips, they are not entitled to the protection offered § 203(m). Defendants assert Plaintiffs do not need the protection of § 203(m) because they paid Plaintiffs the federal minimum wage. Therefore, their tip pood does not need to comply with that section.

The Ninth Circuit agrees with Defendants. In *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 578, 581 (9th Cir. 2010), the court addressed the issue of "whether a restaurant violated the Fair

Labor Standards Act, when, despite paying a cash wage greater than a minimum wage, it requires its wait staff to participate in a 'tip pool' that redistributes some of their tips to the kitchen staff."[8] The court held that when an employer pays a hourly wage in excess of the federal minimum and, as a result, does not take a tip credit, the employer's tip-pooling arrangement is not subject to and will never violate § 203(m). In so holding, the Ninth Circuit relied on three things: (1) a principle recognized by the United States Supreme Court; (2) the general purpose of the Act; and (3) a statutory construction of § 203(m).

First, the court acknowledged the default rule established by the United States Supreme Court in *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386 (1942), that tip pools are presumptively valid. *Cumbie*, 596 F.3d at 579. In *Williams*, the Supreme Court clearly stated "[i]n businesses where tipping is customary, the tips, in the absence of an explicit contrary understanding, belong to the recipient. Where, however, an arrangement is made by which the employee agrees to turn over the tips to the employer, in the absence of statutory interference, no reason is perceived for its invalidity." *Williams*, 315 U.S. at 397 (internal citations omitted). The Ninth Circuit rejected Cumbie's implied argument that § 203(m) overruled *Williams*. *Cumbie*, 596 F.3d at 582.

Second, the court noted the purpose of the Act – to "protect workers from 'substandard wages and oppressive working hours' " – did not support restrictions on tip pools where the employer was paying a wage in excess of the federal minimum. *Id*. (quoting *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 839 (1981)). "Our conclusion that the FLSA does not prohibit Woo's tip-pooling arrangement does not thwart this purpose. Cumbie received a wage that was far greater than the

---

[8]Kitchen staff "are not customarily tipped in the restaurant industry." *Cumbie*, 596 F.3d at 579

federally prescribed minimum, plus a substantial portion of her tips. Naturally, she would prefer to receive *all* of her tips, but the FLSA does not create such an entitlement where no tip credit is taken." *Cumbie*, 596 F.3d at 582-83 (emphasis in original).

Finally, the court construed the text of § 203(m) to apply only in situations where an employer is taking a tip credit – using an employee's tip to make up the difference when the employer does not pay minimum wage – based on the clear, unambiguous language of the provision. *Id*. at 581. The Ninth Circuit explained:

> the plain text of the third sentence, which imposes *conditions* on taking a tip credit and does not state freestanding *requirements* pertaining to all tipped employees. A statute that provides that a person must do *X in order to achieve Y* does not mandate that a person must do *X*, period.
>
> If Congress wanted to articulate a general principle that tips are the property of the employee absent a "valid" tip pool, it could have done so without reference to the tip credit. "It is our duty to give effect, if possible, to every clause and word of a statute." Therefore, we decline to read the third sentence in such a way as to render its reference to the tip credit, as well as its conditional language and structure, superfluous.

*Cumbie*, 596 F.3d at 581. The court reasoned that because the employer required employees to contribute all tips to a tip pool that included non-customarily tipped employees, the employer could not claim a tip credit under § 203(m). *Id*. The employer did not claim such tip credit, which made the provision irrelevant to the employers' tip pool. *Id*.

Here, Defendants required Plaintiffs to contribute their tips to a tip pool that included employees not customarily tipped, preventing Defendants from claiming a tip credit. However, Defendants represent, and Plaintiffs do not dispute, they did not take a tip credit. This arrangement is clearly supported by the hourly wage paid to Plaintiffs, which exceeds the federal minimum wage. As Defendants did not take a tip credit, § 203(m) is not relevant to their tip pool.

Impliedly conceding the Ninth Circuit's holding in *Cumbie* bars their claims under the Act, Plaintiffs allege the tip pool was not valid under applicable regulations. The regulations on which Plaintiffs rely – 29 C.F.R. § 531.50 et seq. – were issued by the Department of Labor ("Department") in 2011, and therefore not considered by the Ninth Circuit in *Cumbie*.

The relevant regulations, 29 C.F.R. §§ 531.52 and 531.54 (collectively the "Regulations"), provide as follows:

> **§ 531.52 General Characteristics of "tips."**
>
> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, who has the right to determine who shall be the recipient of the gratuity. Tips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA. The employer is prohibited from using an employee's tip, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section 3(m): As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool. Only tips actually received by an employee as money belonging to the employee may be counted in determining whether the person is a "tipped employee" within the meaning of the Act and in applying the provisions of section 3(m) which govern wage credits for tips.
>
> **531.54 Tip Pooling**
>
> Where employees practice tip splitting, as where waiters give a portion of their tips to the busboys, both the amounts retained by the waiters and those given the busboys are considered tips of the individuals who retain them, in applying the provisions of section 3(m) and 3(t). Similarly, where an accounting is made to an employer for his information only or in furtherance of a pooling arrangement whereby the employer redistributes the tips to the employees upon some basis to which they have mutually agreed among themselves, the amounts received and retained by each individual as his own are counted as his tips for purposes of the Act. Section (m) does not impose a maximum contribution percentage on valid mandatory tip pools, which can only include those employees who customarily and regularly receive tips. However, an employer must notify its employees of any required tip pool contribution amount, may only take a tip credit for the amount of tips each employee ultimately receives, and may not retain any of the employees' tips for any other purpose.

The Department amended the Regulations, in part, to clarify "that an employer in all cases is prohibited from using an employee's tips for any reason other than as a tip credit to make up the difference between the required cash wage paid and the minimum wage or in furtherance of a valid tip pool." Fair Labor Standards Act, 76 Fed. Reg. 18832, 18842 (April. 5, 2011). The Department acknowledged the Regulations were contrary to *Cumbie* in that it limited valid tip pools to those involving only employees who customarily and regularly receive tips, but respectfully believed *Cumbie* was incorrectly decided. *Id*. at 18841. The Department relied on legislative history, cases[9] cited in the legislative history, and opinion letters to support its conclusion that Congress intentionally altered the *Williams* default rule in the 1974 amendments to the Act and that it had properly filled any gap in § 203(m) by limiting employers' use of employee's tips to a tip credit or a valid tip pool. *Id*.

Under the Regulations, Defendants' tip pool, which includes employees who do not customarily and regularly receive tips, is not a valid tip pool and therefore, violates the Act. However, Judge Mosman recently considered the Regulations with regard to tip pools involving non-tipped employees and found them to be invalid. Specifically, Judge Mosman determined Congress had "directly spoken to the precise question at issue," thereby depriving the Department of any rulemaking authority and rendering the Regulations invalid. *Or. Rest. & Lodging v. Solis*, 948 F.

[9]One of the cases cited by the Department was issued by the Fourth Circuit – *Richard v. Marriott Corp.*, 549 F.2d 303 (4th Cir. 1977). 76 Fed. Reg. at 18841. The Fourth Circuit recently held the "statutory requirements that an employer inform an employee of § 203(m) and permit the employee to retain all his tips unless the employee is in a tip pool with other regularly tipped employees does not apply to employees, like the Plaintiffs, who are seeking only the recovery of the tips unrelated to a minimum wage or overtime claim." *Trejo v. Ryman Hospitality Props., Inc.*, 795 F.3d 442, 448 (4th Cir. 2015). The plaintiffs conceded they received a federal minimum wage but argued § 203(m) created a free-standing right to bring a claim for lost "tip" wages based on a tip-pooling arrangement that included employees not regularly tipped. *Id*. at 447.

Supp. 2d 1217 (D. Or. 2013).

Judge Mosman considered the Regulations under the rule articulated in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which obligates courts to "adopt an agency's interpretation of a statute it administers if Congress has not directly spoken 'to the precise question at issue' and if the 'agency's answer is based on a permissible construction of the statute.' *Oregon Rest. & Lodging*, 948 F. Supp. 2d at 1222. He acknowledged the broad general conferral of rulemaking authority granted by Congress to the Secretary of Labor with regard to the Act but found Congress had unambiguously expressed its intent to limit the application of § 203(m) to employer's taking tip credits, which both the court and the Department must honor. *Id*. at 1223. In doing so, Judge Mosman relied not only on the Ninth Circuit's analysis of § 203(m) in *Cumbie*, but also his own independent consideration the text of the statute, legislative history, and the effect of Congress's silence on the application of § 203(m) to employers who do not take a tip credit.

With regard to the language of the statute, Judge Mosman explained "the test of Section 3(m) is clear and unambiguous: It imposes conditions on employers that take a tip credit but does not impose a freestanding requirement pertaining to all tipped employees." *Id*. at 1224. The reference to the tip credit in § 203 suggests Congress intended to treat those taking tip credits differently from those that do not, a intent expressly contrary to the Regulations, which restricts all employers to valid tip pools regardless of whether they take a tip credit. *Id*. at 1224. Finally, applying the maxim that all terms of a statute must be given effect, Judge Mosman reasoned "[t]he third sentence of Section 3(m) states that if an employer takes a tip credit, the employee must be allowed to retain all her tips, except where she participates in a 'valid' tip pool. There would be no need to make such a statement if Congress intended that an employee always retains her tip." *Id*. at 1225.

The general purpose of the Act, to protect employees from substandard wages and oppressive work hours, supports limiting the tip pool restrictions to employers taking the tip credit. *Id*. at 1224. If an employer pays its employees a wage equal to or greater than the applicable minimum wage, the Act has served its purpose and the limitations in § 203(m) are unnecessary. *Id*. at 1224. Judge Mosman noted the United State Supreme Court limited the scope of the Act in *Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000) by holding that "an employment practice does not violate the FLSA unless the FLSA *prohibits* it." *Oregon Rest. & Lodging,* at 1225 (emphasis in original). He then explained:

> The new regulations prohibit the use of tips by an employer even when the employer does not take a tip credit – i.e., even when the employer pays at least the full minimum wage. In so doing, the new regulations do not protect covered workers from substandard wages or oppressive working hours , nor do they vindicate any of the FLSA's specific statutory protections. In light of . . . *Christensen*, I presume that Congress intended not to add a new statutory protection guaranteeing a tipped employee who receives the full minimum wage the additional right to retain all tips, except where she participates in a "valid" tip pool.

*Id*. at 1225 (internal citation omitted).

Finally, Judge Mosman rejected the Department's argument that the failure of Congress to address an employer's proper use of tips when no tip credit is taken left an implicit gap for the Department to fill, finding Congress expressed a clear intent to allow employers not taking a tip credit to handle employees' tips as they see fit. *Id*. at 1226. "Employing traditional tools of statutory construction, as I have done above, the intent of Congress in Section 3(m) is clear: Congress intended to impose conditions on employers that take a tip credit but did not intend to impose a freestanding requirement pertaining to all tipped employees." *Id*.

Judge Mosman's ruling in *Oregon Rest. & Lodging* is not binding on the other judges in this

district, but this court finds the reasoning sound and the result correct. Accordingly, the court adopts Judge Mosman's discussion and conclusion in *Oregon Rest. & Lodging* and finds the Regulations are invalid based on the clear intent of Congress to address the specific issue of tip-pool restrictions on employers who do not claim a tip pool credit under § 203(m). As Defendants paid Plaintiffs an hourly wage in excess of the federal minimum wage, they were not subject to the tip-pool restrictions. Defendants inclusion of employees not customarily or regularly tipped in the tip pool did not violate § 203(m).

Plaintiffs allege Josephson and other managers are statutory employers under the Act and their participation in the tip pool constitutes a violation of the Act. While Judge Mosman addressed the inclusion of only non-tipped employees in *Oregon Rest. & Lodging*, he considered the validity of a tip pool which included an owner acting as a manager and reached the same conclusion in *Rocksmore v. Hanson*, No. 3:14-cv-0114-MO, 2015 WL 852938 (D. Or. Feb. 24, 2015). Hanson paid Rocksmore an hourly wage well above the federal minimum wage. *Id*. at *1. The tip pool included "managers, including Ms. Hanson, and other 'back-of-the-house staff,' none of whom were traditionally tipped employees." *Id*. at *1. Judge Mosman acknowledged the inclusion of an owner in the tip pool was a significant factual distinction from the scenario addressed by the Ninth Circuit in *Cumbie*, but concluded Hanson's participation in the tip pool did not compel a different result. *Id*. at *6.

Judge Mosman rejected Rocksmore's argument that an owner who participates in a tip pool is essentially taking a *de facto* tip credit (*Id*. at *5-*6), an argument made by Plaintiffs in this case. He found the purpose of the Act – to protect workers from substandard wages and oppressive working hours – was met when an employer paid an hourly wage equal to the federal minimum wage

regardless of who shared in an employee tip pool. *Id*. at *6. He restated his conclusion in *Oregon Rest. & Lodging* that the Act "*was not* intended to create a freestanding regulation of tip pools." *Id*. at *6 (emphasis in original). Finally, Judge Mosman reiterated his finding in *Solis*, and the Ninth Circuit's holding in *Cumbie*, that the Act "does not restrict tip pooling when no tip credit is taken." *Id*. at *6 (quoting *Cumbie*, 596 F.3d at 582).

The court again adopts Judge Mosman's well-reasoned opinion and finds the inclusion of a manager, who is also an owner, in a tip pool does not violate the Act where the employer pays employees more than the minimum wage and, therefore, does not take a tip credit under § 203(m). The case law supports application of Judge Mosman's reasoning to this case: The Ninth Circuit in *Cumbie* approved a tip pool that included customarily non-tipped employees and the Supreme Court has concluded that an employment practice does not violate the Act unless the Act explicitly prohibits it. Here, Defendants paid Plaintiffs, at a minimum, an hourly wage of $8.40, which exceeded the federal minimum by $1.15. Defendants did not take a tip credit under § 203(m) and were not subject to the tip-pool restrictions found in that statute. The inclusion of managers alleged to be owners as well as other employees who were not customarily and regularly tipped in Defendants' tip pool did not violate the minimum wage provisions of the Act.

Plaintiffs argue the fluidity of Defendants' tip-pool arrangement prevents summary judgment. This argument is not well taken. The court has found Defendants were not subject to the tip-pool restrictions of the Act. Accordingly, the lack of a defined tip-pool policy is irrelevant. Plaintiffs attempt to distinguish *Rocksmore* based on Stephenson's participation in the tip pool even when she was not present is without merit for the same reason. Defendants paid Plaintiffs an hourly wage far above the federal minimum wage, did not take a tip credit, and were not subject to § 203(m).

Plaintiffs' assertion that Defendants' failure to advise them of, or obtain consent for, changes to the tip pool may support a claim for breach of contract but does not allege a violation of § 203(m) without evidence Defendants claimed a tip credit. Defendants are entitled to summary judgment on Plaintiffs claim under the Act to the extent it relies on a tip pool.

II. Timely Payment Claim

Plaintiffs allege Defendants often issued paychecks to employees after the regular payday on which such checks were due. As a result, Plaintiffs did not receive a minimum wage on each scheduled pay day in violation of the Act. Defendants move for summary judgment asserting Plaintiffs are unable to offer any evidence of a late paycheck during the relevant pay period.

The Act requires employers to pay each employee the federal minimum wage. 29 U.S.C. § 206 (2015). While the Act is silent on the timing of the payment obligation, the Ninth Circuit has found an implicit requirement that wages be paid on time. *Biggs v. Wilson*, 1 F.3d 1537, 1539 (9th Cir. 1993), *cert. denied*, 504 U.S. 979 (1992). The court held "[t]he only logical point that wages become 'unpaid' is when they are not paid at the time the work has been done, the minimum wage is due, and wages are ordinarily paid – on payday." *Id*. at 1540.

Defendants' regular paydays are the fifth and the twentieth of each month. The payroll registers establish the payroll checks issued to Plaintiffs were dated either on, or before, the regular paydays during the relevant period with one exception.[10] The paychecks for the pay period from February 5 to 20, 2012, were dated February 21, 2012. February 20, 2012, was a holiday –

[10]Defendants did not issue Burney paychecks on from June 5, 2012 to September 5, 2012, or January 20, 2013. The paychecks issued immediately after these dates were consistent with those issued just prior, leading to the conclusion Burney did not work during this period and was not entitled to a paycheck.

President's Day – and was the rare exception where a holiday delayed the checks by a day under Defendants pay period policy.

Plaintiffs do not identify any specific check they received or deposit made after the regular payday, and do not assert they were paid late in their declarations. In fact, Plaintiffs present no evidence Defendants failed to pay them in a timely manner. The only identification of late payments is found in Plaintiffs' response brief where they represent defendants paid employees late on April 21, 2008, July 21, 2008, January 7, 2008, July 8, 2009, September 23, 2011, and February 21, 2012. (Response to Defts.' Partial Summ. J. Mot. ("Response") at 11.) Plaintiffs rely solely on the payroll registers attached to Josephson Declaration for evidence of such late payments.

A claim for a willful violation of the Act must be brought within three years after the cause of action accrued.[11] 29 U.S.C. §255(a) (2015). This action was filed June 20, 2014. Therefore, any violation occurring before June 20, 2011, is barred by the statute of limitations. The February 21, 2012, payment was timely under Defendants' payment policy. The September 23, 2011, date is inconsistent with the September 20, 2011 check date in the payroll register. Defendants presented evidence the September 20, 2011 check was timely and Plaintiffs failed to present evidence to the contrary. Plaintiffs assert the check was late only in their response brief; they provide no evidence of the alleged late check. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez*, 343 F.3d at 1112.

Plaintiffs have failed to present evidence to support their claim Defendants violated the Act

---

[11]The statute of limitations for an non-willful violation under the Act is two years. 29 U.S.C. §255(a).

by failing to pay them in a timely manner. Defendants are entitled to summary judgment on this claim as well.

III. Additional Evidence

Plaintiffs contend Defendants' motion should be considered a motion to dismiss, rather than a motion for summary judgment, based on the limited discovery to date and Defendants' challenge of the substantive, rather than factual, basis for Plaintiffs' claims. The court disagrees.

Matters outside the pleadings are not usually appropriate on a motion to dismiss. *Cassettari v. Nevada County, Cal.*, 824 F.2d 735, 737 (9th Cir. 1987). Resolution of the tip-pool claims required consideration of the wages paid by Defendants. Plaintiffs' allegations with regard to their hourly wage are ambiguous, providing that "[a]t all relevant times, Plaintiffs and Collective members were employed at or under the applicable Oregon minimum wage, which in turn was very near the applicable federal minimum wage." (Second Am. Compl. ¶ 8.) Plaintiffs predicated Defendants' alleged obligation to comply with § 203(m) on their taking a tip credit. If Defendants paid Plaintiffs a federal minimum wage, it did not take a tip credit. Accordingly, evidence of Plaintiffs' hourly wage rates was necessary to support the allegations of the complaint and provide facts showing Defendants were obligated to comply with § 203(m). Evidence was also necessary to support Plaintiffs' claim that Defendants failed to pay a timely minimum wage. Defendants offered, and the court relied on, Defendants' payroll registers to find that Plaintiffs' pay checks were issued timely during the relevant period. Defendants properly characterized their motion as one for summary judgment.

Alternatively, Plaintiffs seek leave to conduct additional discovery before responding to Defendants' motion. Federal Rule of Civil Procedure 56(d) allows the nonmoving party to submit

an affidavit asking the court to allow specific discovery that will enable the party to oppose the motion. "Generally where a party has had no previous opportunity to develop evidence and the evidence is crucial to material issues in the case, discovery should be allowed before the trial court rules on a motion for summary judgment." *Program Eng'g, Inc. v. Triangle Publ'ns, Inc.*, 634 F.2d 1188, 1193 (9th Cir. 1980).

Additional discovery is not needed here. The relevant evidence with regard to the tip-pool claim is the hourly wage Defendants' paid Plaintiffs. Plaintiffs had access to evidence establishing their wage rate well before filing this action, and could have offered such evidence through pay stubs, declarations, or deposition testimony. Similarly, Plaintiffs must have had evidence of Defendants' failure to pay them timely to properly include in their complaint a claim based on a failure to pay a federal minimum wage in a timely manner. Despite this, Plaintiffs failed to present any evidence rebutting Defendants' payroll registers which establish pay checks issued during the relevant period were timely. Plaintiffs did not identify one untimely payment in their declarations, and did not provide evidence of a late-dated pay stub, or evidence of direct deposits made after the regular pay day. While additional discovery may reveal evidence of untimely payments, Plaintiffs should have some of this evidence already. In effect, Plaintiffs are not seeking additional discovery to rebut the evidence offered by Defendants, but evidence to support their initial claims. Additional discovery under Rule 56(d) is not warranted.

Plaintiffs assert they have evidence of other violations of the Act, such as unpaid overtime; minimum wage violations due to overgarnishments, deductions for aprons, and requirements employees provide their own supplies; unpaid minimum wages based on accounting error; and late payments based on service charges. Similarly, in their declarations, Plaintiffs represent they were

required to perform some work-related activities on their own time for which they were not paid, apparently supporting a minimum wage claim based on hours worked but not compensated.

Plaintiffs did not allege facts supporting any of these violations in the Complaint and do not seek to amend the Complaint yet again to include them. Plaintiffs merely offer the additional violations for the first time in response to Defendants' motion as possible support for their claim based on Defendants' failure to pay the federal minimum wage on payday. Considering the type of evidence Plaintiffs are offering here, it is evident Plaintiffs either knew, or should have known, of the alleged violations at the time they filed their initial complaint.[12] Plaintiffs allege they were terminated in retaliation for complaining about Defendants' violations of the Act. As all of the alleged wrongdoing related to Plaintiffs' employment with Defendants, Plaintiffs clearly were aware of the conduct, such as failure to pay overtime; requirements for providing, or paying for, work supplies; and performance of work-related activities off-the-clock, before filing this action. Plaintiffs should not be allowed to raise these violations for the first time at this juncture. *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006)(quoting *Fleming v. Lind-Waldock & Co.*, 992 F.3d 20, 24 (1st Cir. 1990))("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings."); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000)(trial

---

[12]Plaintiffs argue the evidence available to one or two plaintiffs may not reveal systematic violations that additional discovery regarding other employees may provide. While Plaintiffs label the Complaint as a "Collective Action Complaint," the court has not yet granted, or even received, a motion to certify this action as a collective action, making Plaintiffs the only relevant plaintiffs at this time. *See Genesis Healthcare Corp. v. Symczyk*, ___ U.S. ___, 133 S.Ct. 1523, 1530 (2013)(citing *Hoffman-La Roche Inc. v. Sperling*, 394 U.S. 165, 172-72 (1989))(conditional certification allows related employees to become party to action by filing written consent with the court pursuant to the Act). With the exception of one alleged clerical error relating to Allison, all of the other evidence relates to employees who have not filed consents to join the action and are not relevant to the issues currently before the court.

court did not err in dismissing claim raised for the first time at summary judgment where plaintiffs had evidence to support new claim prior to filing of summary judgment motion).

To the extent Plaintiffs' request for additional discovery is for the purpose of obtaining evidence to support additional new allegations, or discover other new claims, it is not well taken. "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990)(citing *Oppenheimer Fund , Inc. v. Sanders*, 437 U.S. 340, 363 (1978)).

*Conclusion*

Defendants' motion (#53) for partial summary judgment on Plaintiffs' First Claim for Relief for violation of the Act is GRANTED. Plaintiffs' request for additional discovery under Rule 56(d) is DENIED.

DATED this 7th day of December, 2015.

/s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge