Karen L. O'Connor, OSB No. 953710
karen.oconnor@stoel.com
John B. Dudrey, OSB No. 083085
john.dudrey@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205-2584
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

    Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NANCY ALLISON and HOLLY BURNEY, both in their individual capacities and, in addition, as a collective action on behalf of others similarly situated, | Case No.: 3:14-cv-01005-AC |
| Plaintiffs, | **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| SCOTT DOLICH and ANNA JOSEPHSON, individuals, and PARK KITCHEN LLC and THE BENT BRICK, LLC, Oregon limited liability companies, | |
| Defendants. | |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................................. 1

III.    ARGUMENT ........................................................................................................... 7

        A.      Plaintiffs Face the Full Burden of Persuasion in Their Motion for
                Summary Judgment ..................................................................................... 7

        B.      Questions of Fact Preclude Summary Judgment on Plaintiffs' Retaliation
                Claims ........................................................................................................... 8

                1.      There Are Questions of Fact as to Whether Ms. Allison and
                        Ms. Burney Engaged in Protected Activity ............................... 9

                2.      There Are Questions of Fact as to Whether Ms. Allison and
                        Ms. Burney Were Terminated Because of Their Alleged Protected
                        Activity ........................................................................................ 11

                3.      There Are Questions of Fact as to Ms. Allison and Ms. Burney's
                        Damages........................................................................................ 12

        C.      Plaintiffs' Spreadsheet Outlining Their Minimum Wage Damages Is
                Inadmissible, and In Any Case Presents Questions of Fact That Preclude
                Summary Judgment ..................................................................................... 14

        D.      Plaintiffs' Motion Must Be Denied to the Extent It Seeks Recovery for
                Employees Who Did Not Opt In................................................................ 19

        E.      Plaintiffs' Motion Must Be Denied to the Extent It Seeks Recovery for
                Opt-in Employees Beyond the Limitations Period ................................ 23

IV.     CONCLUSION...................................................................................................... 26

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adair v. City of Kirkland,*
     185 F.3d 1055 (9th Cir. 1999) ............................................................................16

*Blanton v. City of Murfreesboro,*
     856 F.2d 731 (6th Cir. 1988) ..............................................................................12

*Bonilla v. Las Vegas Cigar Company,*
     61 F. Supp. 2d. 1129 (D. Nev. 1999)...................................................................22

*Braswell v. City of El Dorado, Ark.,*
     187 F.3d 954 (8th Cir. 1999) ..............................................................................12

*Bythewood v. Unisource Worldwide, Inc.,*
     413 F. Supp. 2d 1367 (N.D. Ga. 2006)................................................................10

*Cancilla v. Ecolab, Inc.,*
     No. C 12-03001 CRB, 2013 WL 1365939 (N.D. Cal. Apr. 3, 2013) ....................21

*Cappuccio v. Pepperdine Univ.,*
     No. CV 13-3125 DSF, 2014 WL 12573366 (C.D. Cal. Sept. 17, 2014) ...............12

*Chavez v. Lumber Liquidators, Inc., No. C-09-04812 SC,*
     2011 WL 809453 (N.D. Cal. Mar. 2, 2011).........................................................21

*Clover v. Total Sys. Servs., Inc.,*
     176 F.3d 1346 (11th Cir. 1999) ...........................................................................10

*Cumbie v. Woody Woo, Inc.,*
     596 F.3d 577 (9th Cir. 2010) ..............................................................10, 12, 14

*EEOC v. Pacific Sea Food, Inc.,*
     No. CV-08-1143-ST, 2010 WL 1998878 (D. Or. Apr. 20, 2010) ...........................9

*Friedman v. Live Nation Merchandise, Inc.,*
     833 F.3d 1180 (9th Cir. 2016) ..........................................................................7, 8

*Frye v. Baptist Memorial Hospital, Inc.*
     495 F. App'x 669 (6th Cir. 2012) ........................................................................20

# TABLE OF AUTHORITIES
## (continued)

Page

*Gessele v. Jack in the Box, Inc.*,
    6 F. Supp. 3d 1141 (D. Or. 2014) .......................................................................21

*Harkins v. Riverboat Services, Inc.*,
    385 F.3d 1099 (7th Cir. 2004) ...........................................................................21

*Justice v. Rockwell Collins, Inc.*,
    117 F. Supp. 3d 1119 (D. Or. 2015) ...................................................................11

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
    563 U.S. 1 (2011)..................................................................................9, 10, 11

*Ketchum v. City of Vallejo*,
    523 F. Supp. 2d 1150 (E.D. Cal. 2007).................................................................22

*Kilgore v. Outback Steakhouse of Fla., Inc.*,
    160 F.3d 294 (6th Cir. 1998) .............................................................................17

*Lambert v. Ackerley*,
    180 F.3d 997 (9th Cir. 1999) .............................................................................13

*Mayes v. Kaiser Found. Hosps.*,
    917 F. Supp. 2d 1074 (E.D. Cal. 2013)............................................................8, 11

*McElmurry v. US Bank Nat'l Ass'n*,
    No. CV-04-642-HU, 2005 WL 2078334 (D. Or. Aug. 24, 2005) .........................16

*Moore v. Appliance Direct, Inc.*,
    708 F.3d 1233 (11th Cir. 2013) .........................................................................12

*Overnight Motor Transp. Co. v. Missel*,
    316 U.S. 572 (1942)..........................................................................................16

*Rocksmore v. Hanson*,
    No. 3:14-cv-01114-MO, 2015 WL 852938 (D. Or. Feb. 24, 2015) ......................10

*Rosenfield v. GlobalTranz Enterprises, Inc.*,
    811 F.3d 282 (9th Cir. 2015) ..........................................................................9, 10

Page   iii   -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
              JUDGMENT

TABLE OF AUTHORITIES
(continued)

Page

*Shakur v. Schriro*,
    514 F.3d 878 (9th Cir. 2008) ........................................................................7

*Snapp v. Unlimited Concepts, Inc.*,
    208 F.3d 928 (11th Cir. 2000) ....................................................................13

*Standard Oil Co. of California v. Moore*,
    251 F.2d 188 (9th Cir. 1957) ......................................................................15

*Thomas v. Talyst, Inc.*,
    No, C07-202JLR, 2008 WL 570806 (W.D. Wash. Feb. 28, 2008) ................22

*Travis v. Gary Cmty. Mental Health Ctr., Inc.*,
    921 F.2d 108 (7th Cir. 1990) ......................................................................13

*Tumulty v. FedEx Ground Package Sys., Inc.*,
    No. C04-1425P, 2005 WL 1979104 (W.D. Wash. Aug. 16, 2005) ................14

**Statutes**

Fair Labor Standards Act ............................................................................. passim

FLSA § 115(a)(3) ..............................................................................................8

FLSA § 206 ......................................................................................................19

FLSA § 206 (a)(1)(C) ......................................................................................16

FLSA § 207 ......................................................................................................19

FLSA § 215(a)(3) ..........................................................................................9, 12

FLSA § 216(b) ............................................................................................12, 19

FLSA § 255 ......................................................................................................19

FLSA § 256 ..............................................................................................19, 20, 21

FLSA § 256(a) ..................................................................................................20

FLSA § 256(b) ............................................................................................19, 20

Page   iv  -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
               JUDGMENT

**TABLE OF AUTHORITIES**
(continued)

Page

**Rules**

Fed. R. Civ. P. 56 .................................................................................................................7

Federal Rule of Evidence 1006 ........................................................................................15

**Regulations**

29 C.F.R. § 531.54 ............................................................................................................17

29 C.F.R. § 778.105 ..........................................................................................................16

**Other Authorities**

Jack B. Weinstein & Marger A. Berger, Weinstein's Federal Evidence Sec.
    1006.07[2] (Mark S. Brodin, ed. Mathhew Bender 2d ed. 2017) ..........................15

Ninth Circuit Model Jury Instruction 5.5, *http://www3.ce9.uscourts.gov/jury-
    instructions/node/111* ............................................................................................14

## I.    INTRODUCTION

The claims in this case are replete with factual issues which must be determined by a fact-finder, and genuine issues of material fact exist on every claim asserted by Plaintiffs.  For the reasons explained below, Plaintiffs' Motion For Summary Judgment ("Plaintiffs' Motion") should be denied in its entirety.

## II.    FACTUAL BACKGROUND

Scott Dolich is the owner of Park Kitchen and the former owner of now-closed The Bent Brick.  Park Kitchen provides dinner service seven nights a week.  Mr. Dolich's restaurants have always focused on high quality service, as highlighted on Park Kitchen's website:

> We believe that the greatest factor in the success of our restaurant is the quality of our people. We work hard to attract, hire and train our knowledgeable, friendly, hard-working and team oriented staff.

For much of the time period relevant to this case, Anna Josephson was the General Manager, in charge of the "front of the house" staff, and reported directly to Mr. Dolich.  (Dolich Decl. ¶3.)  Nancy Allison worked as a server for Park Kitchen for about five years, beginning in 2009.  (Dolich Decl. ¶4.)  Ms. Allison was offered a Floor Manager position in the summer of 2013; she turned down the job, stating that she did not have the time to assume management responsibilities due to her personal business, Nan-Made Objects ("Nan-Made").  Ms. Allison, however, helped backfill management duties in the interim.  Mr. Dolich and Ms. Josephson made clear they would hire a new Floor Manager, who would become her direct boss.  Ms. Allison did not have a good relationship with Nate Smith, who was promoted into the Floor Manager position, and she resisted the fact that he was now her superior.  (Dolich Decl. ¶6.)

Even after Mr. Smith's promotion, Ms. Allison continued to work as the Manager of the Day (the "MOD") on Saturdays and Sundays, two of her three weekly serving shifts.  Her other

Page   1   -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

regular shift was on Monday, and she was on call on Fridays.  On Thursdays she attended manager and staff meetings, and spent a few hours on wine purchasing.  In the MOD role, she was the lead of the front of the house during those shifts.  Up until her termination, Ms. Allison attended the weekly Thursday management meetings.  (Dolich Decl. ¶7.)  Holly Burney worked as a server at Park Kitchen for approximately seven years.  (Dolich Decl. ¶4.)  Her regular shifts were Friday and Saturday, and she was on call on Mondays.  (Dolich Decl. ¶5.)

Defendants' employees have always worked under a formal tip pool policy that provided a cut to the back of the house staff.  There were never any complaints, including by Ms. Allison or Ms. Burney.  (Dolich Decl. ¶8.)  Effective March 1, 2014, Park Kitchen rolled out changes to its tip pool policy. Because of her regular attendance at the Thursday manager meetings, Ms. Allison was privy to these policy revisions.  Ms. Allison repeatedly stated that she was on board with the policy changes.  Ms. Allison never expressed a personal concern about the tip pool policy during her employment.  The revised tip pool policy was rolled out as part of a broader new service policy, the idea being to improve overall service, which would result in increased tips for all.  (Dolich Decl. ¶9.)

Management met with staff to explain the new service model and changes to the tip pool policy at the staff meeting on February 27, 2014.  Mr. Dolich and Ms. Josephson distributed the policy, went through it, and addressed questions.  The new policy was revisited again during the staff meeting on Thursday, March 13, 2014.  Earlier that day, Ms. Allison had again reiterated that she was fine with the changes to the policy and that she understood it, but she suggested to Mr. Dolich and Ms. Josephson that if they explained to staff what they had explained to her, it would go a long way.  Mr. Dolich did exactly that at the staff meeting that day.  (Dolich Decl. ¶10.)

Page   2   -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
              JUDGMENT

In early 2014, prior to the roll-out of the revised tip pool policy, Ms. Allison began coming to management with various concerns she reported "others" had. Ms. Allison repeatedly made clear that these were not her concerns, but rather that she, as the MOD, was passing along others' concerns. Her regular refrain was "a little bird told me…," but she failed to provide specifics. Her reports encompassed three common and recurring themes: (a) *other* employees were unhappy with Ms. Josephson and Mr. Smith; (b) customers were not happy; and (c) once the tip pool changes were effective, *other* employees (whom she would not identify) were not happy with the tip pool. (Dolich Decl. ¶11.)

As the MOD, Ms. Allison served an important role, particularly on her Sunday and Monday shifts when no other management employees worked in the front of the house. Mr. Dolich looked to her to be aware of any concerns or issues, and he appreciated her passing on what was relayed as concerns by staff about the tip pool policy so they could be addressed. (Dolich Decl. ¶12.)

Mr. Dolich and Ms. Josephson looked into every concern Ms. Allison raised, but were unable to substantiate them. For example, Ms. Allison had reported that a particular long-term customer was unhappy; Park Kitchen followed up and found Ms. Allison's report to be false. The same was true with her reports that other staff members were unhappy with Mr. Smith or the tip pool policy. (Dolich Decl. ¶13.) During this same time period, Ms. Allison's performance on the restaurant floor and her interactions with fellow staff took a negative turn. (Dolich Decl. ¶14.)

Park Kitchen is a small and intimate restaurant. Typically only two servers work dinner service, and everyone is expected to be on the top of their game and come to work ready to deliver first-rate customer service. Mr. Dolich and Ms. Josephson began to see changes in Ms.

Page   3   -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
                JUDGMENT

Allison's performance in early 2014. Although not an exhaustive list, the following are examples of what transpired:

- On Sunday, March 2, on the heels of the roll-out of the new service model, Ms. Allison was scheduled to be working as the MOD. She was scheduled to be at work at 2:00 p.m. to check the messages for reservations, and determine if the on-call server was needed. Ms. Allison did not report to work promptly, so Mr. Dolich checked the books and determined a third server was needed. At 3:25, Ms. Allison still had not reported to work, so they scrambled to find coverage. When Ms. Allison did finally report to work, she treated the on-call server very poorly—she cut him early, did not help him with table numbers or other general information, and reported that "the guy was useless." Although she was not formally written up, Ms. Allison was counseled about this incident and informed that her behavior was unacceptable. (Dolich Decl. ¶14.)

- In addition to Ms. Allison and Ms. Burney, two other servers worked at Park Kitchen during the early 2014 time frame: Brandon Page and Beth Harding. In about mid-March, Mr. Dolich learned that Mr. Page had had problems with Ms. Allison on the days when she was the MOD, and that he did not want to work with her because of her negative attitude, which made him uncomfortable. Mr. Dolich learned that Ms. Harding had approached Mr. Smith, to let him know that she did not share Ms. Allison's negative attitude and complaints, and that she, too, was uncomfortable working Ms. Allison, particularly when she was the MOD. (Dolich Decl. ¶15.)

- Despite follow-up with Ms. Allison that management had looked into the concerns she reported and did not find support for them, Ms. Allison continued to rehash the same issues. She also was informed that she should encourage employees to speak directly to Mr. Dolich, Ms. Josephson or Mr. Smith so the problem could be addressed head-on rather than through indirect communication. Ms. Allison still took it upon herself to be the self-appointed liaison for other employees' ostensible (but never confirmed) concerns. Her presence on the restaurant floor grew increasingly sour. (Dolich Decl. ¶16.)

Ms. Allison and Ms. Burney each raised complaints about the tip pool policy. The first such complaint occurred when Ms. Allison and Ms. Burney worked together on the Saturday shift. On one Saturday around the time the tip pool changes became effective, Ms. Allison and Ms. Burney approached Mr. Smith when the restaurant was empty after dinner service. They voiced their dislike of the changes to the policy. For example, they did not think that everyone being on an hourly point system was fair, and they believed they would be working more hours but making less. On one other occasion, Ms. Burney expressed to Mr. Smith her dislike of the

Page   4   -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
                JUDGMENT

other changes to the service model, including that she had to come in two hours earlier on one shift to perform side work. Mr. Smith reported these concerns to Mr. Dolich and Ms. Josephson, who followed up with Ms. Burney to clarify that Mr. Smith was not behind the policy changes; it was Ms. Josephson and Mr. Dolich who made the decision. (Dolich Decl. ¶17.)

In early- to mid-2013, Ms. Allison requested to reduce her schedule to devote more time to Nan-Made. Every January, management redid the schedule, and asked staff if they had any interest in filling the gaps in the schedule. Ms. Allison did not want to pick up any additional shifts when asked. With Ms. Allison reducing her schedule, Park Kitchen needed to hire another server, and did so. Shortly thereafter, Ms. Allison reported that her business had not earned as much she had anticipated, and she asked for another shift. As Park Kitchen had recently hired another server, there were no available shifts. However, to the extent Ms. Allison wanted additional hours, she had numerous opportunities to come in on call, which she regularly turned down. (Dolich Decl. ¶18.)

Following Mr. Dolich learning of the concerns raised by Mr. Page and Ms. Harding about Ms. Allison, Mr. Dolich and Mr. Smith met with Ms. Allison on March 20, 2014, following the manager and staff meetings, intending to again review with her that they had looked into her concerns, and that her attitude and performance on the floor—and particularly as the MOD— were making her co-workers uncomfortable. Mr. Dolich told her that her concerns on behalf of "others" were not checking out. He was candid with her and asked if she was happy in her job. He again asked if she had any problems and encouraged her to tell him versus attributing concerns to others. Mr. Dolich asked her if she felt she was capable of performing both her MOD and wine buying duties. Ms. Allison said no, and then said that she no longer wanted any

management responsibility—that she wanted to continue only in the server role.  Regardless, her

serving schedule would remain the same.  (Dolich Decl. ¶19.)

      After the meeting, Mr. Dolich continued to think about the situation, and he realized that

he had lost confidence in her ability to appropriately represent Park Kitchen on the floor.  He

decided to end Ms. Allison's employment, and he called her on Friday, March 21 to end the

relationship.  He was candid with her that her attitude on the restaurant floor had become "toxic"

and was negatively impacting overall staff morale.  Ms. Allison responded that Mr. Dolich and

the restaurant "will fail," that customers "won't come back," and "all the employees don't like

working there."  She came in later that same day to pick up her final paycheck, and she said at

that time that she was planning to transition out of Park Kitchen "within a month anyway."

(Dolich Decl. ¶20.)

      In March, prior to Ms. Allison's termination, Ms. Burney invited Mr. Dolich to meet for

coffee, and told him she did not think the tip pool policy was lawful.  Mr. Dolich shared with her

that he had consulted with his attorney to confirm its legality.  Otherwise, Mr. Dolich told her, he

would never have implemented the policy, and he would never request that his staff work under

an unlawful policy.  Unsolicited, Ms. Burney asked Mr. Dolich if he wanted her to leave Park

Kitchen.  Mr. Dolich told her that he could not answer that question for her, but told her that if

she wanted to work at Park Kitchen, there was a job for her.  (Dolich Decl. ¶21.)  Because Mr.

Dolich wanted Ms. Burney to continue in her employment, he gave her some time to further

consider whether she would agree to the tip pool policy, despite the fact that everyone else had

signed the tip pool policy on or around February 27.  (Dolich Decl. ¶22.)

      On April 5, Ms. Burney refused to sign the policy "because it is illegal."  Ms. Burney

said that she would continue to work at Park Kitchen, and even under the tip pool policy, but she

Page   6   -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
                JUDGMENT

would not sign the policy.  Ms. Josephson told her they wanted her to stay and asked her to sign the policy, and further explained that by signing the tip pool policy she was not stating that she agreed with it.  Ms. Burney said she was not going to sign it, so Ms. Josephson then presented her with her termination notice.  (Dolich Decl. ¶23.)

### III.    ARGUMENT

**A.    Plaintiffs Face the Full Burden of Persuasion in Their Motion for Summary Judgment.**

The Court is certainly familiar with the basic standards governing summary judgment motions under Rule 56.  As the Ninth Circuit explained last year:

> Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  In determining whether there is sufficient evidence to support a grant of summary judgment, we review the record as a whole.

*Friedman v. Live Nation Merchandise, Inc.*, 833 F.3d 1180, 1184-85 (9th Cir. 2016) (internal quotation marks, brackets, and citations omitted).

Although Plaintiffs' description of the Rule 56 summary judgment standard tracks the statement above, it fails to mention what is perhaps the most critical point:  that they face the full burden of persuasion in their Motion because they bear the burden of persuasion at trial on their claims.  *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008).  This is a significant burden:  "[w]hen the moving party also bears the burden of persuasion at trial, to prevail on summary judgment it must show that the evidence is <u>so powerful that no reasonable jury would be free to disbelieve it</u>."  *Id.* (internal quotation marks and citation omitted; emphasis added).  As explained

below, Plaintiffs cannot carry this burden on either their retaliation claims or on their minimum wage claims.

**B.    Questions of Fact Preclude Summary Judgment on Plaintiffs' Retaliation Claims.**

The elements of a retaliation claim under the Fair Labor Standards Act ("FLSA") are as follows:  "(1) the plaintiff must have engaged in statutorily protected conduct under § 115(a)(3) of the FLSA, or the employer must have erroneously believed that the plaintiff engaged in such conduct; (2) the plaintiff must have suffered some adverse employment action; and (3) a causal link must exist between the plaintiff's conduct and the employment action."  *Mayes v. Kaiser Found. Hosps.*, 917 F. Supp. 2d 1074, 1080 (E.D. Cal. 2013) (internal quotation marks and citation omitted).

These elements must be viewed with Plaintiffs' summary judgment burden (*viz.*, the burden of persuasion) in mind.  Ordinarily, it is the defendant who moves for summary judgment and the plaintiff who benefits from the notion that "the evidence and all reasonable inferences drawn therefrom [be taken] in the light most favorable to the non-moving party."  *Friedman*, 833 F.3d at 1184.  This case presents the opposite scenario:  the Plaintiffs are the moving party, and the benefit of all reasonable inferences belongs to Park Kitchen.  Judge Stewart has aptly explained how this principle works in an employment discrimination or retaliation case where the plaintiff moves for summary judgment:

> Even assuming that Perez engaged in protected activity and that the EEOC has met its prima facie burden, the EEOC would still not be entitled to summary judgment on the issue of liability.  In Title VII retaliation cases, once the plaintiff has established a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nonretaliatory explanation for its decisions.  Where an employer does so, the legally mandatory inference of retaliatory discrimination arising from the plaintiff's prima facie case drops away.  The burden of production again falls

Page    8    -    DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

on the EEOC to show that the explanation is a pretext for impermissible retaliation.  This burden merges with the plaintiff's ultimate burden of persuading the court that he is the victim of retaliation.

Normally, when the parties reach this point, the plaintiff is merely attempting to stave off summary judgment by the employer and again has the advantage of having all reasonable inferences from the facts drawn in his or her favor.  But here, defendants have that advantage.  <u>In order to obtain summary judgment, the EEOC must go well beyond proving that Perez is entitled to his day in court:  it must establish that no reasonable factfinder could conclude that defendants did not discriminate against him.  This it cannot do.</u>

*EEOC v. Pacific Sea Food, Inc.*, No. CV-08-1143-ST, 2010 WL 1998878, at *3-4 (D. Or. Apr. 20, 2010) (internal quotation marks and citations omitted) (emphasis added).  Judge Stewart denied the EEOC's summary judgment motion in *Pacific Sea Food*.  This Court should do the same with Plaintiffs' Motion.

      **1.**      **There Are Questions of Fact as to Whether Ms. Allison and Ms. Burney Engaged in Protected Activity.**

"To fall within the scope of the [FLSA's] antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011).  The concept of fair notice is critical to the functions of the FLSA's retaliation protections:  the FLSA "seeks to establish an enforcement system that is fair to employers[; t]o do so, the employer must have fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation."  *Id.* at 13; *see also Rosenfield v. GlobalTranz Enterprises, Inc.*, 811 F.3d 282, 286 (9th Cir. 2015) ("[N]ot all amorphous expressions of discontent related to wages and hours constitute complaints filed within the meaning of § 215(a)(3)." (brackets in original; internal quotation marks and citation omitted)).

Page   9   -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

In addition, the complaint to the employer must be objectively reasonable and made in good faith. *Rocksmore v. Hanson*, No. 3:14-cv-01114-MO, 2015 WL 852938 at *9 n.6 (D. Or. Feb. 24, 2015); *Bythewood v. Unisource Worldwide, Inc*., 413 F. Supp. 2d 1367 , 1373 (N.D. Ga. 2006). Per *Bythewood*, "[t]he objective reasonableness of plaintiff's belief is 'measured against existing substantive law.'" *Id. quoting Clover v. Total Sys. Servs., Inc*., 176 F.3d 1346, 1351 (11th Cir. 1999).

Summary judgment is improper because a reasonable juror could conclude that Ms. Allison and Ms. Burney did not engage in protected activity under the FLSA. *See Rosenfield*, 811 F.3d at 286 ("Whether a complaint has been filed that provides adequate notice to the employer is a question to be resolved as a matter of factual analysis on a case-by-case basis." (internal quotation marks and citation omitted)).

There is evidence in the record to suggest that Ms. Allison and Ms. Burney complained about the tip pool on the grounds that they believed it to be unfair <u>and</u> on the grounds that they believed it to be unlawful. The former likely would not qualify as protected activity and would instead be an "expression[] of discontent related to wages." *Id.* (internal quotation marks and citation omitted). The latter might qualify as protected activity under *Kasten* and *Rosenfield,* although in reaching such a conclusion the jury would have to consider the effect of *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577 (9th Cir. 2010).

At the time Ms. Allison and Ms. Burney were terminated Defendants' tip pool policy was lawful based on *Cumbie,* as this Court concluded in its original summary judgment order issued on December 7, 2015. Any honest assessment of the retaliation claims in this case must include this as a consideration, and more specifically whether an employee makes "a complaint that could subject the employer to a later claim of retaliation" that is both in good faith and

Page   10   -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
                JUDGMENT

objectively reasonable when she complains about (or refuses to comply with) a policy that was lawful at the time she complained about it. *Kasten*, 563 U.S. at 13.

A reasonable juror, viewing the evidence in the totality, could reach either conclusion about Ms. Allison and Ms. Burney's statements as a whole. Or, to state it in the context of the Plaintiffs' summary judgment burden, the record evidence is insufficient to show that a reasonable juror <u>must</u> conclude that Ms. Allison and Ms. Burney's statements to Defendants about the tip pool were "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* at 14. This precludes summary judgment in favor of Plaintiffs.

> **2.      There Are Questions of Fact as to Whether Ms. Allison and Ms. Burney Were Terminated Because of Their Alleged Protected Activity.**

The FLSA protects employees from being subject to retaliation <u>because</u> they engaged in protected activity. *Mayes*, 917 F. Supp. 2d at 1080. However, it does not insulate them from the ordinary consequences they might face for misconduct, poor performance, or otherwise failing to live up to the employer's expectations. *See Justice v. Rockwell Collins, Inc.*, 117 F. Supp. 3d 1119, 1137-38 (D. Or. 2015) (granting summary judgment for the employer on plaintiff's FLSA retaliation claim where the employer offered legitimate, non-discriminatory reasons for his termination).

Here, Defendants have offered testimony explaining that Ms. Allison was terminated because of her poor work performance, including her inability to work cooperatively with the rest of the staff and her poor attitude on the service floor. A reasonable juror could accept this evidence as true and conclude that Ms. Allison's poor work performance, not any complaints about the tip pool, prompted her dismissal. Likewise, a reasonable juror could conclude that Ms.

Burney was terminated because she refused to sign receipt of a lawful (see *Cumbie* and this Court's December 7, 2015 summary judgment order) employment policy, irrespective of what the policy contained or whether doing so constituted protected activity.  Accordingly, there are questions of fact as to whether Ms. Allison and Ms. Burney's alleged protected activity was the cause of their termination.

### 3.    There Are Questions of Fact as to Ms. Allison and Ms. Burney's Damages.

In addition to the fact questions on the merits of their claims, there are fact questions on Ms. Allison and Ms. Burney's claims to damages.

First, whether to award liquidated damages in a FLSA retaliation claim is discretionary, not mandatory.  *See Moore v. Appliance Direct, Inc.*, 708 F.3d 1233, 1241 (11th Cir. 2013) (citing Section 216(b)'s statement that "an employer 'shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title'" (emphasis omitted)); *see also Braswell v. City of El Dorado, Ark.*, 187 F.3d 954, 958 (8th Cir. 1999); *Blanton v. City of Murfreesboro*, 856 F.2d 731 (6th Cir. 1988).  The Court should await a finding from the jury on Ms. Allison and Ms. Burney's claims before deciding this issue.  *See Cappuccio v. Pepperdine Univ.*, No. CV 13-3125 DSF (AJWx), 2014 WL 12573366, at *1 (C.D. Cal. Sept. 17, 2014) (denying liquidated damages to FLSA retaliation plaintiff, despite jury verdict in his favor, in an exercise of discretion).

Second, there are fact questions on whether Ms. Allison and Ms. Burney are entitled to non-economic damages and, if so, in what amount.  The range of facts a jury could consider in deciding whether to award non-economic damages is virtually limitless.  By way of example, a jury might consider that Ms. Allison intended to leave her employment with Park Kitchen to focus on her crafting business, or that Ms. Burney typically worked only a few shifts per week,

and that neither of them sought to return to restaurant work, as evidence that neither suffered significant emotional distress from their respective terminations.  Additionally, there is no evidence in the record before this Court which suggests that either Ms. Allison or Ms. Burney experienced even an iota of emotional distress; neither declaration submitted in support of the motion makes any mention whatsoever of any emotional distress, generally or specifically.

Plaintiffs cannot definitively establish that there are no genuine issues of material fact on their claims for alleged emotional distress associated with their respective terminations when their respective declarations provide no evidence whatsoever in support of such an assertion. The determination of whether and to what extent either of them suffered emotional distress is a quintessential fact question for the jury following trial, not for the Court on a paper record which contains no support at all for such a finding.

Finally, it remains an open question in the Ninth Circuit whether punitive damages are available in a FLSA retaliation claim.  *See Lambert v. Ackerley*, 180 F.3d 997, 1011 (9th Cir. 1999) (declining to rule on whether punitive damages were available because "the defendants have waived the issue of the availability of punitive damages by failing to raise it below").  The circuit courts are split on the issue.  *Compare Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108 (7th Cir. 1990); *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928 (11th Cir. 2000). Defendants urge the Court to adopt the Eleventh Circuit's view and to conclude that punitive damages are not available in FLSA retaliation claims.  *See Tumulty v. FedEx Ground Package Sys., Inc.*, No. C04-1425P, 2005 WL 1979104, at *10-11 (W.D. Wash. Aug. 16, 2005) (punitive damages unavailable for FLSA claims).

Even if the Court concludes that punitive damages are available as a matter of law, it would still be improper to award summary judgment to Plaintiffs on the punitive damages issue.

Page   13   -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT

In order to prove entitlement to punitive damages in <u>any</u> amount (let alone the $186,560 and $113,400 Ms. Allison and Ms. Burney seek, respectively), Plaintiffs must show that Defendants' conduct toward them was "malicious, oppressive or in reckless disregard of [their] rights." Ninth Circuit Model Jury Instruction 5.5, *http://www3.ce9.uscourts.gov/jury-instructions/node/111*. Assuming this inherently fact-bound determination is satisfied, the amount of the punitive award is subject to an even more nuanced standard:  if the jury finds "that punitive damages are appropriate, [it] must use <u>reason</u> in setting the amount." *Id.* (emphasis added).

There are ample facts in the record to support a finding that no punitive damages should be awarded, including:  the facts previously identified concerning Ms. Allison and Ms. Burney's claims for non-economic damages; the absence of any other violations of the FLSA by Defendants; Defendants' attempts to comply with the FLSA by engaging assistance from human resources firms and, when necessary, legal counsel; and the ambiguous state of the law in the Ninth Circuit regarding tip pools following *Cumbie.*[1] Defendants are entitled to have the punitive damages determination made by a jury.

### C.    Plaintiffs' Spreadsheet Outlining Their Minimum Wage Damages Is Inadmissible, and In Any Case Presents Questions of Fact That Preclude Summary Judgment.

Exhibit 1 to the Declaration of Michèle Lauzier in Support of Plaintiffs' Motion For Summary Judgment ("Lauzier Declaration") is a spreadsheet ("the Spreadsheet") that purports to simplify Plaintiffs' minimum wage claims.  Plaintiffs ask the Court to accept the Spreadsheet as a summary of information gathered during discovery and to use the Spreadsheet as the basis on

---

[1] These same considerations, and in particular the effect of the *Cumbie* decision on Defendants' implementation of their tip pool, establish a question of a fact on whether Defendants had legitimate business reasons for their decisions regarding Ms. Allison and Ms. Burney and as to whether any violation of the FLSA by Defendants was willful.  (Pls.' Mtn. pg. 27 (legitimate business reasons) and pgs. 28-29 (willfulness).)  Plaintiffs' Motion should be denied on these points.

Page   14   -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

which to award specific amounts of damages to particular individuals. Ms. Lauzier's declaration states that "the information in the [S]preadsheet is taken from payroll records [of Defendants]." (Lauzier Decl. ¶ 2.) However, her declaration does not explain or acknowledge that, in fact, many of the columns of information are not based on Defendants' payroll records.  Specifically, the "FMW" column, the "Trejo" column, the "BadTips" column, and the remaining columns to the right of those columns are Plaintiffs' calculations, and that information did not come from any payroll records of Defendants.  To the contrary, those columns present Plaintiffs' theory of this case, and Plaintiffs' arguments as to what Plaintiffs suggest is the appropriate calculation of damages.

Although Federal Rule of Evidence 1006 allows a party to admit a summary in lieu of voluminous records, it does not permit admission of the summary if it contains information that goes beyond the scope of the underlying records.  *Standard Oil Co. of California v. Moore*, 251 F.2d 188, 223 (9th Cir. 1957).  "This situation may occur if facts or assumptions drawn from the preparer's knowledge or experience is included in his or her testimony."  Jack B. Weinstein & Marger A. Berger, Weinstein's Federal Evidence Sec. 1006.07[2] (Mark S. Brodin, ed., Matthew Bender 2d ed. 2017).  The Spreadsheet falls into precisely that trap by including Plaintiffs' claimed unpaid minimum wages and liquidated damages alongside their summaries of Defendants' payroll records.  The Spreadsheet is therefore inadmissible on that basis.

Aside from the admissibility problems, Plaintiffs' suggestion that calculating their minimum wage damages is a simple mathematical exercise that does not require the resolution of

Page   15  -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
            JUDGMENT

disputed facts is mistaken, as their Spreadsheet leaves several material questions of fact unanswered.[2]

First, Plaintiffs calculate their minimum wage damages on a <u>pay period</u> basis. (Pls.' Mtn. pgs. 24-25.) However, the FLSA minimum wage is calculated on a <u>workweek</u> basis. 29 U.S.C. § 206(a)(1)(C) ("Every employer shall pay to each of his employees who in any workweek is engaged in commerce . . . $7.25 an hour . . . ."). The difference is critical. In order to recover, a FLSA minimum wage claimant must establish that he or she was underpaid for an entire workweek, defined as "a fixed and regularly recurring period of 168 hours—seven consecutive 24-hour periods." 29 C.F.R. § 778.105; *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942) (endorsing the workweek basis for determining compliance with the FLSA's overtime provisions, which like the minimum wage provisions impose requirements based on the workweek).

Establishing underpayment for some other time period (e.g., a day, a seven-day period that is not the employer's workweek, a payroll cycle, etc.) is insufficient. *See, e.g., Adair v. City of Kirkland*, 185 F.3d 1055, 1063 (9th Cir. 1999) ("The district court properly rejected any minimum wage claim the officers might have brought by finding that their salary, when averaged across their total time worked, still paid them above the minimum wage."); *McElmurry v. US Bank Nat'l Ass'n*, No. CV-04-642-HU, 2005 WL 2078334, at *5 (D. Or. Aug. 24, 2005) ("The appropriate analysis for a federal FLSA minimum wage violation is one based on the workweek."). It is up to the jury to sort through Defendants' timekeeping and payroll records to

---

[2] It is unclear why Plaintiffs feel compelled to point out that "[a] copy of [the Spreadsheet] was produced to the defendants on March 21, 2017, and they have not objected that it is inaccurate." (Pls.' Mtn. pg. 23.) Defendants were under no obligation to raise any objections to the Spreadsheet at the time it was served.

Page   16  -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
               JUDGMENT

determine whether, in any workweek during the limitations period, Defendants' tip pool caused Plaintiffs' wages to fall below the statutory minimum. The pay period analysis is irrelevant.

Second, even a cursory review of the Spreadsheet shows that it is based on questionable assumptions and calculation problems. For example, Plaintiffs calculate the amount of tips "stolen" by Defendants and paid to back-of-the-house and managerial employees by "[d]ividing that stolen amount among the . . . tip-eligible employees in proportion to their hours worked." (Pls.' Resp. pg. 24.) In effect, Plaintiffs attempt to reinvent Defendants' tip pools to include only front-of-the-house employees and to distribute the tips among them as they deem appropriate, *viz.*, "in proportion to their hours worked." (*Id*.) While this is a legally acceptable way to distribute tips among the participants in a tip pool it is not the only way: the regulations are clear that "Section 3(m) does not impose a maximum contribution percentage on valid mandatory tip pools . . . ." 29 C.F.R. § 531.54; *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294 (6th Cir. 1998). It is up to a jury to decide whether Plaintiffs' *post hoc* recalculation of the distribution of tips is proper.

As a further example, consider the case of Andrea Baiz-Escobedo, a Bent Brick employee who Plaintiffs claim is entitled to $63,932.02 in unpaid minimum wages and liquidated damages. (Pls.' Mtn. pg. 25.) According to the Spreadsheet, this calculation is based in part on the following time and pay data:

| Source | Name | Payday | Hrs | Pay | Tips | FMW | Trejo | BadTips | OKHrs | ShareHrs | ShareBadTips | FMWViol |
|--------|------|--------|-----|-----|------|-----|-------|---------|-------|----------|--------------|---------|
| Harland | Baiz-Escobedo, Andrea | 7/2/15 | 52.71 | 487.57 | 908.92 | 382.15 | 105.42 | 2569.15 | 110.25 | 0.48 | 1228.30 | 1122.88 |

Page   17   -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

| QB | Baiz-Escobedo, Andrea | 7/3/15 | 52.71 | 487.57 | 908.92 | 382.15 | 105.42 | 2569.15 | 110.25 | 0.48 | 1228.29 | 1122.87 |
|----|------|------|------|------|------|------|------|------|------|------|------|------|

(Lauzier Decl. Ex. 1, pg. 18.)

The data for these entries comes from two different sets of payroll records: the Harland records and the QuickBooks records. (Lauzier Decl. ¶2.) Plaintiffs' calculation assumes that the two entries represent two completely distinct payments, despite the fact that the hours, pay, and tips in the two entries are identical. The only difference in the two entries is the date of payment: the Harland records indicate the date as July 2, 2015, while the QuickBooks entry indicates it as July 3, 2015. (Lauzier Decl. Ex. 1, pg. 18.)[3] A similar problem applies to the other employees who appear on pages 18-24 of the Spreadsheet: their entries are counted twice, once for the Harland records and once for the Quick Book records. (*Id.* pgs. 18-24 (see, e.g., Alison McGinley and Adele Kennedy). This error both overstates (i.e., <u>doubles</u>, for these entries) the recovery for the opt-in employees, and calls into question the reliability of the underlying analysis. A reasonable juror could conclude from this that the Spreadsheet as a whole is not reliable and cannot form the basis for Plaintiffs' recovery.

As a final example, Plaintiffs' characterization of the following employees as "TipOK" (i.e., working in a tip-eligible position) changes over a period of time: Brandon Page, Nic Petersen, Nate Smith and Camille Titus. Plaintiffs offer no explanation, let alone evidence, as to why this is the case.

For these reasons, the Court should deny Plaintiffs' Motion as to the damages calculations for their minimum wage claims.

---

[3] It is unclear why Plaintiffs calculate slightly different "ShareBadTips" and "FMWViol" figures based on the same underlying hours, pay and tip data. Standing by itself, this represents yet another problem with the reliability of Plaintiffs' analysis.

Page   18   -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT

**D.**     **Plaintiffs' Motion Must Be Denied to the Extent It Seeks Recovery for Employees Who Did Not Opt In.**

Plaintiffs' Motion seeks to assert claims and recover damages for individuals who are not entitled to recover in this case.  To date, Plaintiffs have not filed "Consents to Join" for either Ms. Burney or Ms. Allison—the two named plaintiffs who began this action.  Plaintiffs' failure to follow this basic statutory requirement now bars their claims.  It is undisputed that Ms. Allison's employment terminated on March 21, 2014, and Ms. Burney's employment terminated on April 5, 2014.  More than three years have passed since those dates; indeed, more than three years have passed since Plaintiffs filed their Complaint.  As of the date of the filing of this Response, however, neither Ms. Burney nor Ms. Allison have filed Consents to Join, a failure which is fatal to their participation in the collective.

Section 216(b) of the FLSA provides for a private right of action:

> Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . .  An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  *No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.*

29 U.S.C. § 216(b) (emphasis added).  In addition, Section 256 of the FLSA provides that

> [i]n determining when an action is commenced for the purposes of section 255 of this title, an action . . . under the Fair Labor Standards Act . . . shall be considered to be commenced on the date when the complaint is filed; *except* that in the case of a collective or class action instituted under the Fair Labor Standards Act . . . it shall be considered to be commenced in the case of any individual claimant--

Page   19  -    DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

>   (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint *and* his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
>
>   (b) if such written consent is not so filed . . . on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256 (emphasis added).

While the Ninth Circuit has not directly addressed this issue, other circuits and district courts within the Ninth Circuit (including the District Court of Oregon) have dismissed FLSA collective action claims when named plaintiffs have not timely filed consents.  In *Frye v. Baptist Memorial Hospital, Inc.*, the court affirmed the district court's dismissal of the FLSA collective action because the named plaintiff failed to file a written consent with the court within the FLSA's limitations period.  495 F. App'x 669, 677 (6th Cir. 2012).  In that case, the plaintiff's last payday was April 27, 2007, and he filed to file a written consent to collective action within three years of his final paycheck.  *Id.* at 675.  In holding that the plain language of Section 256 requires named plaintiffs to file written consents, the Eleventh Circuit held that the statute

>   unambiguously provides that collective actions "shall be considered to be commenced" for statute-of-limitations purposes "on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint *and* his written consent to become a party plaintiff is filed on such date." [29 U.S.C.] § 256(a) (emphasis added).  If any doubt remains, subsection (b) confirms the written-consent requirement by providing that an FLSA collective action commences "on the subsequent date on which such written consent is filed." *Id.* § 256(b).  Accordingly, courts construe the above language to do what it says:  require a named plaintiff in a collective action to file a written consent to join the collective action."

*Id.*

Page   20  -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

In *Gessele v. Jack in the Box, Inc.*, 6 F. Supp. 3d 1141 (D. Or. 2014), Judge Brown explored this specific issue, in depth, and granted summary judgment in favor of the employer in a case in which the named plaintiffs filed to file consents within the statute of limitations period. The *Gessele* case notes:

> The language of Section 256 is clear:  in a representative action, a plaintiff's case is deemed to have commenced only when his or her own signed consent has been filed. . . .  Thus, regardless whether signed consents are necessary for named plaintiffs to *join* a representative action, Section 256 makes clear that even for named plaintiffs signed consents are required to mark the *commencement* of the action.

*Id.* at 1156-57 (internal quotation marks and citations omitted).

Similarly, in *Cancilla v. Ecolab, Inc.*, No. C 12-03001 CRB, 2013 WL 1365939 (N.D. Cal. Apr. 3, 2013), the court held that a FLSA collective action does not commence until the named plaintiff files a written consent.  *Id.* at *2.  The *Cancilla* court dismissed the FLSA collective action because the plaintiff did not file a written consent within the limitations period, and therefore, the FLSA collective action did not commence within the limitations period and was barred as untimely.

The *Cancilla* court relied on *Harkins v. Riverboat Services, Inc.*, 385 F.3d 1099 (7th Cir. 2004), in which the Seventh Circuit held that a party's failure to file written consent to join was dispositive, noting that "[i]t makes no difference that you are named in the complaint, for you might have been named without your consent.  The rule requiring written, filed consent is important because a party is bound by whatever judgment is eventually entered in the case. . . . We are inclined to interpret the statute literally."  *Id.* at 1101; *see also Chavez v. Lumber Liquidators, Inc.*, *No. C-09-04812 SC,* 2011 WL 809453 (N.D. Cal. Mar. 2, 2011) (same); *Ketchum v. City of Vallejo,* 523 F. Supp. 2d 1150, 1155 (E.D. Cal. 2007) (collective action not

Page   21   -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
                JUDGMENT

deemed commenced with respect to each individual plaintiff until his or he consent has been filed).

That the statutory requirement may seem repetitive or unnecessary does not override the plain and unambiguous requirement and language of the statute.  In *Bonilla v. Las Vegas Cigar Company*, 61 F. Supp. 2d. 1129, 1139 (D. Nev. 1999), the Court noted:

> It is indeed redundant and unusual to make named plaintiffs file their consents with the Court.  Notwithstanding the fact that the statutory requirements are repetitive or wasteful, they are the unambiguous requirements which Congress has duly enacted.  It is not for the courts to rewrite statutes which they find unwise. Moreover, the requirements are hardly onerous or burdensome. All Plaintiffs were required to do is file their consents with the Court . . . .

(Citations omitted.)  *See also Thomas v. Talyst, Inc.*, No, C07-202JLR, 2008 WL 570806 (W.D. Wash. Feb. 28, 2008) (whether requirement to file consent is wasteful or wise is irrelevant; courts should not rewrite unambiguous statutory language).

Neither Ms. Allison nor Ms. Burney has met the plain and unambiguous requirement of filing a Consent to Join, and thus neither of them have commenced their FLSA claim within the statutory time period.  Moreover, the applicable time for M. Allison and Ms. Burney to file "Consents to Join" has expired.  This Court adopted Plaintiffs' proposed schedule, which approved notices to be sent to potential members of the Collective, and provided 60 days within which prospective members could file Consents.  That time period closed on May 27, 2017, without Consents to Join filed by either Ms. Allison or Ms. Burney.

Even if the Court were to allow a late filing, the most generous application of the applicable statute of limitations would look back from April 1, 2016 (the date of Plaintiffs' Motion for Conditional Certification) to either April 2014 (for a non-willful violation) or April

Page   22   -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT

2013 (for a willful violation), while the damages on which Plaintiffs seek a ruling from this Court extend back to 2011—a difference of at least two years.

E.    **Plaintiffs' Motion Must Be Denied to the Extent It Seeks Recovery for Opt-in Employees Beyond the Limitations Period.**

Plaintiffs assert that there has been a stay in effect since September 26, 2014, tolling the statute of limitations since that date.  Plaintiffs are incorrect, and this error significantly impacts the damages Plaintiffs seek to recover.

The Court entered a minute order on September 29, 2014, tolling the statute of limitations "pending further order."  (Docket 21.)  At the same time, the court set a briefing schedule for Plaintiffs to file their motion for tolling:  "Plaintiffs are to file their . . . motion for tolling . . . no later than October 10, 2014."  The Court also set a further briefing schedule for that motion. (Docket 21.)  Plaintiffs timely filed their Motion on October 10, 2014.  (Docket 27.)  Defendants responded on October 27, 2014 (Docket 38), and Plaintiffs filed a reply on November 14, 2014. (Docket 45.)  The court held oral argument on Plaintiffs' Motion on December 16, 2014, and on that same date, the Court issued an Opinion and Order which ordered unequivocally that "Plaintiffs' Motion to Toll and for Corrective Notice is denied."  (Docket 47.)

The Court carefully laid out the FLSA's provisions pertaining to the Statute of Limitations, and also explored whether and when tolling was appropriate, ultimately holding that "[t]his action has not been certified as a collective action.  Plaintiffs are relying solely on a request for contact information made on May 5, 2014, before this action was even filed. Defendants' refusal to provide contact information prior to issuance of the court's final order authorizing notice was not improper and, therefore, equitable tolling is not justified."  (Docket 47, pg. 15.)

Page   23   -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
                 JUDGMENT

The Court also explored whether Defendants' communications at a staff meeting would serve as grounds for tolling, and rejected that argument as well. In short, the Court's September 29, 2014 minute order regarding tolling was issued "pending further order" on tolling, and the December 16, 2014 was, in fact, that further order, and as of December 16, 2014, there was no tolling order in place. Plaintiffs did not seek to toll the statute of limitations again until filing their Motion for Conditional Certification on April 1, 2016, when Plaintiffs sought to notify the potential collective members and to "toll the statute of limitations in the interim." The Court ultimately granted that motion, tolling the statute of limitations *at that time*, but between December 16, 2014 and April 1, 2016, based on this Court's clear and unequivocal rulings, the applicable statute of limitations was *not* tolled, which directly and significantly impacts a number of the collective members' claims.

Because the statute of limitations was not tolled prior to April 1, 2016, the "look back" period for individual "opt-ins" begins on that date, not—as Plaintiffs suggest—on or around September 29, 2014. That nearly 18-month period is significant. Only four Plaintiffs (Rebecca Elroy, Teal Garrells, Elizabeth McElligott, and Brad Bohrer) filed "Consents to Join" prior to April 1, 2016. For each of those individuals, the statute of limitations "look back" begins on the date their Consent to Join was filed with the Court. However, the vast majority of "Consents to Join" were filed in October 2016 (Tiffani Cordeiro, Camille Titus, Nate Hillenkamp, Mark MacMinn, Beth Harding, Suzanne Latham, Nik Petersen), one in November 2016 (Faith Holifield), and the remaining eight in April and May 2017. For these individuals, their "look back" period begins, at the earliest, on either April 1, 2016 (upon the filing of Plaintiff's Motion for Conditional Certification), or September 28, 2016, which is the date the Court granted Plaintiffs' Motion for Conditional Certification.

Page   24   -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
                JUDGMENT

Regardless of which of the later dates apply, Plaintiffs have submitted evidence to the court for damages which correspond to dates which are based on the statute of limitations being tolled since September 26, 2014, which the Court's docket and orders show plainly is not the case.  At a minimum, this creates fact issues with respect to the applicable time period, as well as whether and to what extent it impacts the claims of certain members of the collective.

In addition, several of the Plaintiffs are barred from recovery entirely by the applicable statute of limitations.  The Spreadsheet and information filed in support of Plaintiffs' Motion assumes that the statute of limitations has been tolled since September 2014, which is incorrect. Eric Pavey's Consent to Join was filed with the Court on May 2, 2017.  (Docket 169.)  Based on their own evidence, Mr. Pavey worked for approximately four months between July 2012 and November 2012.  (Lauzier Decl. Ex. 1, pgs. 36-39.) As the statute of limitations was not tolled until April 1, 2016, applying even the more generous three-year statute of limitations from that time precludes Mr. Pavey's claim for damages entirely.

The same is true for Mary Bartlett.  Ms. Bartlett's Consent to Join was filed on May 19, 2017.  (Docket 178.)  Ms. Bartlett worked for Defendants between September 2011 and March 2013.  (Lauzier Decl. Ex. 1, pgs. 29-42.)  The three-year statute of limitations for any claims Ms. Bartlett may have had expired in March 2016, which is prior to the tolling of the statute of limitations beginning on April 1, 2016.  Similarly, Deanna Ternes submitted a Consent to Join on May 23, 2017 (Docket 179), and she worked between March 2013 and June 2013.  (Lauzier Decl. Ex. 1, pgs. 42-44.)  At a minimum, Ms. Ternes' claims for damages must be reduced by the period of time barred by the applicable statute of limitations (i.e., damages prior to April 2013).

Page   25   -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

There are factual questions pertaining to the damages of several other collective members as well.  Depending upon whether the Court determines that a two-year statute of limitations applies rather than a three-year statute of limitations, the claims of Nik Petersen, Brandon Page, and Nicola Breuer could be eliminated entirely or reduced.[4]  Mr. Petersen, for example, incurred no damages within the two-year statutory time frame extending back from April 1, 2016, nor did Ms. Breuer.  Mr. Petersen and Ms. Breuer are eligible for damages only if this court determines that a three-year statute of limitations period should apply, which significantly reduces the amount of damages claimed by Plaintiffs in their motion.  Mr. Page worked only four pay periods within the two-year statute of limitations period, and 20 pay periods if a three-year statute applies.[5]

## IV.    CONCLUSION

For the reasons stated above, the Court should deny Plaintiffs' Motion For Summary Judgment.

DATED:  July 3, 2017.                STOEL RIVES LLP


                                     s/ Karen L. O'Connor
                                     Karen L. O'Connor, OSB No. 953710
                                     John B. Dudrey, OSB No. 083085
                                     Attorneys for Defendants

---

[4]Again based on their own evidence, Mr. Petersen was employed for the pay periods June 20, 2011-August 5, 2013 (Lauzier Decl. Ex. 1, pgs. 27-45; Mr. Page for the pay periods October 4, 2013-July 1, 2015 (Lauzier Decl. Ex. 1, pgs. 47-62); and Ms. Breuer for the pay periods May 3, 2013-June 5, 2013 (Lauzier Decl. Ex. 1, pgs. 6-7.)

[5] For the reasons stated in Section III.D and Section III.E, the Court should deny Plaintiffs' Motion to the extent it seeks summary judgment on Defendants' statute of limitations defense. (Pls.' Mtn. pg. 28.)"

Page   26  -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
               JUDGMENT