Karen L. O'Connor, OSB No. 953710
karen.oconnor@stoel.com
John B. Dudrey, OSB No. 083085
john.dudrey@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

        Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NANCY ALLISON and HOLLY BURNEY, both in their individual capacities and, in addition, as a collective action on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>SCOTT DOLICH and ANNA JOSEPHSON, individuals, and PARK KITCHEN LLC and THE BENT BRICK, LLC, Oregon limited liability companies,<br><br>        Defendants. | Case No.: 3:14-cv-01005-AC<br><br>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CLAIM PRECLUSION GROUNDS |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................... ii

MOTION ........................................................................................................................... 1

MEMORANDUM IN SUPPORT ................................................................................... 1

I.    INTRODUCTION ............................................................................................ 1

II.   BACKGROUND .............................................................................................. 1

    A.    Plaintiffs File Separate Complaints In State And Federal Court Against The Same Defendants Three Days Apart ..................................... 1

    B.    Defendants Remove The State Case To This Court, But Plaintiffs Successfully Move To Remand It To State Court ................................... 4

    C.    Defendants Move To Dismiss The State Court Case In Favor of the Prior-Pending Federal Action, Which Motion The State Court Denies ................................................................................................. 5

    D.    The Parties Litigate The State Court Case Through Trial ...................... 6

        1.    Cross-Motions For Summary Judgment ...................................... 6

        2.    Jury Trial And Verdict On Remaining Claims ............................. 9

III.   ARGUMENT .................................................................................................... 9

    A.    Oregon Law Requires That The Federal Court Give Preclusive Effect To A Prior State Court Judgment Based On The Same "Transaction or Occurrence." ................................................................. 9

    B.    The Federal And State Cases Unquestionably Arise From The Same Transaction Or Occurrence ............................................................ 11

    C.    Plaintiffs' Anticipated Counterarguments Lack Merit ........................... 13

        1.    Defendants Did Not "Acquiesce" To Separate Federal And State Litigation ................................................................................. 13

        2.    There Is No Basis To Conclude That This Court Would Have Rejected Supplemental Jurisdiction Over The State Law Claims .................................................................................... 16

        3.    Defendants' Motion Is Timely .................................................... 19

IV.   CONCLUSION ................................................................................................. 21

## Cases

*Beetham v. Georgia-Pacific Corp.*,
    87 Or. App. 592, 743 P.2d 755 (1987).................................................................5

*Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*,
    402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)............................................20

*Bloomfield v. Weakland*,
    339 Or. 504, 123 P.3d 275 (2005) ...................................................................12

*Brown v. Felsen*,
    442 U.S. 127 (1979)........................................................................................10

*Caligiuri v. Columbia River Bank Mortgage Group*,
    329 F. App'x 93 (9th Cir. 2009) ................................................................12, 13

*Cumbie v. Woody Woo, Inc.*,
    596 F.3d 577 (9th Cir 2010) ........................................................................6, 7

*Cumbie v. Woody Woo, Inc.*,
    No. CV. 08–504–PK, 2008 WL 2884484 (D. Or. July 25, 2008) ..........................19

*Dean v. Exotic Veneers, Inc.*,
    271 Or. 188, 531 P.2d 266 (1975) ..................................................................10

*Drews v. EBI Cos.*,
    310 Or. 134, 795 P.2d 531 (1990) ..................................................................10

*Eli v. Lampert*,
    194 Or. App. 280, 94 P.3d 170 (2004)........................................................11, 12

*Feminist Women's Health Ctr. v. Codispoti*,
    63 F.3d 863 (9th Cir. 1995) ...........................................................................10

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*,
    545 U.S. 308 (2005)........................................................................................4

*Harbeson v. Parke Davis, Inc.*,
    746 F.2d 517 (9th Cir. 1984) .........................................................................20

*Lanier v. Fresno Unified Sch. Dist.*,
    No. 1:09-CV-01779-AWI, 2013 WL 1896183 (E.D. Cal. May 6, 2013)...............21

*Latman v. Burdette*,
    366 F.3d 774 (9th Cir. 2004) .........................................................................10

Page ii  -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CLAIM
          PRECLUSION GROUNDS

*Lopes v. Bush Gardens of Oregon, Inc.*,
  Case No. 3:08-cv-01492-HU (D. Or Apr. 17, 2009) ............................................19

*Migra v. Warren City Sch. Dist. Bd. of Educ.*,
  465 U.S. 75 (1984)...........................................................................................................9

*Owens v. Kaiser Found. Health Plan, Inc.*,
  244 F.3d 708 (9th Cir. 2001) .................................................................................20, 21

*Ram Tech. Servs., Inc. v. Koresko*,
  346 Or. 215, 208 P.3d 950 (2009) ...............................................16, 17, 18, 19

*Rennie v. Freeway Transport*,
  294 Or. 319, 656 P.2d 919 (1982) ............................................................... passim

*Sanchez v. City of Santa Ana*,
  915 F.2d 424 (9th Cir. 1990) .................................................................................20, 21

*Tyler v. Horizon Project Inc.*,
  26 F. Supp. 2d 1250 (D. Or. 1998) ........................................................................10, 12

**Statutes**

28 U.S.C. § 1331 ............................................................................................................4

28 U.S.C. § 1367(c) ......................................................................................................16

28 U.S.C. § 1441 ..........................................................................................................15

28 U.S.C. § 1441(a) ......................................................................................................14

29 U.S.C. § 215 ..............................................................................................................2

29 U.S.C. § 215(a) ..........................................................................................................2

29 U.S.C. § 216 ..............................................................................................................2

29 U.S.C. § 216(b) ..........................................................................................................2

ERISA § 1132(a)(3)(B)................................................................................................16

ORS 652.355 ...............................................................................................................2, 9

ORS 653.060 ...............................................................................................................2, 9

ORS 659A.030 ................................................................................................................2

ORS 659A.199 ................................................................................................................2

Page iii  -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CLAIM
               PRECLUSION GROUNDS

**Rules**

Fed.R.Civ.P. 8(c) ..................................................................................................20

Fed.R.Civ.P. 12(b)(6)..........................................................................................18

Fed. R. Civ. P. 56 ..................................................................................................1

LR 7-1(a)................................................................................................................1

ORCP 21 A(3)................................................................................................ passim

**Regulations**

29 C.F.R. § § 531.540 et seq.................................................................................3

**Constitutional Provisions**

U.S. Constitution Full Faith and Credit Clause ....................................................9

**Other Authorities**

*Restatement (Second) of Judgments* § 25 comment....................................................16

## LR 7-1(a) CERTIFICATION

Pursuant to LR 7-1(a), defendants Scott Dolich, Park Kitchen LLC, Anna Josephson and

The Bent Brick LLC (collectively "Defendants") have conferred in good faith with Plaintiffs'

counsel regarding this Motion.  Plaintiffs oppose this Motion.

## MOTION

Pursuant to Fed. R. Civ. P. 56, Defendants hereby move this Court for an Order granting

summary judgment against Plaintiffs' Second Amended Complaint.  There is no genuine issue of

material fact and Defendants are entitled to judgment as a matter of law.  This Motion is

supported by the attached Memorandum in Support and the Declaration of Karen L. O'Connor.

## MEMORANDUM IN SUPPORT

## I.      INTRODUCTION

Plaintiffs initiated this action on June 20, 2014, alleging violations of the Fair Labor

Standards Act ("FLSA").  Three days later, Plaintiffs commenced an action in the Circuit Court

for the State of Oregon for the County of Multnomah, involving the same Plaintiffs and the same

Defendants, asserting state law claims stemming from the identical set of facts and circumstances

which formed the basis of their federal claims.  Because Plaintiffs have fully litigated their

claims against Defendants in state court, and opted not to assert the federal claims in that state

court action, the doctrine of claim preclusion prohibits Plaintiffs from further litigating their

claims.  Defendants are entitled to summary judgment dismissing Plaintiffs' claims in this action.

## II.      BACKGROUND

### A.      Plaintiffs File Separate Complaints In State And Federal Court Against The Same Defendants Three Days Apart.

On June 20, 2014, Plaintiffs initiated a putative collective action complaint against Park

Kitchen and Scott Dolich in the United States District Court for the District of Oregon (the

"Federal Complaint" or the "Federal Case").  Plaintiffs alleged that Park Kitchen compelled

tipped employees to pool and share their tips with non-tipped employees, thereby rendering the

tipping scheme invalid under the FLSA and thus reducing Plaintiffs' wages below federal

minimum wage.  The Federal Complaint also alleged that Park Kitchen regularly issued checks

after the regular payday so that Plaintiffs did not receive minimum wage on payday, and that

Park Kitchen and Mr. Dolich terminated Ms. Allison and Ms. Burney for complaining about the

unlawful tip pool, in violation of Sections 215 and 216 of the FLSA.  (Fed. Compl. at 6.)

On June 23, 2014, just three days later, the same Plaintiffs, represented by the same

counsel, filed a complaint in the Circuit Court for the State of Oregon in Multnomah County

against the same defendants (the "State Complaint" or the "State Case"). Plaintiffs brought a

total of 13 causes of action stemming from, among other things, alleged retaliation, the alleged

failure to timely pay minimum wage, and the allegedly unlawful tip-pooling policy.

With respect to two sets of claims, the allegations of the State Complaint were virtually

identical to those contained in the Federal Complaint.  First, regarding the retaliation claims, Ms.

Allison and Ms. Burney relied on exactly the same factual allegations to support their theories

that Park Kitchen, Mr. Dolich and (ultimately) Ms. Josephson terminated them in violation of 29

U.S.C. §§ 215(a) and 216(b) and Oregon common law and workplace retaliation statutes,

specifically, ORS 652.355, 653.060, 659A.030 and 659A.199:

| Federal Complaint | State Complaint |
|---|---|
| **Paragraph 10:** "Plaintiff Nancy Allison opposed Park Kitchen's illegal tip pool, both by complaining about it to Park Kitchen and by discussing its illegality with other employees. She was terminated in retaliation for that opposition, with the employer telling her in connection with her termination, 'The last thing I need is a labor union breathing down my neck.'  She was also told that her | **Paragraph 14:** "Plaintiff Nancy Allison opposed Park Kitchen's illegal tip pool, both by complaining about it to Park Kitchen and by discussing its illegality with other employees. She was terminated in retaliation for that opposition, with the employer telling her in connection with her termination, 'The last thing I need is a labor union breathing down my neck.'  She was also told that her |

| | |
|---|---|
| termination was a result of her 'toxic attitude,' though she had never been disciplined in over four years of working there." | termination was a result of her 'toxic attitude,' though she had never been disciplined in over four years of working there." |
| **Paragraph 11:** "Plaintiff Holly Burney opposed Park Kitchen's illegal tip pool, by complaining about it to Park Kitchen, by raising its illegality (and the illegality of an apron deduction) with other employees (including in staff meetings), and by refusing to 'voluntarily' agree in writing to the illegal tip pool. She was terminated in retaliation for that opposition." | **Paragraph 14:** "Plaintiff Holly Burney opposed Park Kitchen's illegal wage-and-hour policies, by complaining about the tip pool to Park Kitchen, by raising its illegality and the apron deduction's illegality with other employees (including in staff meetings), and by refusing to 'voluntarily' agree in writing to the illegal tip pool policy." |

Second, the factual basis for Plaintiffs' contention that Defendants' tip pools violated

Oregon law under the auspices of various common law theories (conversion, intentional

interference with prospective economic advantage, and unjust enrichment) was <u>exactly</u> the same

as the factual basis they asserted in support of their tip-related FLSA minimum wage claims

pending in the Federal Case:

| Federal Case | State Case |
|---|---|
| **Paragraph 7:** "Park Kitchen required Plaintiffs and the other Collective members to pool their tips with the general manager (whether or not she was present in the restaurant) , and with the back-of-the-house staff.  Neither the general manager nor the back-of-the-house staff are traditionally tipped. The tip pool was therefore not valid under the FLSA.  See 29 C.F.R. § § 531.540 et seq, as amended April 5, 2011." | **Paragraph 8:** "Park Kitchen required Plaintiffs and the other Class members to pool their tips with the general manager (whether or not she was present in the restaurant) , and with the back-of-the-house staff.  Neither the general manager nor the back-of-the-house staff are traditionally tipped. The tip pool was therefore not valid under the FLSA.  See 29 C.F.R. § § 531.540 et seq, as amended April 5, 2011." |

Copies of Plaintiffs' original complaints in the Federal and State Cases are attached as

Exhibits A and B, respectively, to the Declaration of Karen O'Connor in Support of Defendants'

Motion for Summary Judgment on Claim Preclusion Grounds ("O'Connor MSJ Dec.").

Although Plaintiffs subsequently amended both the Federal and State Complaints to include

additional defendants (specifically, The Bent Brick and Anna Josephson), the core similarities

between the retaliation and tip-pool claims at all times remained the same.

Page 3   -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CLAIM
PRECLUSION GROUNDS

**B.    Defendants Remove The State Case To This Court, But Plaintiffs Successfully Move To Remand It To State Court.**

Defendants removed the State Case to this Court on July 24, 2014. (Nos. 3:14-cv-01005-AC, 3:14-cv-01179-AC, Dkt No. 1.)  On August 25, 2014, Plaintiffs filed a motion to remand ("Remand Motion") the State Case on the grounds that this Court lacked subject matter jurisdiction under 28 U.S.C. § 1331 because resolution of the state law claims did not require that the Court decide a federal issue, as required by *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005), and its progeny.  (Nos. 3:14-cv-01005-AC, 3:14-cv-01179-AC, Dkt No. 7.)  Defendants opposed the Remand Motion.  (*Id.* Dkt No. 13.)

The Court held oral argument on the Remand Motion on December 16, 2014.  After confirming that the two cases involved plaintiffs drawn from the same pool of potential plaintiffs, the Court asked Plaintiffs' counsel "[i]f we are going to litigate these two cases, which appear to be between the same plaintiffs or potential plaintiffs and the same defendants, shouldn't it all be in one place?"  (Transcript of Dec. 16, 2014 Oral Argument at 9:2-6.)  Plaintiffs' counsel's response was "I don't think it has to be."  (*Id.*)  The Court then asked: "Would you agree that you could have filed all the claims that you have asserted in the state court case in the federal case along with the claims already asserted in the federal case?"  Plaintiffs' counsel responded:

> I think so.  I'm not sure about all of the common law claims.  I could have filed it, but there could have been some that were dismissed for lack of supplemental jurisdiction, depending on the extent to which the Court found that there was a common case of fact, but I could have filed them all together.

(*Id.* at 14:10-19 (emphasis added).)[1]  Later, the Court queried "couldn't I just exercise my supplemental jurisdiction and take the state case and keep it?" and Plaintiffs' counsel responded

---

[1] A transcript of the hearing is attached as Exhibit C to the O'Connor MSJ Declaration.

Page 4    -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CLAIM PRECLUSION GROUNDS

that "[i]f it had been filed originally in federal court, then you could look at supplemental jurisdiction.  But in order for removal to apply, there has to be independent federal jurisdiction over the first case, and I don't think there is [in the state case, I mean.]"  (*Id.* at 16:3-12.) The Court granted the Remand Motion in an order dated December 29, 2014. (Nos. 3:14-cv-01005-AC, 3:14-cv-01179-AC, Dkt No. 23.)

**C.    Defendants Move To Dismiss The State Court Case In Favor of the Prior-Pending Federal Action, Which Motion The State Court Denies.**

The Oregon Rules of Civil Procedure ("ORCP") authorize a motion to dismiss an action when "there is another action pending between the same parties for the same cause."  ORCP 21 A(3). The rule codifies the principle that a party cannot maintain more than one lawsuit at a time against the same opposing parties for the same claims or similar claims that arise out of a common nucleus of operative fact.  *Beetham v. Georgia-Pacific Corp.*, 87 Or. App. 592, 595, 743 P.2d 755 (1987).   Accordingly, following remand, on February 26, 2015, Defendants moved to dismiss the State Complaint ("ORCP 21 A(3) Motion") on the grounds that the Federal Complaint was a prior pending action "between the same parties for the same cause." (O'Connor MSJ Dec. ¶ 5, Ex. D.)

Plaintiffs opposed the ORCP 21 A(3) Motion.  (*Id.*)  The primary basis for Plaintiffs' opposition was the argument that ORCP 21 A(3) applied exclusively to prior-pending actions filed within the State of Oregon (e.g., a case filed in Washington County Circuit Court while another remained pending in Multnomah County Circuit Court) and not to prior-pending actions filed in other jurisdictions.  (*See* O'Connor MSJ Dec. Ex. D at 2.)  Plaintiffs also advanced (erroneously) the position that the federal claims and state claims were not for "the same cause." (*Id.* at 5-12.)  However, even in doing so, Plaintiffs conceded that they "could have filed these [tip-related] claims all in the federal case" but claimed (again, erroneously) that it was "unlikely

that the federal court would have *exercised* supplemental jurisdiction over the state tort and

equitable claims."  (*Id*. at 5 (emphasis retained).)[2]  The state court denied Defendants' ORCP 21

A(3) Motion.

**D.    The Parties Litigate The State Court Case Through Trial.**

After the state court denied Defendants' ORCP 21 A(3) Motion, the parties began to

litigate the merits of the State Complaint in earnest.  Without recounting the State Case's lengthy

history in detail, two key developments in the life of the State Case bear directly on this Motion.

**1.    Cross-Motions For Summary Judgment.**

The parties filed cross-motions for summary judgment in the State Case.  On the question

of liability regarding Plaintiffs' tip-related claims, each side argued that based on guidance

materials prepared by the Oregon Bureau of Labor and Industries ("BOLI"), Oregon law

deferred to federal law as to what did or did not qualify as a lawful tip pool.  The only difference

in the parties' positions was which federal standard applied: the position adopted in *Cumbie v.

Woody Woo, Inc.*, 596 F.3d 577 (9th Cir 2010), or the position adopted in the Department of

Labor's 2011 tip pool regulations.  Judge Dailey accepted Plaintiffs' invitation to apply the

Department of Labor's 2011 regulations as the relevant Oregon standard:

> Plaintiffs argue that BOLI's explicit reference to federal law means that BOLI
> intended the validity of tip pooling arrangements to be governed by federal law.
> Upon a review of the cited BOLI guidance, the Court finds that the BOLI
> documents cited by the parties indicate BOLI's intention to defer to federal law
> on the issue of tip pool validity.  BOLI clearly explains that "all tips must remain
> the property of the employee except to the extent that there is a valid pooling
> arrangement." The most detailed explanation of what BOLI might consider a
> valid pooling arrangement is the guidance document outlined above. Defendants'
> argument that BOLI's statement "Oregon employers remain free to impose a tip-
> pooling arrangement which includes staff that are not customarily tipped" is an
> adoption of the *Cumbie* standard as a matter of Oregon law does not square with

---

[2] In the interests of completeness, Defendants are including the reply brief for their ORCP
21 A(3) Motion as part of Exhibit D to the O'Connor MSJ Declaration.

the language and context of that statement within the document. Rather, that sentence is merely a statement of the effect of *Cumbie*, a federal case, on Oregon employers. Thus, it actually supports Plaintiffs' argument that BOLI is deferring to federal law on the issue of what constitutes a valid tip pool.

....

Because Defendants' tip pool arrangement included <u>customarily non-tipped employees</u>, the tip pool was invalid under Oregon law.

(Opinion and Order Re: Plaintiffs' Motion for Partial Summary Judgment and Defendants' Cross

Motion for Summary Judgment at 7 (emphasis added; footnote omitted) (O'Connor Decl. ¶ 6,

Ex. E).)

Likewise, and as they did in the Federal Case with respect to their FLSA retaliation

claims, Ms. Allison and Ms. Burney each moved for summary judgment on their State

Complaint retaliation claims.  The declarations each submitted in support of their retaliation

claims confirm that the relevant factual allegations are nearly verbatim:

| Federal Case | State Case |
|---|---|
| **Allison MSJ Dec. ¶ 7:** "In about mid-March 2014, I was complaining in a manager's meeting, for myself and on behalf of others, about the fairness of Ms. Josephson getting the 1 point even though she was not doing the work to justify it and we thought it was illegal. Holly Burney and Brandon Page were near the meeting on the floor and commented that I was in there fighting for them. Either Mr. Dolich or Ms. Josephson said that the next week, Nate Smith could fill me in on what happened at the meeting. I clarified with Anna Josephson that I was no longer allowed in the manager's meetings and she said yes." | **Allison MSJ Dec. ¶ 21:** "In about mid-March 2014, I was complaining in a manager's meeting, for myself and on behalf of others, about the fairness of Ms. Josephson getting the 1 point even though she was not doing the work to justify it and we thought it was illegal. Holly Burney and Brandon Page were near the meeting on the floor and commented that I was in there fighting for them. Either Mr. Dolich or Ms. Josephson said that the next week, Nate Smith could fill me in on what happened at the meeting. I clarified with Anna Josephson that I was no longer allowed in the manager's meetings and she said yes." |

| | |
|---|---|
| **Allison Dec. ¶ 11:** "Despite my agreeing to the new tip pool, Scott Dolich called me the morning after the staff meeting and fired me over the phone. He told me, 'The last thing I need is a labor union breathing down my neck.' I understood these comments to obviously refer to my complaining about the illegal tip pool, on behalf of myself and the other employees. Later, Anna Josephson said that my termination had been because of my 'toxic attitude,' though I had never been disciplined in the almost four years I worked there. Ms. Burney was terminated about two weeks later, after she refused to sign the new tip policy. The only two employees who researched and complained in person to management about the tip pool were terminated within two weeks of each other." | **Allison Dec. ¶ 25:** "Despite my agreeing to the new tip pool, Scott Dolich called me the morning after the staff meeting and fired me over the phone. He told me, 'The last thing I need is a labor union breathing down my neck.' I understood these comments to obviously refer to my complaining about the illegal tip pool, on behalf of myself and the other employees. Later, Anna Josephson said that my termination had been because of my 'toxic attitude,' though I had never been disciplined in the almost four years I worked there. Ms. Burney was terminated about two weeks later, after she refused to sign the new tip policy. The only two employees who researched and complained in person to management about the tip pool were terminated within two weeks of each other." |
| **Burney MSJ Dec. ¶ 9**: "Ms. Josephson explained that, 'legally you can't be employed by Park Kitchen if you don't agree to the tip pool.' She said 'I really wish it didn't have to be this way. I don't understand why you won't just sign the damn paper.' I said 'So am I fired?' She was just sitting there staring at me. I was crying pretty hard by now. I looked at the stack of papers on her desk and asked for my final checks. She grabbed the stack of papers she had patted earlier and handed them to me. It was my last hourly paycheck, tip check, and a Park Kitchen Notice of Termination." | **Burney MSJ Dec. ¶ 27**: "Ms. Josephson explained that, 'legally you can't be employed by Park Kitchen if you don't agree to the tip pool.' She said 'I really wish it didn't have to be this way. I don't understand why you won't just sign the damn paper.' I said 'So am I fired?' She was just sitting there staring at me. I was crying pretty hard by now. I looked at the stack of papers on her desk and asked for my final checks. She grabbed the stack of papers she had patted earlier and handed them to me. It was my last hourly paycheck, tip check, and a Park Kitchen Notice of Termination." |
| **Burney MSJ Dec. ¶ 10**: "She explained the paper as an agreement to terminate. I read the paper and asked, 'why do I need to sign this if it says Employee next to the signature line, when I am being forcefully terminated? It should say "terminated employee".' Ms. Josephson scoffed and said, 'you are an employee until you sign it.' I argued that, 'I'm being fired for not signing a stupid piece of paper and now you want me sign this? It should read correctly.' She said, 'Fine. Do you want me to change it?' I stated, 'Yes, I do because paperwork seems to be a big deal lately.'" | **Burney MSJ Dec. ¶ 28**: "She explained the paper as an agreement to terminate. I read the paper and asked, 'why do I need to sign this if it says Employee next to the signature line, when I am being forcefully terminated? It should say "terminated employee".' Ms. Josephson scoffed and said, 'you are an employee until you sign it.' I argued that, 'I'm being fired for not signing a stupid piece of paper and now you want me sign this? It should read correctly.' She said, 'Fine. Do you want me to change it?' I stated, 'Yes, I do because paperwork seems to be a big deal lately.'" |

Page 8   -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CLAIM
PRECLUSION GROUNDS

The state court granted Ms. Burney's motion (on liability only) but denied Ms. Allison's. Copies of the summary judgment declarations are attached as Exhibit F to the O'Connor MSJ Declaration.

### 2.    Jury Trial And Verdict On Remaining Claims.

The State Case proceeded to trial the week of October 3, 2018, with claims tried both to the jury and to the court, resulting in a verdict in favor of Plaintiffs and the class of employees they represented on (as relevant here) the conversion claim, the breach of duty of good faith and fair dealing claim, and the money had and received claim in the cumulative amount of $638,384.75. The jury also found for Ms. Burney on her retaliation claims and awarded non-economic damages in the amount of $50,000.[3] The jury found in Park Kitchen's favor on Ms. Allison's retaliation claims, and the court similarly found in Park Kitchen's favor on both Ms. Allison's and Ms. Burney's retaliation claims under ORS 652.355 and 653.060, which were tried to the court. (O'Connor MSJ Dec. ¶ 7, Ex. G.) Defendants have submitted their proposed form of judgment along with Plaintiffs' objections to the state court for review and entry. (*Id.* ¶ 9, Ex. H.)

### III.    ARGUMENT

### A.    Oregon Law Requires That The Federal Court Give Preclusive Effect To A Prior State Court Judgment Based On The Same "Transaction or Occurrence."

Under the well-established doctrine of claim preclusion, the Federal Complaint is now precluded by the trial on the State Complaint. The Full Faith and Credit Clause of the U.S. Constitution requires federal courts to give state court judgments the same preclusive effect that the judgment would receive in the deciding state's court. *Migra v. Warren City Sch. Dist. Bd. of*

---

[3] Ms. Allison and Ms. Burney each received economic damages via a settlement in their prior respective NLRB actions.

*Educ.,* 465 U.S. 75, 81 (1984); *see also Tyler v. Horizon Project Inc.,* 26 F. Supp. 2d 1250, 1253 (D. Or. 1998) (Oregon federal court must give state court judgment the same preclusive effect the judgment would receive under Oregon law). Claim preclusion "'refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.'" *Feminist Women's Health Ctr. v. Codispoti,* 63 F.3d 863, 867 (9th Cir. 1995) (citation omitted).

Claim preclusion prevents litigants from "having two bites at the apple." *Dean v. Exotic Veneers, Inc.,* 271 Or. 188, 194, 531 P.2d 266 (1975). A party cannot relitigate claims previously tried and decided on the merits, <u>as well as claims a party could have asserted in a prior action</u>. *Brown v. Felsen,* 442 U.S. 127, 131 (1979). Claim preclusion extends to all claims arising from the prior suit's cause of action, regardless of whether they were actually raised or considered. *Latman v. Burdette,* 366 F.3d 774, 783 (9th Cir. 2004); *see also Tyler,* 26 F. Supp. 2d at 1253 (opportunity to litigate, whether used or not, and finality are required for claim preclusion).

In *Drews v. EBI Cos.,* 310 Or. 134, 140, 795 P.2d 531 (1990), the Oregon Supreme Court stated:

> "[A] plaintiff who has prosecuted one action against a defendant through to a final judgment * * * is barred * * * from prosecuting another action against the same defendant <u>where the claim in the second action is one which is based on the same factual transaction that was at issue in the first</u>, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action."

(Emphasis added; other alterations in original; brackets and citation omitted.) The Oregon courts have also provided guidance about how to determine whether two actions share a common transactional basis such that judgment in the first will preclude further litigation of the second:

"[The] focus is on the transaction at issue in the plaintiff's claim, with claim preclusion applying to all claims against the defendant that were available to the plaintiff arising from that transaction, whether or not the plaintiff actually asserted them." A connected series of transactions may constitute a single transaction for preclusion purposes. <u>Whether a constellation of factual circumstances constitutes a single "factual transaction" is determined pragmatically, by giving weight to considerations that include time, space, origin, motivation, the similarity of the acts, and whether the events form a convenient trial unit</u>.

*Eli v. Lampert*, 194 Or. App. 280, 285-86, 94 P.3d 170 (2004) (emphasis added; citations omitted).

## B.    The Federal And State Cases Unquestionably Arise From The Same Transaction Or Occurrence.

There is no serious question that the Federal Complaint and the State Complaint stem from the same "factual transaction." The similarities in the core allegations abound, as the two cases involve the same parties; the same allegedly unlawful policy of pooling tips among managers and front-of-the-house and back-of-the-house employees; the same paychecks, rates of pay, and pay dates; and the same allegedly unlawful motivation for terminating Ms. Allison and Ms. Burney, *viz*., their opposition to Defendants' tip-pooling policy. These similarities are far greater than the simple "employer-employee relationship" that some courts have found insufficient to confer supplemental jurisdiction between FLSA claims and state unpaid wages claims and that Plaintiffs have previously relied upon in opposition to Defendants' attempts to consolidate the State and Federal Cases. (*See, e.g.,* Pls.' Resp. to ORCP 21 A(3) Mtn. at 7-8.)

By any rational reading, the State and Federal Cases stem from the same core set of facts. Concededly, it is true that there are aspects of the State Complaint that do not appear directly in the Federal Complaint—for example, Plaintiffs' claim in the State Case that Defendants made improper deductions from their paychecks. However, these differences are far from sufficient to suggest that the two cases come from completely distinct "constellation[s] of factual

Page 11   -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CLAIM PRECLUSION GROUNDS

circumstances." *Eli*, 194 Or. App. at 285.  The core set of allegations in both cases is the same: that these particular Defendants, particularly with respect to tips, did not pay these particular Plaintiffs the amounts Plaintiffs claim that they should have.

The conclusion that Plaintiffs' Federal Case must be dismissed because of the prior judgment in the State Case is clear from a host of decisions from this Court.  In *Tyler v. Horizon Project Inc.*, Tyler filed a lawsuit in state court ("*Tyler I*") with four co-workers regarding her wages; the lawsuit was amended and later settled.  Tyler then filed a subsequent complaint in federal court in which she alleged various Section 1983 claims, retaliation relating to her inquiries about her wages, and wrongful discharge.  Rejecting plaintiff's arguments that she could not have raised the later claims in the first case, the U.S. District Court held that plaintiff "should have brought these claims in *Tyler I* and is now precluded from litigating them in this court." *Tyler*, 26 F. Supp. 2d at 1255; *see also Bloomfield v. Weakland,* 339 Or. 504, 511, 123 P.3d 275 (2005) (claim preclusion forecloses a party that has litigated a claim against another from further litigation on any ground or theory of relief that the party could have litigated in the first instance).

In *Caligiuri v. Columbia River Bank Mortgage Group,* 329 F. App'x 93, 94-95 (9th Cir. 2009), plaintiff filed a state court lawsuit against various defendants.  Following the conclusion of the state court action, plaintiff filed a subsequent lawsuit alleging federal claims against the same defendants.  *Id.* The Ninth Circuit dismissed the lawsuit as claim-precluded, finding that "Caligiuri's claims in this case arise from the same factual transactions as his claims in the state case, and he could have or did bring all of his claims in this case in the previous state case …."

Like plaintiffs in *Tyler* and *Caligiuri,* Plaintiffs in this case litigated the claims they chose to litigate in the State Complaint.  Having done so, they are now barred from litigating additional

claims—claims which they admitted could have been raised in the State Complaint—in this Court.

**C.       Plaintiffs' Anticipated Counterarguments Lack Merit.**

Defendants request permission to submit a short reply brief to address Plaintiffs' arguments in opposing this Motion. Without foregoing this request, below Defendants address three arguments that they anticipate Plaintiffs will raise based on their prior briefing and their counsel's comments during a telephone conference with the Court on October 19, 2018.

**1.       Defendants Did Not "Acquiesce" To Separate Federal And State Litigation.**

Plaintiffs' argument that Defendants "acquiesced" to their claim splitting is specious, as Defendants did not "acquiesce" to anything. As the procedural history set forth in Section II makes clear, Defendants long ago attempted to consolidate this litigation in this Court by removing the State Case to federal court. (*See supra* Section II.B.) Plaintiffs successfully opposed removal, despite conceding that the Court could have exercised supplemental jurisdiction over their pendent state law claims had Plaintiffs simply pled them as part of the Federal Complaint. (*Id*.) Defendants again attempted to address the problem of the competing State and Federal Complaints when following remand they moved to dismiss the State Complaint on the grounds that the Federal Complaint constituted a prior pending action under ORCP 21 A(3). (*See supra* Section II.C.) Plaintiffs <u>again</u> successfully opposed Defendants' efforts.

The parties' briefing on the ORCP 21 A(3) Motion sets the stage for the thin premise of Plaintiffs' "acquiescence" argument: that Defendants cannot complain about the prior judgment in the State Case because Defendants declined Plaintiffs' invitation to waive the right to remove

the State Case to federal court in return for Plaintiffs' agreement to "add their FLSA claims to [the State Court] case immediately." (Pls.' Resp. to ORCP 21 A(3) Mtn. at 2.)

This argument is wrong on at least two levels. First, it utterly ignores the procedural mischief that made Defendants' ORCP 21 A(3) Motion necessary in the first place: Plaintiffs' inexplicable decision to split their state and federal claims between two complaints in the first place, followed by their insistence on continuing the dual-complaint charade even after Defendants (and the Court) pointed out the obvious path to resolving the two cases in the same (federal) forum.

Second, Plaintiffs' proposed bargain would have required Defendants to waive their right to a federal forum for Plaintiffs' FLSA claims. *See* 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."). Under no circumstances were Defendants obligated to waive such a critical right, let alone as a means to consolidate this case in a single forum; all that was necessary for consolidation was for Plaintiffs to assert their state claims in the Federal Case under basic principles of supplemental jurisdiction. Accepting Plaintiffs' invitation would have constituted surrender, not acquiescence.

Third, the Oregon Supreme Court flatly rejected an eerily similar "acquiescence" argument in *Rennie v. Freeway Transport*, 294 Or. 319, 656 P.2d 919 (1982). There, the plaintiff filed a complaint in federal court alleging a violation of federal securities law and shortly thereafter filed a parallel complaint in state court alleging common law fraud. 294 Or. at 321. The action in federal court proceeded to judgment first, and the defendants subsequently

moved for summary judgment in the state court action on the grounds of claim preclusion. *Id.* at

322. Plaintiff opposed the motion on the argument that the defendants had acquiesced in the

claim splitting.

The court was having <u>none</u> of it:

[D]efendants did not in any manner agree to plaintiff's claim-splitting. Immediately after the complaint in this action was filed, the defendants moved to dismiss or abate citing the pending federal court proceedings as grounds for the motion. Plaintiff argued in opposition to defendants' motion to dismiss or abate that defendants could invoke the pendent jurisdiction of the federal court if they objected to separate actions. He cited no authority for that proposition, however, and we are not aware of any procedural device whereby a defendant in a state court action can remove a nonfederal claim and force a pendent jurisdiction joinder with a federal claim already pending in federal court. *See* 28 U.S.C. § 1441. Even if defendants, through some procedural manipulation, could have engineered a rejoining of plaintiff's claim, we do not believe that their failure to do so is tantamount to acquiescence in plaintiff's claim-splitting. <u>Where, as here, a defendant has timely voiced objections to a plaintiff's simultaneous prosecution of multiple actions arising from one transaction, through an ORCP 21 A.(3) motion or the like, the onus is upon the plaintiff not the defendant to accomplish any necessary joinder</u>.

*Id.* at 329 (emphasis added).

Defendants in this case are no different from the defendants in *Rennie*. Forced to litigate

on parallel fronts, Defendants took all reasonable steps to attempt to eliminate the piecemeal

nature of the litigation, first by attempting to "remove a nonfederal claim and force a pendent

jurisdiction joinder with a federal claim already pending in federal court" and then by "timely

voic[ing] objections to a plaintiff's simultaneous prosecution of multiple actions arising from one

transaction, through an ORCP 21 A.(3) motion." *Id.* As *Rennie* shows, Defendants did not

acquiesce to Plaintiffs' claim splitting.

Page 15   -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CLAIM
PRECLUSION GROUNDS

## 2.    There Is No Basis To Conclude That This Court Would Have Rejected Supplemental Jurisdiction Over The State Law Claims.

Plaintiffs also argue that a judgment in the State Case will not preclude litigation of the Federal Case because this Court would have declined supplemental jurisdiction to hear their state law claims under 28 U.S.C. § 1367(c).  Although the basis for this argument is not entirely clear to Defendants, they assume that Plaintiffs refer to the general rule stated in the Restatement (Second) of Judgments and cited by the Oregon Supreme Court:

> The *Restatement* recognizes that, as a general rule, claim preclusion will bar a plaintiff who litigates a federal claim in federal court from relitigating state claims that the plaintiff could have but did not litigate in the federal action.  *See Rennie*, 294 Or. at 326, 656 P.2d 919 (quoting *Restatement (Second) of Judgments* § 25 comment e (1982)). However, the *Restatement* also recognizes an exception to that general rule: If the federal court either clearly lacked jurisdiction over any pendent state law claims or, having jurisdiction, clearly would have declined to exercise its discretion to hear those state law claims, then claim preclusion does not bar litigating those claims. *Id.*

*Ram Tech. Servs., Inc. v. Koresko,* 346 Or. 215, 220, 208 P.3d 950 (2009).

Plaintiffs' reliance on this exception fails, as there is every reason to believe that this Court would have exercised supplemental jurisdiction under 28 U.S.C. § 1367(c) had Plaintiffs presented their state and federal claims in a single complaint.  Indeed, the Oregon Supreme Court's decision in *Ram Technical Services* illustrates the narrowness of the "declined jurisdiction" exception and shows why it does not apply in this case.

That case began with the plaintiffs filing a claim under ERISA Section 1132(a)(3)(B) alleging that defendants had "fraudulently induced them to enter into an agreement creating an employee benefit plan." *Ram Tech. Servs.*, 346 Or. at 218.  The district court concluded that plaintiffs had failed to state a claim under ERISA and that plaintiffs claim lay, if at all, under state law.  *Id.* at 219.  However, and somewhat confusingly, the district court's initial order dismissing the case stated that dismissal was based on lack of subject matter jurisdiction. *Id.*

Page 16  -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CLAIM PRECLUSION GROUNDS

Even before judgment was entered in their federal case, the plaintiffs filed "an action in state court alleging parallel state fraud claims." *Id*. Indeed, there was no question that plaintiffs' "state claims arise out of the same transaction that gave rise to their ERISA claims, and the factual allegations are virtually identical." *Id*.  The trial court thus granted the defendants' motion to dismiss the state case based on claim preclusion, which the Court of Appeals affirmed.  *Id*. at 220.

The Oregon Supreme Court reversed.  The purpose of the "declined jurisdiction" exception is to protect a federal litigant from losing its right to pursue claims in a subsequent state court action when it could not, as a practical matter, have pursued the state law claims in federal court in the first place.  Citing its decision in *Rennie*, the Supreme Court noted that this situation could arise in two scenarios:  (1) "'where the federal court . . . expressly declined to exercise pendent jurisdiction over the state law claim'"; and (2) "'where, due to the nature of the claims or the fact that the federal law claim was summarily dismissed, the federal court would have clearly declined to exercise pendent jurisdiction.'"  *Id*.  at 225 (emphasis omitted) (quoting *Rennie,* 294 Or. at 327-28).

Applying that rationale, the Supreme Court had little trouble concluding that the district court would have declined supplemental jurisdiction over the plaintiffs' state law fraudulent inducement claim because it dismissed their ERISA claim:

> [T]he record leaves no doubt that the district court would have declined to exercise supplemental jurisdiction over any state law claims that plaintiffs might have asserted. As noted, the United States Supreme Court explained in [*United Mine Workers v.] Gibbs* [383 U.S. 715 (1966)] that, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." 383 U.S. at 726, 86 S.Ct. 1130. Although *Gibbs* did not state an inflexible rule, it did identify the appropriate balance in the usual case "in which all federal-law claims are eliminated before trial." *Carnegie-Mellon Univ*. [*v. Cohill*], 484 U.S. [343,] 350 n. 7, 108 S.Ct. 614 [(1988)]. Nothing in this record suggests that plaintiffs' federal action was not the

usual case. Indeed, the district court dismissed plaintiffs' ERISA claims at the
first stage of the litigation in response to defendants' FRCP 12(b)(6) motions.

*Id.* at 229.

The Plaintiffs in this case stand in a materially different position from their counterparts

in *Ram Technical Services*.  The *Ram Technical Services* plaintiffs first attempted to file their

entire case in federal court and only retreated to state court when the district court dismissed their

ERISA claim.  Plaintiffs, in contrast, never made such an attempt and instead affirmatively split

their state and federal claims from the starting gate.[4]  Although this served their immediate-term

goal of creating parallel litigation in state and federal court, the secondary result of their strategy

is that they failed to achieve the predicate that drove the Oregon Supreme Court's decision to

apply the "declined jurisdiction" exception in *Ram Technical Services*: dismissal of the anchor

federal claim, which would in turn create  a "record [that] leaves no doubt that the district court

would have declined to exercise supplemental jurisdiction over any state law claims." *Ram Tech.*

*Servs.,* 346 Or. at 229.  As the Supreme Court put it in *Rennie*:

> It may have been plaintiff's preference to split his claim into the state and federal
> law components and to try them each separately, but his unilateral claim-splitting
> and the consequent multiplicity of lawsuits the defendants were obligated to
> defend is precisely the evil sought to be avoided by the *res judicata* doctrine.

*Rennie,* 294 Or. at 327.

Without dismissal of their federal claims, Plaintiffs are left to argue that this Court would

have declined supplemental jurisdiction "'due to the nature of the claims.'"  *Ram Tech. Servs.,*

346 Or. at 225 (emphasis omitted) (quoting *Rennie,* 294 Or. at 328). This is a heavy burden.  The

Supreme Court took pains to emphasize that the "declined jurisdiction" exception is just that: an

---

[4] The *Rennie* court contemplated such a possibility and its preclusion consequences, noting that
"where a plaintiff has a colorable right to invoke the pendent jurisdiction of the federal court
with regard to a state law claim, he or she is obliged to at least attempt joinder or else face
preclusion in a subsequent state court action based on that claim."  *Rennie,* 294 Or. at 326.

Page 18   -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CLAIM
PRECLUSION GROUNDS

exception to the "general rule that, if a federal court could have exercised supplemental jurisdiction over a related state claim, the failure to raise the state claim along with the federal claim will bar a party from later seeking to litigate the state claim in state court." *Id*. at 224 (emphasis added).  Thus, the court observed that "[i]f it is not clear that the federal court, having jurisdiction, would have declined to exercise it, then claim preclusion will bar any state law claim that a plaintiff could have but did not raise initially in federal court." *Id*. at 227.

Plaintiffs cannot satisfy this burden.  First, the Court's comments at the December 16, 2014 oral argument on the Remand Motion strongly suggest exactly the contrary: that the Court thought the most efficient course would be to resolve both sets of claims in the same forum and that it would have exercised supplemental jurisdiction had it been given the opportunity to do so. (*See supra* Section II.B.)  Second, in at least two prior cases (both involving Plaintiffs' counsel) judges in this District have exercised original jurisdiction over tip-related FLSA minimum wage claims and supplemental jurisdiction over claims under Oregon law for, e.g., conversion of tips or for unpaid wages generally.  *Lopes v. Bush Gardens of Oregon, Inc.*, Case No. 3:08-cv-01492-HU (D. Or Apr. 17, 2009); *Cumbie v. Woody Woo, Inc.*, No. CV. 08–504–PK, 2008 WL 2884484 (D. Or. July 25, 2008).  There is no reason whatsoever to conclude that this case would have been handled any differently.  As Plaintiffs themselves have claimed in the past, their tort claims are simply "garden variety" theories under Oregon law, ones that this Court was more than capable of addressing.  (Pls.' Remand Mtn. at 11.)

### 3.    Defendants' Motion Is Timely.

Finally, there is no merit to Plaintiffs' argument that Defendants' Motion is untimely because it was filed after the dispositive motions deadline the Court adopted at an earlier stage of this case.  This argument fails for the obvious reason that, until the state court trial concluded and

Page 19   -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CLAIM
                        PRECLUSION GROUNDS

the resulting judgment became imminent, there was no basis for Defendants to plead a preclusion

defense, let alone assert one in a dispositive motion.

The Ninth Circuit addressed a similar issue in *Sanchez v. City of Santa Ana*, 915 F.2d 424

(9th Cir. 1990), a Section 1983 case involving a police officer who alleged his merit pay had

been reduced in violation of his due process rights.  One of the issues in the case was the

preclusive effect, if any, of two prior claims that the plaintiff had filed "with the California

Workers' Compensation Appeals Board for emotional injuries arising out of the loss of his merit

pay."  *Id*. at 431.  The defendant first asserted the res judicata defense in October of 1985, more

than five years after the plaintiff filed his complaint.  The plaintiff argued that the defendant

waived the res judicata defense by not asserting it at an earlier stage of the case. The Ninth

Circuit disagreed:

> Preliminarily, we reject Sanchez's contention that the City has waived its
> right to assert res judicata. Res judicata is an affirmative defense and is ordinarily
> waived if not specially pleaded. Fed.R.Civ.P. 8(c); *Harbeson v. Parke Davis, Inc*.,
> 746 F.2d 517, 520 (9th Cir. 1984). "[A] preclusion defense that arises after the
> pleadings have been filed can be raised only by a motion for leave to file a
> supplemental answer under [Federal Rule of Civil Procedure] 15(d)." *Id*. We
> liberally construe such attempts to raise the defense as motions for leave to file a
> supplemental answer. *Id*.
>
> The City could not have raised a preclusion defense in its August 14, 1980
> answer because Sanchez did not receive the compensation award until November
> 12, 1981. The City raised the issue in its "Brief re. Allowable Damages" in
> October 1985. While considerable time had passed since the date of the award,
> the City did raise the issue prior to the trial on damages, thus giving Sanchez
> "'notice of the plea of estoppel and a chance to argue ... why the imposition of an
> estoppel would be inappropriate.' " *Id*. (quoting *Blonder–Tongue Laboratories,
> Inc. v. University of Illinois Foundation*, 402 U.S. 313, 350, 91 S.Ct. 1434, 1453,
> 28 L.Ed.2d 788 (1971)). We therefore hold that the City has not waived its right
> to assert preclusion of that claim.

*Id*. at 431–32 (alterations in original); *see also Owens v. Kaiser Found. Health Plan, Inc.,* 244

F.3d 708, 712 (9th Cir. 2001) (district court properly allowed leave to amend to add res judicata

Page 20   -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CLAIM
                PRECLUSION GROUNDS

defense where defendant raised it "[i]mmediately upon learning of [its] availability"); *Lanier v. Fresno Unified Sch. Dist.*, No. 1:09-CV-01779-AWI, 2013 WL 1896183, at \*4 (E.D. Cal. May 6, 2013) (allowing amendment to add res judicata defense in federal case even though defendant waited approximately six months after final judgment in parallel state court litigation).

Like the defendants in *Sanchez, Owens* and *Lanier*, Defendants have asserted the res judicata defense as soon as they reasonably could under the circumstances. Nothing further is required.

## IV.    CONCLUSION

For the reasons stated above, the Court should grant Defendants' Motion for Summary Judgment against Plaintiffs' Complaint and dismiss this case in its entirety.

DATED:  October 24, 2018.                           STOEL RIVES LLP

Respectfully submitted,

*s/ Karen L. O'Connor*
Karen L. O'Connor, OSB No. 953710
John B. Dudrey, OSB No. 083085

Attorneys for Defendants

Page 21  -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CLAIM
PRECLUSION GROUNDS