UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

NANCY ALLISON and HOLLY BURNEY,
both in their individual capacities and, in
addition, as a collective action on behalf of
others similarly situated,

                          Plaintiffs,

     v.

SCOTT DOLICH and ANNA
JOSEPHSON, indivuals; and PARK
KITCHEN LLC and THE BENT BRICK,
LLC, Oregon limited liability companies,


                       Defendants.

Case No. 3:14-cv-01005-AC

OPINION AND
ORDER

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiffs Nancy Allison ("Allison") and Holly Burney ("Burney") (collectively, "Plaintiffs")

PAGE 1 - ORDER AND OPINION

filed this collective[1] and individual action against their former employer seeking money damages and declaratory relief for violations of the Fair Labor Standards Act (29 U.S.C. §§ 201–219) (the "Act"). Immediately upon filing this action, Plaintiffs filed a second lawsuit in state court based on facts largely identical to those asserted here. A jury trial concluded the state case in October 2018 in Plaintiffs' favor, and Defendants Scott Dolich ("Dolich"), Anna Josephson ("Josephson"), Park Kitchen LLC ("Park Kitchen"), and The Bent Brick LLC ("Bent Brick") (collectively, "Defendants") now move for summary judgment, alleging the doctrine of claim preclusion bars further adjudication in this case. Because Plaintiffs' federal claims seek remedies additional to those obtained in the state action, are predicated on the same facts as the state claims, and could have been litigated in a single proceeding, claim preclusion bars Plaintiffs claims before this court. Defendants's motion is GRANTED.[2]

*Background*

I.    The Federal Action

Plaintiffs filed this action on June 20, 2014 (the "Federal Action"). In the Second Amended Complaint filed on December 25, 2015 (the "Federal Complaint"), Plaintiffs alleged Defendants violated the Act by requiring Plaintiffs, and collective members, to participate in a mandatory invalid tip pool in violation of 29 U.S.C. § 203(m) and, consequently, violated 29 U.S.C. § 206 by failing

---

[1] At least twenty other Park Kitchen and Bent Brick employees — Rebecca Elroy, Teal Garrels, Elizabeth McElligott, Bradford Bohrer, Tiffany Cheri Cordeiro, Camille Titus, Nate Hillenkamp, Mark MacMinn, Beth Harding, Suzanne Latham, Nicholaus Petersen, Faith Holifield, Eric Pavey, Nicola Breur, Lauren Boden, Mary Bartlett, Deanna Ternes, Andrea Baiz-Escobedo, and Tara Gower — have filed consents to join in this action as collective members.

[2] The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 639(c)(1).

to pay them the federal minimum wage when such wage was due.  (Second Am. Individual and Collective Allegation Compl., ECF No. 48 ("Second Am. Compl."), ¶¶ 11, 13.)  Specifically, Plaintiffs alleged Defendants required employees to pool their tips and share them with back-of-house staff, managers, and Josephson, the General Manager—all of whom were not customarily tipped employees.  (*Id.* ¶ 6.)  Plaintiffs asserted such an arrangement was not valid under the Act because the pooled tips ultimately were shared with managers and traditionally non-tipped employees.  (*Id.* ¶ 6.) Consequently, Plaintiffs claimed the deductions taken from their pay pursuant to the invalid tip pool reduced their wages below the federal minimum wage to which they were entitled.  (*Id.* ¶¶ 11, 13.)  Plaintiffs further alleged Defendants often failed to pay them on the designated pay day.  (*Id.* ¶ 8.)

Individually, Allison and Burney claimed Defendants violated the Act by terminating their employment in retaliation for complaining about the wage violations.  (*Id.* ¶¶ 9–10, 16.) Specifically, Allison alleged she was terminated for making complaints to Defendants about the invalid tip pool and discussing its illegality with other employees.  (*Id.* ¶ 9.)  She further alleged Josephson attributed her termination to her "toxic attitude," though she was never subject to disciplinary action during the four years she worked for Defendants.  (*Id.*)  In connection with her termination, Allison asserted Dolich told her, "The last thing I need is a labor union breathing down my neck."  (*Id.*)  Burney similarly alleged she was terminated in retaliation for making complaints to Defendants about the invalid tip pool, discussing its illegality and the illegality of an apron deduction with other employees, and openly opposing the tip pool in staff meetings.  (*Id.* ¶ 10.) Burney claims she was ultimately terminated after she refused to "voluntarily" sign a document agreeing to the tip pooling policy.  (*Id.*)

On March 15, 2015, Defendants moved for partial summary judgment against the minimum wage claims, arguing this court had recently rejected identical tip-pooling claims in *Rocksmore v. Hanson*, No. 3:14-cv-01114-MO, 2015 WL 852938 (D. Or. Feb. 14, 2015), a finding supported by the Ninth Circuit's holding in *Cumbie v. Woody-Woo, Inc.*, 596 F.3d 577 (9th Cir. 2010) (Def.'s Mot. For Partial Summ. J. and Supp. Mem., ECF No. 53, 7.). Defendants also relied on *Oregon Rest. & Lodging v. Solis*, 948 F. Supp. 2d 1217 (D. Or. 2013), which was then on appeal before the Ninth Circuit. (*Id.* at 5–7.) The following week, on March 23, 2015, Defendants filed a motion to stay discovery pending a ruling on the motion for partial summary judgment. (ECF No. 58.)

On April 9, 2015, Plaintiffs opposed Defendants' motion to stay discovery and filed a cross motion to stay the entire action under the *Colorado River* doctrine. (ECF Nos. 63, 64.) Plaintiffs argued that the stay was appropriate in light of the substantially similar action pending in state court which they anticipated would resolve most, if not all, of the issues in the Federal Action. (Pl.'s Cross-Mot. for Stay Under *Colorado River* Doctrine, ECF No. 64, 4.) On May 29, 2015, the court acknowledged the "claims in both the State and Federal Complaints rely on the same underlying facts," but declined to stay the proceedings because it determined a judgment in the State Action would not fully resolve the Federal Action as required by *Colorado River*. (Opinion and Order dated May 29, 2015, ECF No. 80.)

On December 7, 2015, the court granted Defendants' motion for partial summary judgment against Plaintiffs' minimum wage claim, relying on Judge Mosman's analysis in *Rocksmore v. Hanson*, No. 3:14-CV-01114-MO, 2015 WL 852938 (D. Or. Feb. 14, 2015), and *Oregon Rest. & Lodging v. Solis*, 948 F. Supp. 2d 1217 (D. Or. 2013). *Allison v. Dolich*, 148 F. Supp. 3d 1142, 1154–55 (D. Or. 2015) ("*Allison I*"). Judge Mosman rejected the formal rule promulgated by the

Department of Labor ("DOL")[3] in 2011 (the "2011 Rule") extending the tip credit and related restrictions found in 29 U.S.C. § 203(m) to all employers, not just those taking the tip credit, as contrary to clear congressional intent. In so ruling, Judge Mosman followed the Ninth Circuit's ruling in *Cumbie* that employers who pay employees the federal minimum wage are not subject to, and therefore not in violation of, 29 U.S.C. § 203(m). *Solis*, 948 F. Supp. 2d at 1224–27. Adopting Judge Mosman's reasoning, this court specifically found Defendants paid Plaintiffs a wage in excess of the federal minimum wage and did not take a tip credit under 29 U.S.C. § 203(m). *Allison I*, 148 F. Supp. 3d at 1154. Therefore, the court determined Defendants were not subject to the tip-pool restriction found in the statute. *Id.*

On February 23, 2016, the Ninth Circuit reversed *Solis*, finding the 2011 Rule was closely aligned with congressional intent, reasonable, and enforceable. *Oregon Rest. & Lodging v. Perez*, 816 F.3d 1080, 1090 (9th Cir. 2016). On March 4, 2016, this court granted Plaintiffs' oral motion to reinstate the tip pool claims and vacate the December 2015 opinion "to the extent inconsistent with the Ninth Circuit's recent decision in [*Solis*]." (Supp. Order dated March 4, 2016, ECF No. 91.)

On September 28, 2016, the court granted Plaintiffs' cross-motion for partial summary judgment on their minimum wage claim with regard to liability only. *Allison v. Dolich*, 3:14-CV-1005-AC, 2016 WL 5539587 (D. Or. Sept. 28, 2016) ("*Allison II*"). The court determined the practical outcome of the invalid tip pool effectively required Plaintiffs to pay Defendants for the right to work. *Id.* at *6. It then acknowledged undisputed evidence "that, in at least one payroll period, Defendants' tip-pool requirement decreased a plaintiff's effective hourly rate below the federal

---

[3] Congress authorized DOL to promulgate necessary rules, regulations, and orders with regard to the Act.

minimum wage based on a calculation involving the total tips accumulated during the payroll period, the amount paid to employees not customarily tipped, and the share of tips to which Plaintiffs were entitled based on hours worked" which it deemed "sufficient to find Defendants violated the minimum wage provision of the Act by requiring Plaintiffs to participate in an invalid tip pool, resulting in an effective hourly wage rate below the federal minimum in at least one instance." *Id.* at *9. The court expressly noted it did not find that Plaintiffs' "method of calculation correctly establishe[d] the proper apportionment of damages between Plaintiffs." *Id.*

On June 12, 2017, Plaintiffs moved for summary judgment on the damages portion of the minimum wage claim and Plaintiffs' individual retaliation claims. (Pl.'s Mot. for Summ. J., ECF No. 188.) In support of their motion, Plaintiffs submitted individual declarations explaining their experiences with the tip pool, working with Dolich and Josephson, and their subsequent terminations. (O'Connor Decl., Ex. F, 24–36.) Plaintiffs also submitted summarizations in spreadsheet form of pay and time records received from Defendants, and attempted to calculate damages using a formula that purported to show, among other things, how much each employee retained in tips per pay period, the amount of federal minimum wage due to that employee per pay period, and the total amount received by non-tip eligible employees during that pay period. (Decl. Of Michèle Lauzier, ECF No. 190, ¶ 2.)

On February 12, 2018, the court granted summary judgment with regard to liability on Burney's retaliation claim but denied summary judgment with respect to Allison. (Opinion and Order dated Feb. 12, 2018.) The court concluded that while Plaintiffs had engaged in protected activity, only Burney could establish the requisite causal connection between the protected activity and her termination. (*Id.*) Plaintiffs' briefing, however, appeared to concede that "an award of

damages [was] premature," and thus the issue of damages with respect to the individual retaliation claims was reserved for trial. (*Id.*) With regard to the damages portion of Plaintiffs' minimum wage claim, the court identified several deficiencies in Plaintiffs' consolidation of time and pay records, rendering Plaintiffs' spreadsheets inadmissible under Federal Rule of Evidence 1006. The court also determined Plaintiffs' method of calculating damages raised several issues of material fact. Accordingly, the court denied the motion with regard to the damages portion of the minimum wage claim. (Opinion and Order dated Feb. 12, 2018.)

On February 20, 2018, the court scheduled a five-day trial for the remaining claims — the damages portion of the minimum wage claim, the damages portion of Burney's retaliation claim, and Allison's retaliation claim in its entirety — to commence on December 3, 2018. On October 19, 2018, the court held a status conference with the parties to discuss what effect, if any, the recent verdicts rendered for Plaintiffs in state court would have on the pending Federal Action. On October 24, 2018, Defendants filed this Motion for Summary Judgment ("Motion"), arguing Plaintiffs claims are barred by the doctrine of claim preclusion. (Def.'s Mot. for Summ. J. on Claim Preclusion Grounds, ECF No. 225 ("Motion").) Recognizing the issue would not be resolved prior to the beginning of trial, the court struck all pretrial deadlines and the impending trial until resolution of Defendants' Motion.

## II.     The State Action

On June 23, 2014, three days after filing the Federal Complaint, Plaintiffs initiated a second lawsuit in the Circuit Court of the State of Oregon for the County of Multnomah (the "State Action"). In the Second Amended Individual and Class Action Complaint filed February 28, 2016, Plaintiffs alleged violations of Oregon's wage and hour laws, as well as numerous equitable and

common law claims, against Dolich, Josephson, Park Kitchen, and Bent Brick (the "State Complaint").[4] Plaintiffs asserted ten class claims — including claims for unpaid wages and wrongful deductions in violation of Chapter 652 of the Oregon Revised Statutes, and common law claims for conversion, breach of contract, tortious breach of duty of good faith and fair dealing, accounting, unjust enrichment, and money had and received — based, in significant part, on Defendants' requirement that Plaintiffs and other class members participate in a mandatory, invalid tip pool. (State SAC, ¶ 8.) Plaintiffs also based their wage violations on Defendants' alleged failure to pay them "anything at all" on payday in violation of Oregon minimum wage law. (*Id.* ¶ 6.)

The State Complaint expounded on the facts alleged in the Federal Complaint, claiming money from the allegedly invalid tip pool was allocated based on a formula known only to Defendants, and that on more than one occasion, Dolich commented that all of the tips were his to do with as he pleased — "end of discussion." (*Id.*) As in the Federal Complaint, Plaintiffs claimed Josephson took money from the tip pool, whether she was working or not, and kept it for herself or gave it to various managers or other traditionally non-tipped employees. (*Id.* ¶ 9.) Additionally, Plaintiffs alleged Josephson and/or Dolich maintained a "slush fund" of tip pool money to spend at their discretion, and contributed significant amounts of the automatic gratuity applied to private parties to the slush fund rather than to the server who worked the party. (*Id.* ¶¶ 9–11.) Plaintiffs opined the tip pool was initially valid, but alleged Defendants frequently changed the tip-pooling policy without the approval of participating employees, and "exercised discretion and ownership over tip pool moneys that they were not entitled to exercise." (*Id.* ¶ 10.) Consequently, deductions

---

[4] The State Complaint is attached to the Declaration of Karen O'Connor, ECF No. 226 ("O'Connor Decl."), as Exhibit B ("State SAC").

PAGE 8 - ORDER AND OPINION

were made from Plaintiffs' and class members' pay pursuant to the invalid tip pool. Such deductions and non-payments, Plaintiffs claimed, reduced their pay below the applicable minimum wage to which they were entitled for a given workweek. (*Id.* ¶ 12.)

Allison and Burney made six individual claims against Defendants, including claims for common law wrongful discharge, retaliation in violation of Chapter 659A of the Oregon Revised Statutes, and wage discrimination and retaliation under Chapters 652 and 653 of the Oregon Revised Statutes. (*Id.* ¶¶ 61–92.) Under the heading "Facts Specific to Individual Claims," Allison repeated, almost verbatim, the facts supporting her federal FLSA retaliation claim. Specifically, Allison alleged she opposed the invalid tip pool, that such opposition resulted in her termination, that Josephson attributed her termination to her "toxic attitude" despite a clean disciplinary record, and that Dolich had told her in connection with her termination,"The last thing I need is a labor union breathing down my neck." (*Id.* ¶ 17.) Burney also provided facts strikingly similar to those supporting her federal FLSA retaliation claim. She alleged she had opposed the tip pool by raising its illegality, and the illegality of the apron deduction, with Dolich and Josephson, and by openly discussing its illegality in staff meetings and with other employees. (*Id.* ¶ 18.) As in the Federal Complaint, Burney alleged she was terminated in retaliation for her opposition, and for refusing to "voluntarily" agree in writing to the illegal tip pool policy. (*Id.*)

Defendants removed the State Action to this court on July 24, 2014, pursuant to 28 U.S.C. § 1441(a), asserting Plaintiff's claims for conversion, minimum wage violations, and unjust enrichment were based squarely on the Act. *Allison v. Dolich*, No. 3:14-CV-1179-AC, 2014 WL 7240676, *1 (D. Or. Dec. 16, 2014). On August 25, 2014, Plaintiffs moved to remand the State Action, arguing their claims did not involve a controversy arising under the laws of the United States

as required under 28 U.S.C. § 1441(a). Specifically, Plaintiffs contended their claims did not "necessarily" raise federal issues and the resolution of any peripheral federal issue would not be dispositive of the claims alleged in the State Complaint. The primary issue was whether the claims hinged on finding Defendants' tipping practice was invalid under the Act.

During oral argument held on the motion on December 16, 2014, this court questioned Plaintiffs regarding their the pursuit of parallel litigation in both federal and state forums. Noting the two cases appeared to be between the same plaintiffs or potential plaintiffs and the same defendants, the court asked Plaintiffs' counsel ("counsel") if the State and Federal Action "shouldn't . . . be in one place," and whether he could have filed all of the claims asserted in the State Action together with the Federal Action. (O'Connor Decl., Ex. C ("Transcript"), 3–4.) Though counsel conceded that he could have filed the two Actions together in federal court, he maintained his opinion that the cases did not have to be addressed in one forum (*Id.*) When asked why this court couldn't simply exercise its supplemental jurisdiction to keep the State Action in federal court, counsel correctly noted that "[i]f it had been filed originally in federal court, then you could look at supplemental jurisdiction. But in order for removal to apply, there has to be independent federal jurisdiction over the first case, and I don't think there is [in the state case.]" (*Id.* at 5.) Ultimately, this court determined the legality of Defendants' tip pool policy under the Act was not an element of any of the claims alleged in the State Complaint, and remanded the case back to the Multnomah County Circuit Court. *Allison*, 2014 WL 7240676, at *7.

Following remand, Defendants filed a motion to dismiss the State Action in state court, relying on Oregon Rule of Civil Procedure ("ORCP") 21 A(3) and the prior-action-pending doctrine. (O'Connor Decl., Ex. D.) Defendants argued the State Action involved the same parties and cause,

and was based on the same factual transaction as the Federal Action. (*Id.* at 5–7.) Plaintiffs opposed

the motion, asserting ORCP 21 A(3) did not apply when one action is pending in federal court, the

State Action and the Federal Action did not involve the same cause, and Plaintiffs would be deprived

of their right to proceed as a class or receive a fair jury trial if limited to federal court. (*Id.* at 9–12,

17-19.) With regard to the same-cause factor, Plaintiffs argued Oregon's wage and hour laws do not

have a federal counterpart, a violation of Oregon's wage and hour laws does not equate to a violation

of the Act, and an individual's rights under state wage and hour laws provide greater protections for

workers and are distinct from those under the act. (*Id.* at 12.) Plaintiffs conceded, however, that they

"could have filed these [tip-related] claims all in the federal case," but speculated it was "unlikely

that the federal court would have *exercised* supplemental jurisdiction over the state tort and equitable

claims." (*Id.* at 14.) On May 5, 2015, the state court denied Defendants' motion to dismiss in a one-

sentence order.

On April 27, 2018, Plaintiffs brought a motion for partial summary judgment and Defendants

brought a cross-motion for summary judgment in the State Action before Circuit Court Judge Dailey.

(O'Connor Decl., Ex. E. ("State Summ. J. Op."), 1.) In the subsequent opinion, Judge Dailey

addressed the validity of the Defendants' tip pool, noting that Plaintiffs' conversion, tortious breach

of duty of good faith and fair dealing, unjust enrichment, accounting, and money had and received

claims all relied on whether the tip pool was valid under Oregon law. (*Id.* at 6.) The court relied on

guidance issued by the Bureau of Labor and Industries ("BOLI") which "indicate[d] BOLI's

intention to defer to federal law on the issue of tip pool validity." (*Id.* at 7.) Relying on federal law,

Judge Dailey determined the tip pool was invalid because "Defendants' tip pool arrangement

included customarily non-tipped employees." (*Id.*) Accordingly, the court granted summary

judgment in Plaintiffs' favor on the question of the tip pool's validity, but denied the motion as to liability under Plaintiffs' various tip-theft theories and on the breach of contract claim.

Judge Dailey also addressed Allison and Burney's individual retaliation claims. In support of their motion, Allison and Burney each submitted declarations detailing their experiences with the tip pool, working with Dolich and Josephson, and the events leading to their termination. (O'Connor Decl., Ex. F, 1–24.) Large swaths of the declarations submitted in support of their summary judgment motion before Judge Dailey were identical to the declarations submitted in support of their summary judgment motion on their FLSA retaliation claims in the Federal Action. (*Compare id.* at 5–9 *with id.* at 24–29; and *id.* at 17–21 *with id.* at 30–35.) Relying, in part, on Plaintiffs' declarations, Judge Dailey granted summary judgment for Burney with regard to liability on all retaliation claims, save the two claims under ORS 659A.230 and ORS 659A.030(1)(g), but denied summary judgment as to Allison on all claims in their entirety. (State Summ. J. Op., at 8–10.)

The State Action proceeded to trial the week of October 3, 2018. The remaining claims were tried before both a jury and the court, and a verdict was rendered for Plaintiffs and the classes represented on the conversion, breach of duty of good faith and fair dealing, and the money had and received claims in the amount of $638,384.75. The Jury awarded Burney non-economic damages of $50,000 on her retaliation claims, but found in Park Kitchen's favor on Allison's retaliation claims. In a bench ruling, the court found for Park Kitchen on Allison and Burney's retaliation claims under Oregon Revised Statutes 652.355 and 653.060. (O'Connor Decl., Ex. H.) A final judgment was entered February 19, 2019.

*Legal Standard*

Summary judgment is appropriate when "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A party seeking summary judgment bears the burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  If the moving party demonstrates no issue of material fact exists, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.  A party cannot defeat a summary judgment motion by relying on the allegations set forth in the complaint, unsupported conjecture, or conclusory statements.  *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).  Summary judgment thus should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

To determine whether summary judgment is proper, the court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982).  All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party.  *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976).

However, deference to the nonmoving party has limits.  The nonmoving party must set forth "specific facts showing a *genuine* issue for trial." FED. R. CIV. P. 56(e) (emphasis added).  The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

*Discussion*

Plaintiffs brought the two actions at issue in two separate court systems: first, in the United States District Court and then, almost immediately thereafter, in the Multnomah County Circuit Court. Jury and bench verdicts were rendered for Plaintiffs in the State Action on October 5, 2018 and October 12, 2018, respectively. Defendants now move for summary judgment in the Federal Action on the grounds that Plaintiffs' claims are barred by the doctrine of claim preclusion.

Claim preclusion, or *res judicata*, generally prohibits a party from relitigating the same claims that were raised or could have been raised in a prior action. *Western Radio Servs. Co., Inc. V. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). When the prior action is litigated in state court and results in a state-court judgment, federal courts must apply the preclusion law of the state in which judgment was rendered. *Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 81 (1984); *Valley Wood Preserving, Inc. v. Paul*, 785 F.2d 751, 753 (9th Cir.1986). Accordingly, Oregon law governs the extent to which the Multnomah County Circuit Court judgment precludes Plaintiffs' current federal claims.

Oregon case law displays a strong allegiance to the doctrine of claim preclusion. *Goss v. Wilkins*, 80 Or.App. 241, 243, 721 P.2d 884, 885 (1986). Unlike issue preclusion, "claim preclusion does not require actual litigation of an issue of fact or law . . . [n]or does it require that the determination of the issue be essential to the final or end result reached in the action, claim or proceeding." *Drews v. EBI Companies*, 310 Or. 134, 140, 795 P.2d 531, 535 (1990). Rather, for claim preclusion to apply, a party simply must have had the *opportunity* to litigate, whether or not it was used, and finality in the previous action. *Id.*

In *Drews*, the Oregon Supreme Court described the well-established rule regarding claim

preclusion in the following terms:

> [A] plaintiff who has prosecuted one action against a defendant through to a final judgment . . . is barred [i.e. precluded] . . . from prosecuting another action against the same defendant where the claim in the second action is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action.

(quoting *Rennie v. Freeway Transport*, 294 Or. 319, 323, 656 P.2d 919 (1982)). The Oregon Supreme Court has since explained that the "rule forecloses a party that has litigated a claim against another from further litigation on that same claim on any ground or theory of relief that the party could have litigated in the first instance." *Bloomfield v. Weakland*, 339 Or. 504, 511, 123 P.3d 275 (2005). Oregon courts thus use a transactional approach that instructs when "a given state of facts is susceptible to alternative interpretation and analysis, [a] plaintiff must seek and exhaust all alternative grounds or theories for recovery in one action." *Dean v. Exotic Veneers, Inc.*, 271 Or. 188, 194, 531 P.2d 266 (1975). In other words, Oregon courts require "a plaintiff [to] join all claims that the plaintiff has against a particular defendant in a single action when those claims arise from the same set of factual circumstances." *Peterson v. Temple*, 323 Or. 322, 326, 918 P.2d 413 (1996).

There is no disputing the remedy sought in this case is additional to the remedies awarded in the State Action. However, the parties disagree as to whether the remaining claim preclusion factors are met. Defendants allege the State and Federal Actions ultimately stem from the same factual allegations: "that these particular Defendants, particularly with respect to tips, did not pay these particular Plaintiffs the amounts Plaintiffs claim that they should have." (Motion, 12.) Defendants also allege the claims in both Actions could have been litigated in one proceeding, and therefore the imposition of claim preclusion is warranted in this Action. (Def.'s Reply to Mot. for

Summ. J. on Claim Preclusion Grounds, ECF No. 231 ("Def.'s Reply"), 6.) Plaintiffs disagree, arguing Defendants have failed, in a variety of ways, to prove claim preclusion applies. Specifically, Plaintiffs allege (1) Defendants waived *res judicata* by failing to timely plead a preclusion defense and by acquiescing to dual litigation in multiple forums; (2) every claim of every plaintiff was not decided on the merits against every defendant; (3) the State and Federal Actions do not involve the same parties; (4) the State and Federal Actions do not involve the same factual transaction; and (5) there was not a full and fair opportunity to litigate the claims together. *(*Pl.'s Opp. to Def.'s Out-of-Time Mot. for Summ. J. on Unpled Affirm. Defense, ECF No. 228, ("Pl.'s Opp."), 3–15.) The court addresses these arguments in turn.

I.     <u>Whether Defendants Timely Pleaded *Res Judicata*</u>

      A.      *Waiver Under Federal Rule of Civil Procedure 8(c)*

"Res judicata is an affirmative defense and is ordinarily waived if not specially pleaded." *Sanchez v. City of Santa Ana*, 915 F.2d 424, 431 (9th Cir. 1990) (citing FED. R. CIV. P. 8(c); *Harbeson v. Parke Davis, Inc.*, 746 F.2d 517, 520 (9th Cir. 1984)). The Ninth Circuit, however, has recognized the general rule regarding waiver is not absolute. *See, e.g., id.* (finding no waiver because *res judicata* could not have been raised at the time of the answer); *see also McClain v. Apodaca*, 793 F.2d 1031, 1033 (9th Cir. 1986) (finding it appropriate for a bankruptcy court to address claim preclusion *sua sponte* when it allowed the parties to fully brief the issue following trial). Thus, when a previously unavailable preclusion defense becomes viable after the pleadings are filed, it may be raised "by a motion for leave to file a supplemental answer under [Federal Rule of Civil Procedure] 15(d)." *Sanchez*, 915 F.2d at 431. The Ninth Circuit has instructed that a party's attempts to raise the defense after it becomes available are to be "liberally construe[d] . . . as motions for leave to file

PAGE 16 - ORDER AND OPINION

a supplemental answer." *Id.*

Plaintiffs challenge Defendants' assertion of *res judicata*, arguing they failed to properly plead a preclusion defense or to plead it with adequate specificity. (Pl.'s Opp., 3.) Consequently, Plaintiffs claim Defendants' assertion of *res judicata* is untimely in this case. (*Id.* at 3, 13–14.) Defendants counter that until the jury trial concluded and final judgment became imminent in the State Action, there was no basis on which to plead a preclusion defense. (Motion, 20.) Thus, Defendants allege they raised the issue "as soon as practicable under the circumstances." (*Id.*)

The court agrees with Defendants. A preclusion defense was unavailable until a final judgment issued in the State Action, and Defendants filed this Motion in the Federal Action shortly after jury and bench verdicts were rendered for Plaintiffs in state court. In fact, the issue was fully briefed by both parties before final judgment was entered in the State Action on February 19, 2019. Defendants thus asserted *res judicata* almost immediately upon learning its availability was imminent. Furthermore, whether Plaintiffs could, or should, proceed with two separate, parallel actions has been at issue since this case began; indeed, it was a key issue in Plaintiffs' motion to remand and Defendants' opposition to that motion. Plaintiffs have been given ample opportunity to argue against the imposition of claim preclusion here. Plaintiffs therefore have suffered no prejudice as a result of Defendants' assertion of claim preclusion at this stage of the proceedings, and consequently, the court finds Plaintiffs' contention that Defendants have waived their right to assert *res judicata* unpersuasive.

### B.     *Waiver by Acquiescence*

"Waiver by acquiescence" is a recognized exception to the doctrine of claim preclusion. *Aguirre v. Albertson's, Inc.*, 201 Or. App. 31, 49, 117 P.3d 1012 (2005). The exception is implicated

when a plaintiff pursues multiple actions involving the same claim simultaneously rather than sequentially. *Id.* When such circumstances arise, the defendant waives her right to rely on claim preclusion if she "acquiesces" to defending multiple lawsuits by failing to timely object to the plaintiff's pursuit of parallel litigation. *Id.* (citing RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(a) (1982)). As acknowledged by the Oregon Court of Appeals in *Aguirre*, such an exception "is consonant with the claim preclusion doctrine, one of the main rationales for which is to protect a defendant from the harassment of defending against multiple actions." *Id.* at 50. Therefore, if a defendant chooses to defend in parallel actions without complaint and without attempting to use the available tools of procedure to force the plaintiff to litigate in a single forum, "there is no unfairness in holding the defendant to that choice." *Id.*

Plaintiffs argue Defendants have waived their ability to rely on *res judicata* because they have acquiesced to litigating in multiple forums. (Pl.'s Opp., 13–14.) Specifically, Plaintiffs allege that while Defendants "objected vociferously" in the State Action, they failed to do so in this case, and never suggested that a final judgment in the State Action would preclude resolution of the Federal Action. (*Id.* at 14.) Plaintiffs also point to Defendants' objection to Plaintiffs' motion to stay this case as evidence of their willingness to litigate both suits to final judgment. (*Id.*) Defendants refute Plaintiffs' arguments, recounting their numerous attempts to consolidate the litigation, including removing the State Action to this court. Consequently, Defendants allege they have "done everything short of scream from the mountaintops that they sought to litigate this case in a single federal forum." (Def.'s Reply, 14.)

*Aguirre* is illustrative. In that case, a plaintiff filed an action in state court against her former employer under both Oregon and federal law for, among other things, failure to pay overtime wages.

PAGE 18 - ORDER AND OPINION

*Aguirre*, 201 Or. App. at 33. The defendant removed the case to federal court, prompting the plaintiff to voluntarily dismiss her FLSA claim with prejudice and move to remand the remaining state law claims to state court. *Id.* at 34. The defendant did not object, and the federal court remanded the case to the state court. *Id.* Simultaneously and unbeknownst to the plaintiff, a comprehensive class action against the defendant was pending in federal court in Idaho. *Id.* Though the defendant was aware the plaintiff was likely party to the class action and that the action could resolve her federal and state claims, the defendant did nothing to notify the plaintiff or the court that simultaneous actions were pending. *Id.* at 35. Rather, the defendant removed the case, permitted the plaintiff to unwittingly dismiss her FLSA claim, did not object to remand, and then answered the complaint. *Id.* Upon final judgment in the class action, the defendant raised, for the first time, that the plaintiff's claims were barred by claim preclusion. *Id.* at 37. Ultimately, the trial court agreed, and the case was dismissed.

The Oregon Court of Appeals reversed, finding waiver by acquiescence operated as an exception to the otherwise preclusive effects of the final judgment in the class action. *Id.* at 51. The court found that the defendant had "sat on its rights" in both state and federal court, "content to defend [the private] case and the [class action] without timely exercising the procedural remedies available to it to avoid having to defend both actions simultaneously." *Id.* at 52. Noting that the defendant could have moved to dismiss the plaintiff's claims under ORCP 21 A(3) on the ground that the same claims were pending in the class action, the court observed the defendant had instead waited until the plaintiff could no longer opt out of the class action or recover for her claims in the private action. *Id.* The court thus determined that such actions stood "in stark contrast to ones in which a plaintiff unilaterally and affirmatively pursues multiple actions and the defendant, over its

resistance, is on the unwilling receiving end of those actions."

Here, Defendants have attempted from the outset to utilize multiple procedural devices to force Plaintiffs to consolidate the two actions into a single proceeding in one forum. At no point have Defendants delayed objection to Plaintiffs' pursuit of dual litigation, nor have they "sat on their rights" in either court. In contrast to the defendant in *Aguirre*, Defendants have objected vigorously and often to Plaintiffs' unilateral and affirmative pursuit of dual actions, and notified both courts that parallel litigation was pending in both forums. Plaintiffs' argument that Defendants acquiesced to dual litigation by failing to object in *this action* is meritless. Defendants therefore have not waived their right to assert a preclusion defense here.

II.     Whether Every Claim Was Decided on the Merits in the State Action

As a general proposition, preclusion of successive litigation based on the same claim must flow from a final judgment "on the merits." *Rennie*, 294 Or. at 330. However, unlike issue preclusion, actual litigation of an issue of fact or law is not required. *Drews*, 310 Or. at 140 (quoting *Rennie*, 294 Or. at 323). Rather, claim preclusion extends to all claims arising from the prior suit's cause of action when there has been a final judgment on the merits, regardless of whether they were actually raised or considered. *Latman v. Burdette*, 366 F.3d 774, 783 (9th Cir. 2004) .

Plaintiffs contend that "at least some" claims in the State Action were not resolved on their merits, alleging the state court "ruled plaintiffs' retaliation claims against the individual defendants would not be included in the trial because defendants allegedly had insufficient notice of a recent change in the law allowing them." (Pl.'s Resp., 4–5.) Defendants counter that each of Plaintiffs' retaliation claims were resolved on the merits by the state court's entry of summary judgment or at trial. (Def.'s Reply, 10.) Defendants explain the state court declined to allow only one of six

retaliation claims to move forward against Dolich and Josephson individually because it was unclear in the State Complaint whether the claim was asserted against them as individuals. (*Id.* at 11.) Defendants point out, however, that the claim was still heard by the jury against Park Kitchen, and was therefore determined on the merits. (*Id.*)

Plaintiffs' argument is unavailing. Evidence in the record indicates only one of six separate retaliation claims adjudicated in the State Action were alleged against Dolich and Josephson individually, while four were alleged solely against Park Kitchen and one against Defendants generally. (State SAC, ¶¶ 61–91.) The substance of those claims was litigated in state court, and resulted in the state court's entry of summary judgment in favor of Dolich and Josephson on the single claim pleaded against them as individuals. (State Summ. J. Op., 9–10.) That Plaintiffs failed to properly plead any of the remaining retaliation claims against Dolich and Josephson in their individual capacity does not negate the final judgment rendered in the State Action, and therefore is of no consequence to whether claim preclusion applies in this case.

III.    Whether the State and Federal Actions Involve the Same Parties

Claim preclusion operates to prevent "a plaintiff that has previously prosecuted an action against a defendant and obtained a final judgment from prosecuting another action against the same defendant." *Whitaker v. Bank of Newport*, 313 Or. 450, 454, 836 P.2d 695 (1992). Plaintiffs do not dispute the State and Federal Actions involve the same defendants, but allege the two actions do not involve the same plaintiffs. (Pl.'s Opp., 7.) At oral argument on the Motion, Plaintiffs specifically argued opt-in plaintiff Mary Bartlett ("Bartlett") was not a party to the State Action and therefore is not subject to preclusion in this case.

The record before the court, however, reveals that Bartlett is listed in Plaintiffs' exhibits

summarizing relevant records and alleged damages among the minimum wage, wrongful deduction, and tip-theft class members in the State Action.[5] (Suppl. Decl. Of Karen O'Connor, ECF No. 232 ("Suppl. O'Connor Decl."), Ex. H, 12, 20, 40–52.) In fact, the state filings submitted here demonstrate Bartlett was entitled to damages as a member of both the successful minimum wage and wrongful deduction classes.[6] (*Id.* at 12, 20.) She was also included in Plaintiffs' Trial Exhibit 12. (*Id.*,Ex. G, 14–25.) Bartlett's pay, time worked, and anticipated damages would not be relevant or admissible unless she was a party to the suit. The same exhibits also included the rest of the plaintiffs involved here, and thus the evidence before the court indicates Bartlett and the other plaintiffs to this lawsuit were parties to the State Action. The Federal and State Actions therefore involved the same parties,[7] and Plaintiffs' arguments to the contrary are meritless.

---

[5] Plaintiffs' summarizations of class records and damages calculations are consolidated in spreadsheets attached to the Declaration of Michèle Lauzier ("Lauzier") in Support of Plaintiffs' (state) Motion for Summary Judgment as Exhibits 1, 2 & 3. Lauzier's declaration is attached to the Supplemental Declaration of Karen O'Connor as Exhibit H.

[6] The court notes that Bartlett does not appear to be entitled to damages as a member of the tip-theft class because Plaintiffs' state filings categorize her as working in a non-tip eligible position (meaning neither a server nor a bartender) during each pay period from September 2011 to March 2013. However, Plaintiffs' similar filings in this case have categorized Bartlett as working in a tip eligible position ("defined for the purposes of this lawsuit as server or bartender") for the same pay periods. (Decl. Of Michèle Lazier in Support of Pl.'s Mot. for Summ. J., ECF No. 190, Ex. 1, 27–42.) Though this discrepancy has no bearing on whether Bartlett was a plaintiff in the State Action, the court notes the inconsistency to acknowledge that issue preclusion may bar Bartlett's assertion in this action that she worked in a tip-eligible position during the pay periods from September 2011 to March 2013, as that issue has already been adjudicated in state court.

[7] The court excludes opt-in plaintiffs Suzanne Latham, Mark MacMinn, and Elizabeth McElligot as Plaintiffs indicated in their Motion for Summary Judgment, filed on June 12, 2017, that the above plaintiffs had filed opt-in notices but did not have any viable FLSA minimum wage claims within the statute-of-limitations period. (Pl.'s Mot. for Summ. J., ECF No. 188, 26, n.3.)

IV.     Whether the State and Federal Actions Involve the Same Factual Transaction

The "same factual transaction" prong of Oregon's rule regarding claim preclusion requires the second action to be based on the same factual transaction as that at issue in the first. *Rennie*, 294 Or. at 323. "[T]he 'same factual transaction' can be either a single transaction or a connected series of transactions." *Whitaker*, 313 Or. at 454 (citing *Drews*, 310 Or. at 141). The Oregon Supreme Court addressed the issue of what factual groupings may constitute a connected series of transactions in *Troutman v. Erlandson*, 287 Or. 187, 205–10, 598 P.2d 1211, 1220–23 (1979). In that case, the court determined:

> When a defendant is accused of successive but nearly simultaneous acts, or acts which though occurring over a period of time were substantially of the same sort and similarly motivated, fairness to the defendant as well as the public convenience may require that they be dealt with in the same action. The events constitute but one transaction or a connected series.

*Id.* at 205–07. In reaching its conclusion, the *Troutman* court relied heavily on the Restatement (Second) of Judgments § 24, which provides, in relevant part:

> (2) [W]hat groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties expectations or business understanding or usage.

Though not extensive, the Restatement criteria adopted in *Troutman* have provided a template against which subsequent cases involving claim preclusion have been measured. *See, e.g.*, *Whitaker*, 313 Or. at 456–60, 836 P.2d 695 (1992) (applying the criteria to determine whether two successive cases were based on a connected series of transactions that should have been brought in the same proceeding); *Eli v. Lampert*, 194 Or.App. 280, 285–86, 94 P.3d 170 (2004) ("Whether a constellation of factual circumstances constitutes a singe 'factual transaction' is determined pragmatically, by giving weight

to considerations that include time, space, origin, motivation, the similarity of the acts, and whether the events form a convenient trial unit."); *Handam v. Wilsonville Holiday Partners, LLC*, 221 Or. App. 493, 498–502, 190 P.3d 480 (2008) (applying the criteria to determine whether a plaintiff's previously adjudicated employment claims and a later action regarding the fulfillment of a default judgment should have been addressed in one proceeding).

Defendants allege the State and Federal Actions "unquestionably" flow from the same factual transaction. (Mot., 11.) Specifically, Defendants cite a number of similarities between the two, arguing both cases "involve the same parties; the same allegedly unlawful policy of pooling tips among managers and front-of-the-house and back-of-the-house employees; the same paychecks, rates of pay, and pay dates; and the same allegedly unlawful motivation for terminating Ms. Allison and Ms. Burney, *viz.*, their opposition to Defendants' tip-pooling policy." (*Id.*) Plaintiffs respond that the tip claims in the State Action were based on the taking of Plaintiffs' tips and failing to pay those tips in weekly tip checks, whereas the federal minimum wage claim is based on Defendants' failure to pay sufficient wages to meet the required federal minimum wage in Plaintiffs' biweekly paychecks. Specifically referencing the *Troutman* criteria, Plaintiffs state the violations at issue were different in time and place, as was the harm complained of. Plaintiffs further allege the claims in the State and Federal Actions could not have been conveniently tried in the same proceeding because the numerosity threshold required for class certification would have prevented adjudication of all federal and state claims in a single federal forum. (*Id.* at 7.)

Plaintiffs do not dispute that Allison and Burney's individual claims in the Federal and State Actions are based on identical facts. Rather, Plaintiffs argue two separate transactions are involved here: 1) Defendants' taking of Plaintiffs' tips and failing to pay them, and 2) Defendant's failure to

pay the appropriate federal minimum wage. As such, the court must determine whether those transactions are a "connected series" by applying the *Troutman* factors. In doing so, the court is mindful that "those criteria, while helpful, do not provide a mathematically precise answer, but instead serve as a guide in determining whether apparently separate events fit into a common legal framework that should be resolved in a single proceeding." *Handam*, 221 Or. App at 499 (citing *Jakobitz v. Iron Horse Business Services, LLC*, 208 Or. App. 515, 527–28, 145 P.3d 277 (2006)).

### A.    Time

Time is a "significant factor" that requires the reviewing court to consider whether enough events giving rise to the second claim occurred prior to the initiation of the first claim so the party against whom preclusion is sought *could have* combined the later claims with the earlier ones. *Whitaker*, 313 Or. at 456. "The more closely connected or overlapping [the events are], the stronger the argument that preclusion should apply." *Id.*

Plaintiffs contend the events giving rise to the State and Federal Action are different in time because the tip claims in the State Action are based on Defendants' failure to pay the Plaintiffs' tips in a weekly tip check, whereas the Federal Action is based on Defendants' failure to pay the federal minimum wage in a biweekly paycheck. (Pl.'s Opp., 6.) Plaintiffs misinterpret the time factor. Plaintiffs seem to argue that because the payments at issue are two different types of payments paid on two separate schedules rather than simultaneously, the various violations at issue occurred separately in time. The time factor, however, is concerned with when the events giving rise to the second action occurred *relative* to the first action, not whether the events occurred simultaneously or on the same schedule.

The lawsuits at issue here were filed within three days of each other. The events giving rise

to both the Federal and State Actions — Defendants' taking of Plaintiffs' tips, failing to pay them the tips to which they were entitled, and subsequently failing to pay the appropriate minimum wage — were already identified as ongoing practices of the Defendants when both actions were initiated. Both lawsuits focused on Defendants' tip-pooling practices within an overlapping period of time, and Defendants' liability stemming from those practices had already arisen at the time both lawsuits were filed. Indeed, Plaintiffs admitted to this court and conceded in multiple documents that all of their claims could have been filed together in one action, but that they affirmatively chose not to do so. The time factor therefore weighs in favor of preclusion.

    *B.*    *Space*

Closely related to the time factor, the space criterion requires the court to consider whether the events giving rise to liability are physically far removed from each other. *Whitaker*, 313 Or. at 457. The farther removed the events are from each other phsyically, the less compelling the argument preclusion should apply. *Id.* However, even if the events are physically far removed, the significance of this factor is diminished if the events are close in time. *Id.*

The wrongful acts in both the State and Federal Actions allegedly occurred in identical physical locations: Park Kitchen and the Bent Brick, restaurants located in the City of Portland. Plaintiffs claim the "dissimilar violations" at issue in the State and Federal Actions were different in place, but they do not allege, and the record does not reflect, the violations at issue in either case occurred in any location other than Park Kitchen or the Bent Brick. The space factor thus weighs in favor of preclusion.

    *C.*    *Origin*

The origin factor refers to the harm at issue — "whatever it was that caused the party against

whom preclusion is asserted to complain in the first place." *Id.* If a party suffers various kinds of harm to the same kind of interest by the same defendant, it is reasonable to expect that all theories of recovery for those types of harm will be addressed in a single proceeding. *Id.*

Plaintiffs allege the origin of the harm in the State and Federal Actions is different because the State Action is based on Defendants' taking and nonpayment of Plaintiffs' tips, while the Federal Action is based on Defendants' failure to pay minimum wage. (Pl.'s Opp., 6.) Defendants take a broader view, arguing the harm in both the State and Federal Actions originated largely from the taking and redistribution of Plaintiffs' tips pursuant to the tip-pooling policy, which included wrongfully distributing tips to both front- and back-of-house employees and management. (Def.'s Reply, 3.)

The court finds Plaintiffs characterize their claims too narrowly. The source of the complaint in the State Action was Defendants' taking of Plaintiffs' tips via an invalid tip pool and failing to pay those tips to Plaintiffs. The source of the complaint in the Federal Action was Defendants' failure to pay Plaintiffs the minimum wage to which they were entitled as a result of Defendants taking their tips pursuant to an invalid tip pool. Both harms therefore flow from the implementation of the tip pool, and the harms complained of strike at the same economic interest — Plaintiffs' interest in receiving the full compensation to which they are entitled for their work. The origin of the harm in both cases thus is the reduction in pay inflicted on Plaintiffs' through mandatory participation in the invalid tip pool. The origin factor weighs in favor of preclusion.

D.    *Motivation*

Motivation, which may be viewed objectively or subjectively and can be a "pivotal consideration," requires the court to consider whether the defendants committed a series of acts

against the plaintiff motivated by a common plan or scheme. *Whitaker*, 313 Or. at 457. When a party commits a series of acts that may each be theoretically actionable on its own against the same victim or victims, and all of the acts were motivated to a common end, a court may reasonably treat such actions as a single occasion for judicial relief. *Id.*

Here, the Defendants' acts against Plaintiffs in both actions were motivated by a common scheme: the invalid tip pool. Each time Plaintiffs' tips were taken and redistributed, such actions were prompted by Defendants' tip-pooling policy. Defendants' failure to pay the appropriate minimum wage was also due to adherence to the invalid tip-pooling policy because the scheme effectively lowered Plaintiffs' wages below the federal minimum wage rate. Defendants' continuous acquisition and redistribution of Plaintiffs' tips and the resulting reduction in Plaintiffs' overall wages thus are predicated on Defendants' implementation of the tip-pooling policy. Motivation therefore weighs in favor of preclusion.

### E.  Convenience

The convenience factor requires the court to consider issues of trial convenience, and whether the party against whom preclusion is sought had the ability to try the various claims at issue in a single proceeding. *Id.* at 458. The convenience factor is particularly important to the analysis. *Handam*, 221 Or. App. at 499 (citing *Dean*, 271 Or. at 193 ("The number and extent of operative facts included within a single cause of action are to be determined pragmatically, mainly by considerations of practical trial convenience.")). The greater the distinction between the legal and factual complexities of the claims, the less convenient it would be to try the claims together. *Whitaker*, 313 Or. at 458. However, if "some aspects of one claim would necessarily overlap any complete litigation of another, the argument in favor of requiring that both claims be tried at the same time is strong."

*Id.*

The facts alleged in both complaints formed a manageable trial unit. The witnesses and proof required in both cases overlapped significantly, if not entirely, as evidenced by the record. In the State Action, Plaintiffs alleged that the Defendants wrongfully took ownership of Plaintiffs' tips by requiring them to participate in an invalid tip pool and failed to pay them the tips to which they were entitled. In the Federal Action, Plaintiffs alleged Defendants' invalid tip pool lowered their effective minimum wage rate below the federal minimum to which they were entitled. The validity of the Defendants' tip-pooling policy therefore was necessarily at issue in both actions, and evidence regarding the implementation and effects of Defendants' tip-pooling practices thus was relevant to the disposition of Plaintiffs' state and federal claims. Both actions relied on the same pay and time records, the same witnesses, proof of the same events occurring during the same time period, and Allison and Burney's testimony which was virtually identical in both cases. In sum, Plaintiffs' state claims are not sufficiently distinct from their federal claims, and the validity and resulting harm of Defendants' tip-pooling practices could have been — and was — litigated in the State Action.

Plaintiffs, however, argue the State and Federal Actions could not have been conveniently litigated in one proceeding. Specifically, Plaintiffs allege fewer than 40 members made up each subclass for the state claims — too few to meet the numerosity requirement for class certification in federal court. (Pl.'s Opp., 7.) Plaintiffs thus contend the numerosity requirement would have prevented them from litigating their state claims as a class action in a single federal proceeding. (*Id.*) Because the numerosity requirement is relaxed under Oregon law, Plaintiffs' claim separate actions in state and federal court were necessary to fairly litigate all of their claims. (Pl.'s Opp., 7.) Defendants disagree, arguing the Federal Rules of Civil Procedure do not provide a bright-line

minimum to satisfy numerosity, but require only that a plaintiff demonstrate "the class is so numerous that joinder of all members is impracticable." (Def.'s Reply, 7.) Defendants contend Plaintiffs have provided no authority for the proposition that a class containing fewer than 40 members would be too small to merit certification, and that even if they had, the Plaintiffs' state filings indicate the certified tip-theft, minimum wage, and wrongful deduction subclasses each contained greater than 40 members. (*Id.*, 7–8.)

Federal Rule of Civil Procedure ("Rule") 23 governs federal class actions. To certify a class, Rule 23(a)(1) requires a plaintiff to demonstrate the proposed class is too numerous for joinder to be practicable. The rule does not impose a bright-line numerical threshold at which the numerosity requirement is met; rather, the court must evaluate the facts of each case. *Gen. Tel. Co. Of the Nw., Inc. V. Equal Emp't Opportunity Comm'n*, 446 U.S. 318, 330 (1980). Generally, classes composed of 40 members or more are considered sufficiently numerous to meet the requirement, while classes of 15 or fewer are not. *Id.* Therefore, classes containing 16 to 39 members may satisfy the numerosity requirement depending on the facts of the case. *Id.* Each class and subclass must meet the numerosity requirement. FED. R. CIV. P. 23(c)(5). To determine whether a potential class satisfies numerosity, courts may consider:

> the ease of identifying and contacting class members; . . . the geographical spread of class members; and . . . the ability and willingness of individual members to bring claims, as affected by their financial resources, the size of the claims, and their fear of retaliation in light of an ongoing relationship with the defendant.

*Chastain v. Cam*, 3-13-cv-01802-SI, 2016 WL 1572542, at *5 (D. Or. April 19, 2016) (quoting *Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, No. CV 12-5080 CRB, 2013 WL 3802807, at *2 (N.D. Cal. July 17, 2013)).

Plaintiffs provide no authority, from this district or otherwise, to support the proposition that a class or subclass of fewer than 40 members cannot be certified. Furthermore, Plaintiffs have failed to point to any evidence in the record of this case that supports an inference of this court's unwillingness to certify a class or subclass composed of less than 40 members. There is no reason to believe that the classes would need to be further broken down beyond the minimum wage, wrongful deduction, and tip theft classes, as Plaintiffs suggested in oral argument on the Motion, and the record demonstrates that none of those classes fall below 15 members as deemed fatal by the Supreme Court.

At minimum, Plaintiffs' subclasses could satisfy the numerosity requirement based on the facts of the case if they are too few to meet the requirement outright. First, all members of the subclasses in the State Action were current or previous employees of Park Kitchen or Bent Brick. Thus, the financial resources of the potential plaintiffs would be limited. Second, individual members would be unlikely to bring individual claims, particularly those still employed by either restaurant, because the expense and possibility of retaliation would be too great. Finally, the individual claims would likely be too small to warrant the expense of individual suits.

The factors considered in determining whether numerosity is met thus would have favored finding the requirement is met here. Plaintiffs' contention that numerosity would have prevented litigating the State and Federal Actions together in a single forum are unpersuasive. The convenience factor thus weighs in favor of preclusion.

F.    *Similarity of Acts*

Finally, the court must consider the similarity between the acts that caused harm to the plaintiff. If the acts giving rise to the harm complained of are very different, such as a physical assault

and a forgery, the argument for preclusion is diminished. *Whitaker*, 313 Or. at 458–59. However, if two different acts combine to cause a single form of harm, the argument in favor of preclusion is strengthened. *Id.* at 459.

Here, the acts about which Plaintiffs complain in the two cases are different, but the acts combine to cause a single form of harm. The State Action alleged tort and equitable claims stemming from the theft of Plaintiffs' tips whereas the Federal Action alleged a statutory violation under federal law for failing to pay the required minimum wage. Though these acts are different on their face, they both harm Plaintiffs by withholding the pay to which they are entitled. The harm to Plaintiffs is thus economic, requiring nearly the same evidence to establish Defendants' liability in both cases. Because the acts combine to cause a single form of harm, the similarity of the acts at issue favors preclusion.

G.     *Summary*

The factual transactions underlying the Federal and State Actions are virtually identical. The events upon which both actions are predicated are closely related, if not the same, in time, space, origin, and motivation, and create a manageable triable unit based on similar acts. Viewing the evidence in light most favorable to the Plaintiffs, the court finds the State and Federal Action are based on the same factual transaction.

V.     Whether All Claims Could Have Been Fully and Fairly Litigated Together

While Oregon case law exhibits a strong preference for the resolution of all claims in one proceeding, *Fleming v. Miles*, 181 F.Supp.2d 1143, 1151 (D. Or. 2011), the Oregon Supreme Court has cautioned that preclusion should be used to promote single actions only "insofar as possible." *Rennie*, 294 Or. at 327. Where barriers in the first action prevent a plaintiff from presenting her full

claim, it would be unfair to preclude her from commencing a second action to address those unheard matters. RESTATEMENT (SECOND) OF JUDGMENTS § 26 cmt. c (1982). A second court may revisit a plaintiff's claims if there is "reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 481 (1982) (quoting *Montana*, 440 U.S. at 164 n.11. However, whether actual litigation of claim occurred is irrelevant under Oregon law; the proper query is whether the plaintiff *could* have litigated her claims in the first action. *See Drews*, 310 Or. at 140. The scope of preclusion thus is dependant upon the scope of the plaintiff's opportunities to litigate her claims in their entirety in the first action.

Plaintiffs claim "formal barriers" create an exception to the preclusive effect that might otherwise bar their federal claims. Specifically, Plaintiffs allege the numerosity required for class certification in federal actions, Oregon's constitutional right to a non-unanimous jury verdict, inadequate notice to the state class action members, and the substantial question of whether this court would have exercised supplemental jurisdiction over the state law claims created formal procedural barriers preventing Plaintiffs from litigating both their class action state law claims and federal FLSA claims together in one lawsuit. (Pl.'s Opp. 8–13.)

Plaintiffs' objections hold little weight. First, as discussed in Section III-E, *supra*, the numerosity requirement for class action certification in a federal forum does not bar Plaintiffs from bringing their claims in one action. Plaintiffs have provided no evidence or authorities to suggest that this court would have denied class certification based on a failure to meet the numerosity requirement.

Second, that a plaintiff who files in state court may take advantage of the unique non-unanimous jury rule provided by the Oregon Constitution is of no consequence to whether or not Plaintiffs could have fully and fairly litigated their state and federal claims together. Utilizing such

a rule by filing in state court is a matter of strategy, not of right, and a trial in a forum that requires a unanimous jury verdict does not deprive Plaintiffs of a full and fair opportunity to litigate their claims in one action, nor does it present a formal barrier to adjudication here. If that were the case, the non-unanimous jury rule would apply in every jurisdiction, state and federal, in the United States. Clearly, it does not.

Third, Plaintiffs' claim that binding the parties to the state class action would violate their due process rights since they did not receive proper notice that final judgment might preclude their federal claims is unpersuasive. Plaintiffs' counsel represented all plaintiffs in both actions and was well aware of Defendants' objections and the court's concern about the effect a final judgment in either action might have on the other. Plaintiffs' counsel was responsible for notifying his clients of both actions and their implications, and he cannot now claim their due process rights might be violated by the inadequate notice he was charged with providing. That he might have chosen or failed to inform his clients of his strategic machinations is irrelevant to the question whether there existed a full and fair opportunity to litigate Plaintiffs' claims in one action.

Finally, supplemental jurisdiction would have applied to the state claims if Plaintiffs had brought all of their claims in one suit. There is nothing about the facts or legal theories involved in either action that are unique or extraordinary such as to create an exception. Plaintiffs have provided no opinions from this district, much less this court, that support their suggestion that supplemental jurisdiction might not have been exercised. Regardless, such a speculative claim asks this court to use hindsight as a guide in applying claim preclusion rather than analyzing the facts before it, and the court is not inclined to undertake such an exercise.

A plaintiff is obligated under Oregon law to attempt to have all claims against a defendant

arising out of the same factual transaction adjudicated in one court in one proceeding. Plaintiffs did not make any such attempt and, in fact, vigorously opposed a one-proceeding format. Plaintiffs' claims could have all been brought together in one action, and they have failed to demonstrate that an exception applies that might absolve them of this obligation. As such, the court finds Plaintiffs had a full and fair opportunity to litigate all of their claims together in one proceeding, and that Oregon law required them to at least attempt to do so.

*Conclusion*

Though "[i]t may have been [Plaintiffs'] preference to split [their] claim[s] into the state and federal law components and to try them each separately . . . [their] unilateral claim-splitting and the consequent multiplicity of lawsuits the defendants were obligated to defend is precisely the evil sought to be avoided by the *res judicata* doctrine." *Rennie*, 294 Or. at 327. Plaintiffs seek an additional remedy to that obtained in the State Action, their federal claims are based on the same factual transaction as those previously adjudicated, and they could have, and had an obligation to, litigate their claims in one proceeding before one court. Because of the reasons elaborated, Defendants' Motion (#225) is GRANTED.

DATED this 25th day of February, 2019.

JOHN V. ACOSTA
United States Magistrate Judge

//////

//////

//////

PAGE 35 - ORDER AND OPINION